# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

| | |
|---|---|
| SURESH PERSAD, DANIEL G. WRIGHT and ROBERT S. DRUMMOND, individually and on behalf of all others similarly situated, | Case No. |
| | Hon. |
| Plaintiffs, | |
| v. | |
| FORD MOTOR COMPANY, | |
| Defendant. | |

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

## <u>TABLE OF CONTENTS</u>

I.     INTRODUCTION ........................................................................1

II.    JURISDICTION AND VENUE ..................................................5

III.   PARTIES .....................................................................................6

        1.    Plaintiffs .......................................................................6

        2.    Defendant .....................................................................7

IV.   FACTUAL ALLEGATIONS........................................................8

    A.    The Class Vehicles ................................................................8

    B.    The Exhaust Fume Defect.....................................................9

    C.    Defendant's Knowledge of the Defect and Associated Safety Hazard ......................................................................11

        1.    NHTSA Complaints & Investigation ......................13

        2.    Technical Service Bulletins ....................................21

        3.    Prior Class Litigation .............................................24

V.     TOLLING OF THE STATUE OF LIMITATIONS AND ESTOPPEL 24

VI.   CLASS ACTION ALLEGATIONS.........................................26

VII.  CLAIMS FOR RELIEF ...........................................................31

VIII. PRAYER FOR RELIEF ..........................................................53

IX.   DEMAND FOR JURY TRIAL ................................................54

i

The allegations herein are based on personal knowledge as to Plaintiffs' own conduct and are made on information and belief as to all other matters based on an investigation by counsel.[1]

## I. INTRODUCTION

1. Plaintiffs Suresh Persad, Daniel G. Wright and Robert S. Drummond ("Plaintiffs") bring this class action against Ford Motor Company ("Ford" or "Defendant"), individually and on behalf of all persons or entities in the United States who purchased, leased or own a Class Vehicle (defined below), for Defendant's breach of express and implied warranties, fraud, negligent misrepresentation, unjust enrichment and unfair trade practices, concerning a known defect in thousands of vehicles sold in the United States.

2. The affected vehicles are 2016 and 2017 model year Ford Explorers (the "Class Vehicles").

3. The Class Vehicles include a defective exhaust and/or Heating, Ventilation, and Air Conditioning system (the "HVAC System") that allows exhaust odor and gases, including carbon monoxide – an odorless, toxic gas, to enter the passenger compartment of the vehicles while in use.

---

[1] Counsel's investigation includes an analysis of publicly available information, including consumer complaints to the National Highway Transportation Safety Administration, Technical Service Bulletins issued by Defendant, and additional analysis. Plaintiffs believe that a reasonable opportunity for discovery will provide further support for the claims alleged herein.

1

4.    This hazardous defect has resulted in numerous complaints to the National Highway Transportation Safety Administration ("NHTSA") and the opening of a NHTSA investigation into the Class Vehicles.

5.    The defect is not new to Ford.  As early as 2012, Defendant had issued Technical Service Bulletins ("TSBs") to its exclusive network of dealers, recognizing the presence of exhaust odors and fumes in the passenger compartment of certain Ford Explorers.  Further, in late 2016, Ford settled a class action litigation that alleged that model year 2011-2015 Ford Explorers similarly permitted exhaust and other gases to enter the passenger compartment.

6.    The defect exposes Plaintiffs and Class members to noxious gases, such as carbon monoxide, when the vehicles are in use and creates a clear safety hazard.  For example, complaints to NHTSA report that the presence of exhaust fumes in the Class Vehicles cause headaches and dizziness on the part of occupants, which can lead to accidents.

7.    NHTSA's investigation summary reports:

… three crash events and 25 injury incidents citing a total of 41 injuries. The alleged injuries, as affirmatively indicated on the [Vehicle Owner Questionnaire] reports, range from unspecified to loss of consciousness, with the majority indicating nausea, headaches, or light headedness. One police incident alleged a crash with related injuries, and a second police incident reported a physiological injury

2

allegedly from carbon monoxide (CO) exposure. Another reported police incident resulted in a rollover crash event with injuries.[2]

8.     Despite the TSBs, the class action settlement and the complaints to NHTSA and the NHTSA investigation into the Class Vehicles, Defendant knowingly, actively, and affirmatively omitted and/or concealed the existence of the defect to increase profits by selling additional Class Vehicles.  Knowledge and information regarding the defect and the associated safety hazard was in the exclusive and superior possession of Defendant and its dealers, and was not provided to Plaintiffs and members of the Classes, who could not reasonably discover the defect through due diligence.  Based on pre-production testing, design failure mode analysis, and consumer complaints to dealers and NHTSA, *inter alia*, Defendant was aware of the defect in the Class Vehicles and fraudulently concealed the defect from Plaintiffs and members of the Classes.

9.     Notwithstanding this knowledge, Ford continued selling defective vehicles, has failed to disclose the existence of the defect to Plaintiffs and members of the Classes, has not issued a recall, and has not remedied the issue and/or compensated Class Vehicle owners for the material defect.  Rather, Defendant

---

[2] Exhibit A, NHTSA Investigation 2016 Ford Explorer, https://www.nhtsa.gov/vehicle/2016/FORD/EXPLORER/SUV/FWD#investigations (last visited Aug. 7, 2017); Exhibit B,NHTSA Investigation 2017 Ford Explorer, https://www.nhtsa.gov/vehicle/2017/FORD/EXPLORER/SUV/FWD#investigations (last visited Aug. 7, 2017).

wrongfully and intentionally concealed the defect from Plaintiffs and members of the Classes.

10.    No reasonable consumer expects to purchase or lease a vehicle that contains a concealed defect that allows toxic gases, such as carbon monoxide, into the passenger compartment when in use. The defect is material to Plaintiffs and members of the Classes because when they purchased or leased their Class Vehicles, they reasonably relied on the reasonable expectation that the Class Vehicles' would be free from defects and would not allow exhaust fumes into the vehicle. Had Defendant disclosed the defect, Plaintiffs and members of the Classes would not have purchased or leased the Class Vehicles, or would have paid less for their vehicles.

11.    Defendant offers New Vehicle Limited Warranty coverage for Class Vehicles for 3 years or 36,000 miles which includes all components other than normal wear and maintenance items.[3]

12.    Plaintiffs and the Classes (defined below) assert claims against Defendant for fraudulent concealment, negligent misrepresentation, breach of express and implied warranties, violation of The Magnuson-Moss Warranty Act,

---

[3]    Exhibit C, 2016 Model Year Ford Warranty Guide, http://www.fordservicecontent.com/Ford_Content/Catalog/owner_information/201 6-Car-Lt-Truck-Warranty-version-3_frdwa_EN-US_10_2015.pdf; Exhibits D, 2017 Model Year Ford Warranty Guide, http://www.fordservicecontent.com/Ford_Content/Catalog/owner_information/201 7-Ford-Car-Lt-Truck-Warranty-version-3_frdwa_EN-US_09_2016.pdf.

4

15 U.S.C. § 2301 *et seq*., unjust enrichment and for violations of the Georgia and Pennsylvania consumer fraud statutes.

13.    As a direct result of Defendant's conduct, Plaintiffs and Class members have been harmed and are entitled to actual damages, including damages for diagnosis, repair and/or replacement costs, damages for the diminished value of their vehicles, compensatory, statutory and punitive damages, attorneys' fees, costs, restitution, and injunctive and declaratory relief.

## II.    JURISDICTION AND VENUE

14.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2).  The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class action in which there are more than 100 members of the Classes, members of the Classes (as defined below) are citizens of states different from Defendant, and greater than two-thirds of the members of the Classes reside in states other than the state in which Defendant is a citizen.  This Court has jurisdiction over supplemental state law claims pursuant to 28 U.S.C. § 1367 and jurisdiction over the Magnuson Moss Warranty Act claim by virtue of diversity jurisdiction being exercised under the Class Action Fairness Act ("CAFA").

15.    Venue properly lies in this District pursuant to 28 U.S.C. § 1391(a), (b) and (c) because Defendant maintains its corporate headquarters in this District,

5

because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District, and because Defendant conducts a substantial amount of business in this District. Accordingly, Defendant has sufficient contacts with this District to subject Defendant to personal jurisdiction in the District and venue is proper.

## III.   PARTIES

### 1.   Plaintiffs

16.   Plaintiff Suresh Persad is a citizen of the state of Georgia and resides in Atlanta, Georgia. On or around December 2016, Plaintiff Persad purchased a new 2016 Ford Explorer from Allan Vigil Ford in Fayetteville, Georgia for personal, family, or household purposes. Plaintiff Persad continues to own the 2016 Ford Explorer.

17.   Soon after purchasing the vehicle, Plaintiff Persad detected exhaust fumes within the passenger compartment while driving. Plaintiff Persad thereafter presented his vehicle to an authorized Ford dealership in order to address the problem. The dealer conducted a road test of the vehicle, but claimed that there were no exhaust fumes present and declined to repair the vehicle.

18.   Plaintiff Daniel G. Wright is a citizen of the state of Pennsylvania and resides in Havertown, Pennsylvania. On or around July 2016, the Plaintiff Wright purchased a used 2016 Ford Explorer from Bergey's Lincoln in Lansdowne,

Pennsylvania for personal, family, or household purposes. Plaintiff Wright continues to own the 2016 Ford Explorer.

19.     Plaintiff Wright has detected exhaust fumes within the passenger compartment of his vehicle while driving, and he has suffered headaches for approximately the last year, since purchasing the vehicle. Plaintiff Wright continues to own the 2016 Ford Explorer.

20.     Plaintiff Robert S. Drummond is a citizen of the state of Pennsylvania and resides in Royersford, Pennsylvania. On or around December 2016, the Plaintiff Drummond purchased a new 2017 Ford Explorer from Kennedy Auto in Pottstown, Pennsylvania for personal, family, or household purposes. Plaintiff Drummond continues to own the 2017 Ford Explorer.

21.     Since purchasing the vehicle, Plaintiff Drummond has detected exhaust fumes within the passenger compartment while driving.

### 2.     Defendant

22.     Defendant Ford Motor Company is a Delaware corporation, with its corporate headquarters located in Dearborn, Michigan.

23.     Ford designs, engineers, manufactures, markets and/or sells vehicles throughout the United States, through its network of authorized motor vehicle dealers. Ford engages in interstate commerce by selling vehicles through its

authorized dealers located in every state of the United States, including within this District.

24.     At all times relevant to this action, Defendant and/or its agents manufactured, distributed, sold, leased, and warranted the Class Vehicles, containing the defect described herein, throughout the United States.  Defendant developed and disseminated the owner's manuals and warranty booklets, advertisements and other promotional materials relating to the Class Vehicles.

25.     On information and belief, at all times relevant to this action, Defendant made decisions related to advertisement, marketing, sales, warranties, and recalls of the Class Vehicles its Dearborn, Michigan headquarters, which is located within this District.

## IV.    FACTUAL ALLEGATIONS

### A.    The Class Vehicles

26.     The Class Vehicles – model year 2016 and 2017 Ford Explorers – are a part of Ford's fifth generation of Explorer vehicles.

27.     The model year 2016 and 2017 Ford Explorers include some upgrades and changes from the prior year model, however upon information and belief, none of those changes addressed and/or remedied the defect, which allowed exhaust fumes into the passenger compartment while in use and which was present in the 2011-2015 Ford Explorers.

## B.    The Exhaust Fume Defect

28.    The Class Vehicles were designed, engineered and manufactured by Ford with design flaws and/or defective exhaust and/or HVAC Systems that cause the presence of exhaust fumes, including carbon monoxide, in the passenger compartment while the vehicles are in use (the "Exhaust Fume Defect").   By designing, manufacturing, assembling, inspecting, distributing, selling and leasing the Class Vehicles with the Exhaust Fume Defect, Ford rendered the Class Vehicles defective and unsafe for their intended use and purpose.

29.    Upon information and belief, the Exhaust Fume Defect was caused, among other things, by Defendant's design, manufacture or assembly of the Class Vehicles':

- bumper and/or tailpipes;

- rear air extractors;

- drain valves in the liftgates;

- sheet metal panels and overlaps;

- joints and seems; and

- rear auxiliary air conditioning system

30.    Upon information and belief, Defendant's design, manufacture or assembly of these components, among other things, allows exhaust fumes,

9

including carbon monoxide, to enter and accumulate in the passenger compartment.

31.    According to the Centers for Disease Control and Prevention, carbon monoxide (CO) is "an odorless, colorless gas that can kill you."[4]

32.    "CO is found in fumes produced any time you burn fuel in cars or trucks, small engines, stoves, lanterns, grills, fireplaces, gas ranges, or furnaces. CO can build up indoors and poison people and animals who breathe it.… The most common symptoms of CO poisoning are headache, dizziness, weakness, upset stomach, vomiting, chest pain, and confusion."[5]

33.    As recognized by NHTSA, consumer complaints regarding the Class Vehicles have been consistent with typical carbon monoxide symptoms, *i.e.*, headaches, nausea and dizziness.

34.    Upon information and belief, aside from carbon monoxide, the exhaust fumes present in the passenger compartment of the Class Vehicles as a result of the Exhaust Fume Defect, may contain sulfur dioxide, nitrogen oxides, formaldehyde, benzene and soot, which also present safety hazards for Plaintiffs and the Classes.

---

[4] Exhibit E, *Carbon Monoxide Poisoning*, Centers for Disease Control and Prevention, https://www.cdc.gov/co/faqs.htm (last visited Aug. 7, 2017) ("Carbon Monoxide Frequently Asked Questions").

[5] *Id.*

35.     As alleged herein, Plaintiffs and members of the Classes unknowingly purchased or leased vehicles that contain the Exhaust Fume Defect and suffered diminished market value and other damages related to their purchase or lease of the Class Vehicles as a direct result of Defendant's omissions regarding the standard, quality or grade of the Class Vehicles and/or the existence of the Exhaust Fume Defect and its associated safety risk.  The fact that the Class Vehicles suffer from the Exhaust Fume Defect is material to Plaintiffs and members of the Classes because it diminishes the value of the Class Vehicles and exposes drivers and passengers of the Class Vehicles to a safety hazard.

36.     As a result of Defendant's material omissions, including its failure to disclose the presence of the Exhaust Fume Defect in the Class Vehicles, Defendant has caused Plaintiffs and members of the Classes to suffer actual damages, including but not limited to out-of-pocket expenses and the diminished value of their vehicles, and have been damaged by their exposure to exhaust fumes, including carbon monoxide.

### C.     Defendant's Knowledge of the Defect and Associated Safety Hazard

37.     Ford has known since at least 2012 of the presence of exhaust fumes in the passenger compartment of certain Ford Explorer models.

38.     Ford's knowledge and information regarding the Exhaust Fume Defect were in the exclusive and superior possession of Ford and its dealers, and

11

that information was not provided to Plaintiffs and members of the Classes.  Based on pre-production testing, pre-production design failure mode analysis, production design failure mode analysis, early consumer complaints made to Defendant's network of exclusive dealers, aggregate warranty data compiled from those dealers, repair order and parts data received from the dealers, consumer complaints to dealers and NHTSA, and testing performed in response to consumer complaints, *inter alia*, Defendant was aware (or should have been aware) of the Exhaust Fume Defect in the Class Vehicles and fraudulently concealed the defect and safety hazard from Plaintiffs and members of the Classes.

39.    Defendant fraudulently, intentionally, negligently and/or recklessly omitted and concealed from Plaintiffs and members of the Classes the defect in the Class Vehicles even though Defendant knew or should have known of design and/or manufacturing defects in Class Vehicles.

40.    Defendant knew, or should have known, that the Exhaust Fume Defect and associated safety risk were material to owners and lessees of the Class Vehicles and were not known or reasonably discoverable by Plaintiffs and members of the Classes before they purchased or leased Class Vehicles, or before the warranties on their Class Vehicles expired.

41.    Notwithstanding Defendant's exclusive and superior knowledge of the Exhaust Fume Defect, Defendant failed to disclose the defect to consumers at the

time of purchase or lease of the Class Vehicles (or any time thereafter) and continued to sell Class Vehicles. Defendant intentionally concealed the Exhaust Fume Defect and associated safety hazard, failed to provide any notice of the defect and associated safety hazard to Plaintiffs and members of the Classes, and have failed to recall the vehicles to remedy the defect.

### 1. NHTSA Complaints & Investigation

42. Consumers who purchased or leased Class Vehicles have filed numerous complaints with NHTSA, reporting and detailing the Exhaust Fume Defect.

43. Federal law requires Ford to monitor defects which can cause a safety issue and report them within five (5) days. Ford regularly monitors NHTSA complaints in order to meet its reporting requirements under federal law and was provided knowledge of the defect through these complaints, *inter alia*.

44. Below is a sample of consumer complaints made to NHTSA:

**2016 FORD EXPLORER**

**NHTSA ID Number:** 11011850
**Incident Date** August 25, 2016
**Consumer Location** KINGSTON, PA
I FELL ASLEEP FROM CARBON MONOXIDE POISONING AND I HIT THREE OTHER CARS CAUSING ME TO TOTAL MY VEHICLE. WEEKS BEFORE I HAD THE ACCIDENT I WAS EXPERIENCING DROWSINESS AND HEADACHES. I HAD THIS VEHICLE LESS THAN TWO MONTHS.

13

**NHTSA ID Number:** 11011757
**Incident Date** August 1, 2016
**Consumer Location** MARSHFIELD, MO
EXHAUST SMELL IN CABIN UPON HARD ACCELERATION OR HILL
CLIMBING. PROBLEM OCCURS ANY TIME RPMS EXCEED 3000-3500 FOR
MORE THAN A FEW SECONDS. WIDE OPEN THROTTLE IS NOT
REQUIRED, JUST MODERATE ENGINE STRAIN IN NORMAL DRIVING
CONDITIONS. EXHAUST SMELL SEEMS TO COME THROUGH A/C
VENTS AND IS WORSE WITH SYSTEM ON RECIRCULATE, BUT IS
DEFINITELY PRESENT WHEN SYSTEM IS SET TO FRESH AIR AS WELL.
REAR A/C SYSTEM DOES NOT HAVE TO BE ON IN ORDER TO GET THE
SMELL. EXHAUST SMELL IS BAD ENOUGH TO BURN YOUR THROAT IF
NOT VENTED BY ROLLING DOWN WINDOWS QUICKLY. PERSONS IN
BACK SEAT COMMONLY COMPLAIN OF HEADACHES WHEN RIDING IN
THE VEHICLE. VEHICLE HAS BEEN TO THE DEALER A TOTAL OF 5
TIMES FOR REPAIRS. NONE HAVE CORRECTED THE ISSUE. TSBS 14-
0130 HAS BEEN PERFORMED, MUFFLERS HAVE BEEN REPLACED,
HVAC MODULE HAS BEEN UPDATED, BUT PROBLEM STILL PERSISTS
AS BAD OR WORSE THAN EVER. VEHICLE WAS PURCHASED BRAND
NEW. PROBLEM BEGAN AROUND 1,500 MILES. THERE HAVE BEEN NO
AFTER-MARKET MODIFICATIONS TO THE VEHICLE.


**NHTSA ID Number:** 11011538
**Incident Date** June 1, 2016
**Consumer Location** SANTA ANA, CA
I BELIEVE C0 IS LEAKING INTO MY CAR AND WHILE DRIVING I HAVE
BECOME DIZZY AND GET HEADACHES ON A REGULAR BASIS. I ALSO
BECOME QUITE TIRED. I DRIVE FOR A LIVING AND DID NOT
UNDERSTAND WHAT WAS HAPPENING. THIS USUALLY HAPPENS
WHILE DRIVING ON THE HIGHWAY WITH MY WINDOWS CLOSED. I
NEVER DRIVE WITH MY WINDOWS OPEN BUT NEED TO OPEN THEM
TO GET RID OF THE DIZZY AND TIRED FEELING.


**NHTSA ID Number:** 11011420
**Incident Date** July 29, 2017
**Consumer Location** PIKEVILLE, NC

14

WHILE ACCELERATING A WEIRD SMELL FILLS THE CABIN OF MY
EXPLORER. OTHER PEOPLE SMELL IT AS WELL NOT JUST ME.
SOMETIMES AFTER DRIVING FOR MORE THAN 30 MINUTES I GET A
HEADACHE OR I AM DIZZY.


**NHTSA ID Number:** 11010426
**Incident Date** April 20, 2017
**Consumer Location** CHESHIRE, CT
THE CAR PRODUCES A ROTTEN EGG SULFUR SMELL IN THE
PASSENGER CABIN WHILE ACCELERATING THE ENGINE UNDER
MODERATE TO HEAVY LOAD. THE FUMES ARE DANGEROUS AND
YOU HAVE TO OPEN ALL THE WINDOWS TO VENT THE SMELL FROM
THE PASSENGER CABIN OR I BECOME DIZZY AND LIGHTHEADED
FROM THE FUMES. THERE IS DEFINITELY AN EXHAUST LEAK THAT IS
COMING INTO THE PASSENGER CABIN WHEN THE CAR ACCELERATES
UNDER LOAD.


**NHTSA ID Number:** 11000679
**Incident Date** July 15, 2016
**Consumer Location** HUTTO, TX
I HAVE BEEN TAKING THIS VEHICLE INTO THE DEALERSHIP MANY
TIMES SINCE JULY 2016 FOR AN EXHAUST SMELL IN THE CABIN
WHEN ACCELERATING AND AT HIGH SPEEDS AND CONSTANTLY
FEEL DIZZY AND NAUSEOUS WHEN DRIVING THE VEHICLE. I HAVE
TRIED MULTIPLE DEALERSHIPS TO FIX AND THEY HAVE TRIED ALL
THE TSB'S THAT APPLY TO THE 2011-15'S, BUT SEEM TO NOT WORK
ON THE 2016. THEY HAVE RESEALED THE VEHICLE AT LEAST 3 TIMES,
REPLACED THE EXHAUST SYSTEM, AND OTHER PARTS, AND WHO
KNOWS WHAT ELSE THEY'VE TRIED, BUT STILL WITH NO
RESOLUTION. I'M TAKING IT BACK TO THE DEALERSHIP YET AGAIN
TOMORROW, BUT REFUSE TO TAKE THIS VEHICLE BACK HOME UNTIL
THE SMELL IS COMPLETELY GONE, WHICH SEEMS TO BE AN
IMPOSSIBLE FEAT AT THIS POINT. I HAVE A CASE OPEN WITH FORD,
BUT HAVE NOT NOT MADE ANY PROGRESS WITH THEM EITHER
(OVER 6 WEEKS). PLEASE DO WHAT YOU CAN TO GET THEM TO MAKE
A RECALL ASAP BEFORE I BECOME ONE OF THOSE SOCCER MOMS
THAT PASSES OUT BEHIND THE WHEEL WITH HER KIDS AND DOGS IN

15

THE CAR AND THEY MAKE A LIFETIME MOVIE ABOUT HOW MY
HUSBAND CAN NO LONGER LIVE WITHOUT US :)


**NHTSA ID Number:** 10956121
**Incident Date** February 3, 2017
**Consumer Location** CANYON COUNTRY, CA
WHILE DRIVING THE CAR ON THE FREEWAY AND UNDER
ACELLERATION THERE IS A HORRIBLE EXHAUST SMELL THAT
MAKES MY KIDS AND MYSELF NAUTIOUS. IT ALSO GIVES ME
CONSTANT HEADACHES. I DIDN'T REALIZE WHAT WAS HAPPENING
UNTIL MY HUSBAND GOT IN THE CAR FOR THE FIRST TIME AND
NOTICED THE EXHAUST SMELL


**NHTSA ID Number:** 10954621
**Incident Date** June 2, 2016
**Consumer Location** STRABANE, PA
SEVERAL TIMES WHEN DRIVING TWO OF MY CHILDREN AGES 2 AND
10 COMPLAINED OF A BAD SMELL COMING FROM THE THIRD ROW
SEATING. THEY BOTH BECAME STRANGELY ILL, BUT ONLY MY 2YO
BEGAN VOMITING. MY 10 TO COMPLAINED OF BEING LIGHT HEADED
DURING SEVERAL LONG TRIPS. I NOTICED ON MANY OCCASIONS
THAT DURING HIGH ACCELERATION ANYONE THAT SITS IN THE
THIRD ROW COMPLAINS OF STOMACH ACHES AFTER A LENGTHY
TIME IN THE VEHICLE. I CHALKED IT UP TO CAR SICKNESS, BUT
REMEMBERED THIS ONLY BECAME RELEVANT WHEN LEASING THIS
FORD. PLEASE HELP US. I HAVE THREE KIDS AND NO OTHER
VEHICLE. THIS ALL STARTED THIS PAST SUMMER.


**NHTSA ID Number:** 10943721
**Incident Date** October 3, 2016
**Consumer Location** MOUNT HOREB, WI
SINCE EARLY OCTOBER 2016, I'VE HAD A NEAR-CONSTANT EXHAUST
SMELL, SIMILAR TO WHAT NATURAL GAS OR SULFUR SMELLS LIKE,
IN THE CABIN OF MY VEHICLE THAT IS RESULTING IN HEADACHES
(LITERALLY) FOR MY ENTIRE FAMILY. DEALERSHIP HAS MADE
MULTIPLE ATTEMPTS TO REPAIR AND HAS BEEN UNSUCCESSFUL.
THE EXHAUST FUMES ARE COMING INTO THE CABIN WHEN THE

16

ENGINE IS STARTED AND VEHICLE IS PARKED OR MOVING. IN MY
ONLINE RESEARCH, I'VE FOUND THAT FORD IS UNDER
INVESTIGATION BY NHTSA FOR THIS ISSUE FOR 2010-15 MODELS, BUT
I BELIEVE MY 2016 MODEL IS AFFECTED AS WELL.


**2017 FORD EXPLORER**

**NHTSA ID Number:** 11011969
**Incident Date** June 1, 2017
**Consumer Location** RICHMOND, TX
EXHAUST ODOR SMELL, AS SOON AS CAR SPEEDS UP ABOVE THE 40
MPH, IT STARTS SMELLING EXHAUST IN THE CAR. SMELL IS SO
STRONG THAT CAUSE HEADACHE. THIS IS POISON CARBON
MONOXIDE.


**NHTSA ID Number:** 11012195
**Incident Date** November 1, 2016
**Consumer Location** BAINBRIDGE, GA
ODOR WHICH MAKES ME NAUSEA AND HAVE A HEADACHE


**NHTSA ID Number:** 11011868
**Incident Date** July 31, 2017
**Consumer Location** SHERMAN OAKS, CA
FORD EXPLORER SPORT 2017 SMELLS OF EXHAUST GAS IN THE
DRIVER CABIN. I BOUGHT THE CAR IN MARCH 5, 2017 AND TOOK IT
TO DEALER 3/9/17 TO COMPLAIN ABOUT EXHAUST FUMES SMELL
WHEN I DROVE ON THE FREEWAY. THEY TOLD ME THEY TESTED IT
AND COULD NOT SMELL ANYTHING. THE PROBLEM HAS CONTINUED
AND IT HAPPENS ESPECIALLY WHEN I DRIVE ON THE FREEWAY. IN
JUNE A WAS GOING TO DRIVE MY CAR FROM LA TO NEW JERSEY.
AFTER THREE DAYS OF DRIVING I HAD TO TURN BACK TO LA
BECAUSE I GOT DIZZY AND FELT NAUSEOUS EVERY DAY AFTER
DRIVING 6 TO 8 HOURS. I SAW LAST NIGHT ON THE NEWS THAT
THERE IS A PROBLEM WITH EXHAUST FUMES AND CARBON
MONOXIDE AND THAT MADE ME REALIZE THAT I AM AFFECTED BY
THAT. I CALLED FORDS HOTLINE EARLIER TODAY. THEY SAID THAT
THERE IS A FIX BUT WHEN I TOOK IT TO THE DEALERSHIP THEY

17

TOLD ME THAT APPARENTLY THERE IS NO FIX FOR THE 2017 YET
AND I GOT THE ADVISE TO BE CAREFULL AND DRIVE WITH MY
WINDOW DOWN. THAT IS NOT THE SOLOUTING YOU WANT AFTER
PAYING 55G AND HAVING ONLY 3500MILLES ON THE ODOMETER!

**NHTSA ID Number:** 11011802
**Incident Date** July 15, 2017
**Consumer Location** BROOKLYN, NY
EVERY TIME GAS IS PUSHED AT FULL THROTTLE THERE IS A SMELL
OF EEXHAUST IN THE CABIN OF THE CAR , THIS IS A NEW CAR JUST
PURCHASED , MY TWO KIDS VOMITED AND DON'T WANNA RIDE IN IT
THIS IS NOT A JOKE AT ALL .

**NHTSA ID Number:** 11010888
**Incident Date** July 26, 2017
**Consumer Location** PASADENA, MD
VEHICLE IN MOTION- CARBON MONOXIDE DETECTOR READING OF 45
PPM (PARTS PER MILLION). PASSENGERS COMPLAINING OF
HEADACHES, NAUSEA, LIGHTHEADEDNESS WHICH PROMPTED THE
USE OF THE METER.

**NHTSA ID Number:** 10979869
**Incident Date** April 18, 2017
**Consumer Location** GREAT RIVER, NY
ON JANUARY 27TH, 2017, MY WIFE AND I LEASED A NEW 2017 FORD
EXPLORER. EVERY TIME WE OPERATE THE VEHICLE, WE GET
EXTREMELY SICK (SOME SYMPTOMS WE EXPERIENCE ARE SORE
THROAT, RUNNING NOSE, HEADACHES, AND NAUSEA THAT LAST
HOURS AFTER EXITING THE VEHICLE). THIS OCCURS ABOUT 10-15
MINUTES WHILE DRIVING/OPERATING THE VEHICLE. THE HEATING
SYSTEM WAS SET TO 75 DEGREES FAHRENHEIT AND THE WINDOWS
WERE CLOSED. AFTER WE FELT SICK WE DID SHUT OFF THE HEATING
SYSTEM AND OPEN THE WINDOWS BUT THERE WAS A SLIGHT ODOR
IN THE CABIN AND WE STILL FEEL SEVERAL ALIMENTS. DOCTOR
APPOINTMENTS HAVE BEEN MADE FOR MYSELF AND MY 6-MONTH-
OLD DAUGHTER THAT WAS IN THE VEHICLE (THIS BEING MY MOST
SIGNIFICANT CONCERN). FORD MOTOR CORP INSTALLED A NEW

18

EXHAUST SYSTEM, REMOVED THE REAR BUMPER AND RESEALED ANY LEAKS, CHECKED CABIN PRESSURE AND TRIED TO RESEAL ANY CRACKS THAT MAY ALLOW EXHAUST TO RENTER THE CABIN. FORD STATED THAT THE VEHICLE WAS FIXED, AFTER BEING BROUGHT TO THEM FOR THE THIRD TIME (THEY SAID THEY FOUND MORE LEAKS AND RESEALED THEM), BUT REFUSED TO GIVE ME ANY DOCUMENTATION STATING THAT THE VEHICLE IS SAFE FOR MY FAMILY AND MYSELF TO BE IN. THE VEHICLE HAS BEEN IN AND OUT OF SERVICE SEVERAL TIMES, A FORD SERVICE TECHNICIAN LOCATED AT SAYVILLE FORD TEST DROVE THE VEHICLE WITH ME AND CONFIRMED THE SAME AILMENTS. THE VEHICLE WAS PICKED UP FROM SERVICE AFTER FORD STATED IT WAS FIXED FOR A 3RD TIME AND WE WERE STILL GETTING SICK WHEN WE DROVE THE VEHICLE. WE CONTACTED FORD AGAIN AND WE ADVISED THEM OF THE SITUATION FOR A 4TH TIME AND THEIR RESPONSE WAS "BY ITS VERY NATURE, NEW CAR SMELL IS DUE TO PLASTICS AND ADHESIVES IN THE VEHICLE. IT COULD BE AN IRRITANT TO SOME. UNFORTUNATELY, YOU MAY HAVE TO CONSIDER OTHER OPTIONS THAT MAY BE AVAILABLE TO YOU.

45.     According to NHTSA, it initially opened an investigation into "exhaust odors in the vehicle occupant compartment of model year (MY) 2011 to 2015 Ford Explorers" in July 2016.  During its investigation, NHTSA's Office of Defects Investigation (ODI) identified hundreds of additional complaints concerning exhaust odor and in July 2017 expanded its inquiry to cover the Class Vehicles.  As of July 27, 2017, NHTSA received 791 complaints of exhaust odor in 2011-2017 Ford Explorers, including complaints concerning Police Interceptor Ford Explorers. [6]

---

[6] *See* Exhibit A, NHTSA Investigation 2016 Ford Explorer.

46.     During its investigation, NHTSA sent Ford an Information Request letter, and in response, Ford identified "2400 reports (485 owner complaints, 1254 warranty claims, 606 dealer field reports, 55 legal claims), involving 2,051 unique vehicles, that appear to relate to the exhaust odor issue" in Ford Explorers.  "A number of the Ford reports also discussed health effects similar to the [NHTSA complaints], specifically nausea and headaches."[7]

47.     According to NHTSA, "Ford has issued multiple TSBs related to the exhaust odor issue, and in some cases revised those documents multiple times to provide dealership technicians with procedures to address complaints raised by consumers and police fleets. Concerns over the effectiveness of the procedures have been raised by vehicle owners in some cases."  NHTSA continues to evaluate the effectiveness of Ford's TSBs.[8]

48.     With respect to the Ford Explorer Police Interceptor, NHTSA reports that these vehicles may be "experiencing exhaust manifold cracks, which appear to present a low level of detectability, and may explain the exhaust odor."  NHTSA does not indicate whether this same condition is present in the other Ford Explorers subject to its investigation.[9]

---

[7] *Id.*

[8] *Id.*

[9] *Id.*; Exhibit F, *Ford Takes Action For First Responders; Underscores No Issue With Carbon Monoxide In Regular Explorer,* The Ford Motor Company

## 2. Technical Service Bulletins

49. As referenced by NHTSA, Ford has issued TSBs for Ford Explorers that concern the presence of exhaust fumes in the passenger compartment. Such TSBs, which evidence Defendant's exclusive and superior knowledge regarding the defect in earlier models and which implicate the same problem as present in the Class Vehicles, were issued to its exclusive network of dealerships beginning on or around December 2012.

50. In December 2012, Ford issued TSB 12-12-4, which provided instructions to Ford dealerships to remedy the presence of exhaust fumes in 2011, 2012 and 2013 Ford Explorers.

51. In July 2014, Ford issued TSB 14-0130, which superseded TSB 12-12-4 and included 2014 and 2015 Ford Explorers.

52. According to TSB 14-0130, "[s]ome 2011-2015 Explorer vehicles may exhibit an exhaust odor in the vehicle with the auxiliary climate control system on. Customers may indicate the odor smells like sulfur."[10]

---

MediaCenter, On July 28, 2017, Ford issued a statement claiming that "holes and unsealed spaces" in the rear of Police Interceptor Ford Explorers may allow exhaust to enter the cabin. Ford stated, however, that "[d]rivers of regular, non-police Ford Explorers have no reason to be concerned." https://media.ford.com/content/fordmedia/fna/us/en/news/2017/07/28/police-utility-statement.html (last visited Aug. 7, 2017) ("July 28, 2017 Ford Statement").

[10] Exhibit G, Exhaust Odor in Vehicle, TSB 14-0130.

53.    TSB 14-0130 did not identify a specific remedy for the presence of exhaust fumes, instead suggesting several distinct modifications/replacements.  In particular, TSB 14-0130 suggested the following:

- Reprograming the HVAC System;

- Replacing the left side rear air extractor;

- Inspecting for the presence of drain valves and installing new drain valves;

- Sealing the rear horizontal sheet metal lap joints and the rear sheet metal overlap flange; and

- Applying undercoating to the auxiliary air conditioning lines and sealed areas.[11]

54.    This scattershot approach demonstrates that Ford knew of the defect in earlier model Ford Explorers, but did not know of a specific and effective fix to protect car occupants from exposure to exhaust fumes.  Neither TSB 12-12-4 nor TSB 14-0130 acknowledged the presence of carbon monoxide in the passenger compartment.

55.    Based on NHTSA's report[12] and upon information and belief, both TSB 12-12-4 and TSB 14-0130 failed to remedy the defect present in earlier model Ford Explorers.    Similarly,  upon  information  and  belief,  the  suggested

_____

[11] *Id.*

[12] *See* Exhibit A, NHTSA Investigation 2016 Ford Explorer.

22

modifications/replacements in TSB 12-12-4 and TSB 14-0130 do not sufficiently remedy the Exhaust Fume Defect in the Class Vehicles.

56.    Plaintiffs were never provided with copies of or information about TSB 12-12-4 and TSB 14-0130, and to the extent that Ford has issued subsequent TSBs that include the Class Vehicles, Plaintiffs have never been provided with copies.

57.    Further, upon information and belief, the TSBs were not directly communicated to consumers.  Thus, despite Ford's knowledge of the defect and associated safety hazard, Defendant failed to disclose the defect to owners and lessors of the Class Vehicles, including Plaintiffs and members of the Classes, and instead, intentionally concealed the Exhaust Fume Defect.

58.    The TSBs, along with pre-production testing, pre-production design failure mode and analysis data, production design failure mode and analysis data, early consumer complaints made to Defendant's network of exclusive dealers and NHTSA, aggregate warranty data compiled from those dealers, repair order and parts data received from the dealers, and testing performed in response to consumer complaints, evidences that since as early as 2012, Defendant has had exclusive and superior knowledge regarding the defect in earlier model Ford Explorers – the same defect present in the Class Vehicles.

59.     Defendant gained its knowledge of the Exhaust Fume Defect through sources not available to Plaintiffs and members of the Classes.

**3.      Prior Class Litigation**

60.     In late 2016, Ford settled a class action litigation, *Sanchez Knutson v. Ford Motor Co.*, No. 14-cv-61344-WPD (S.D. Fla.), which alleged a defect identical to the Exhaust Fume Defect – "exhaust and other gases, including dangerous quantities of carbon monoxide may enter the passenger compartments of the vehicles" for 2011-2015 Ford Explorers.

61.     The settlement provided for the following consideration to affected car owners: (1) Notice of a New Exhaust Odor TSB, which was to be issued in 2016 and which provided an updated procedure to address exhaust fumes in the passenger compartment; and (2) Reimbursement of out of pocket expenses related to repairs conducted within or without the warranty period.

62.     Plaintiffs and Class members did not receive any notice or remedy for the Exhaust Fume Defect, despite its clear similarity to the problem in model years 2011-2015.

**V.      TOLLING OF THE STATUE OF LIMITATIONS AND ESTOPPEL**

63.     Any applicable statute of limitations has been tolled by Defendant's knowing and active concealment of the defect and the omissions alleged herein. Through no fault or lack of diligence, Plaintiffs and members of the Classes were

deceived regarding the Class Vehicles and could not reasonably discover the defect or Defendant's deception with respect to the Exhaust Fume Defect.

64.    Plaintiffs and members of the Classes did not discover and did not know of any facts that would have caused a reasonable person to suspect that Defendant was concealing a defect and/or that the Class Vehicles contained the defect and corresponding safety hazard.  As alleged herein, the existence of the defect was material to Plaintiffs and members of the Classes at all relevant times. Within the time period of any applicable statutes of limitations, Plaintiffs and members of the Classes could not have discovered through the exercise of reasonable diligence that Defendant was concealing the Exhaust Fume Defect.

65.    At all times, Defendant is and was under a continuous duty to disclose to Plaintiffs and members of the Classes the true standard, quality and grade of the Class Vehicles and to disclose the defect which resulted in the presence of exhaust fumes, including carbon monoxide, in the passenger compartment.

66.    Defendant knowingly, actively and affirmatively concealed the facts alleged herein.  Plaintiffs and members of the Classes reasonably relied on Defendant's knowing, active and affirmative concealment.

67.    For these reasons, all applicable statutes of limitation have been tolled based on the discovery rule and Defendant's fraudulent concealment, and

Defendant is estopped from relying on any statutes of limitations in defense of this action.

## VI.    CLASS ACTION ALLEGATIONS

68.    Plaintiffs bring this action pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(1), (b)(2) and/or (b)(3) on behalf of the following Class and Sub-Classes:

> **Nationwide Class**: All persons or entities in the United States who purchased, leased or own a Class Vehicle (the "Nationwide Class" or "Class");

> **Georgia Sub-Class**: All persons or entities who purchased or leased a Class Vehicle in the State of Georgia and all persons or entities in the State of Georgia who purchased, leased or own a Class Vehicle (the "Georgia Sub-Class"); and

> **Pennsylvania Sub-Class**: All persons or entities who purchased or leased a Class Vehicle in the State of Pennsylvania and all persons or entities in the State of Pennsylvania who purchased, leased or own a Class Vehicle (the "Pennsylvania Sub-Class").

69.    Excluded from the Class and Sub-Classes are Defendant and its parents, subsidiaries and corporate affiliates.  Plaintiffs reserve the right to revise the definition of the Class and Sub-Classes based upon subsequently discovered information and reserve the right to establish additional subclasses where appropriate.  The Class and Sub-Classes are collectively referred to herein as the "Classes."

70.    The Classes are so numerous that joinder of all members is impracticable.    Plaintiffs believe that there are at least thousands of proposed members of the Classes throughout the United States.

71.    Common questions of law and fact exist as to all members of the Classes and predominate over any issues solely affecting individual members of the Classes.    The common and predominating questions of law and fact include, but are not limited to:

- Whether the Class Vehicles contains a design defect and/or a defect in material, manufacturing and/or workmanship;

- Whether the defect in the Class Vehicles presents a safety hazard;

- Whether Defendant knew or should have known that defect in the Class Vehicles presents a safety hazard;

- Whether Defendant had a duty to disclose defect in the Class Vehicles;

- Whether Defendant breached its duty to disclose defect in the Class Vehicles;

- Whether Defendant intentionally and knowingly concealed, suppressed and/or omitted material facts concerning the standard, quality or grade of the Class Vehicles and/or the Exhaust Fume Defect;

- Whether Defendant negligently omitted material facts concerning the standard, quality or grade of the Class Vehicles and/or the Exhaust Fume Defect;

- Whether Defendant made material omissions concerning the standard, quality or grade of the Class Vehicles and/or the Exhaust Fume Defect;

27

- Whether members of the Classes would pay less for a Class Vehicle if Defendant, at the time of purchase or lease, disclosed the defect;

- Whether members of the Classes would have purchased or leased a Class Vehicle if Defendant, at the time of purchase or lease, disclosed the defect;

- Whether Defendant actively concealed material facts from Plaintiff and members of the Classes in order to, *inter alia*, sell more Class Vehicles;

- Whether Defendant breached its express and/or implied warranties to Plaintiffs and members of the Classes;

- Whether Defendant violated the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.*;

- Whether Defendant violated the Georgia Fair Business Practices Act, Ga. Code Ann., Com. Law § 10-393;

- Whether Defendant violated the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. §§ 201-1, *et seq.*;

- Whether Defendant was unjustly enriched by its conduct; and

- Whether damages, restitution, equitable, injunctive, compulsory, or other relief is warranted.

72.   Plaintiffs' claims are typical of the claims of the Classes that Plaintiffs seek to represent.  As alleged herein, Plaintiffs and the Classes sustained damages arising out of the same illegal actions and conduct by Defendant.

73.   Plaintiffs are willing and prepared to serve the Classes in a representative capacity with all of the obligations and duties material thereto. Plaintiffs will fairly and adequately protect the interests of the Classes and has no

28

interests adverse to or in conflict with the interests of the other members of the Classes.

74.    Plaintiffs' interests are co-extensive with and are not antagonistic to those of absent members within the Classes.  Plaintiffs will undertake to represent and protect the interests of absent members within the Classes and will vigorously prosecute this action.

75.    Plaintiffs have engaged the services of the undersigned counsel. Counsel is experienced in complex litigation, will adequately prosecute this action, and will assert and protect the rights of, and otherwise represent, Plaintiffs and absent members of the Classes.

76.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy.  Plaintiffs know of no difficulty to be encountered in the management of this litigation that would preclude its maintenance as a class action.

77.    Class action status is warranted under Rule 23(b)(3) because questions of law or fact common to the members of the Classes predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

78.    The Classes may also be certified under Rule 23(b)(1)(A) and (B) because the prosecution of separate actions by individual members of the Classes

would create a risk of inconsistent or varying adjudications with respect to individual members of the Classes, which would establish incompatible standards of conduct for Defendant, would be dispositive of the interests of nonparties to the individual adjudications, and would substantially impair the ability of such nonparties to protect their interests.

79.    The Classes may also be certified under Rule 23(b)(2) because Defendant has acted on grounds generally applicable to the Classes, thereby making it appropriate to award final injunctive relief or corresponding declaratory relief with respect to the Classes.

80.    The interest of members within the Classes in individually controlling the prosecution of separate actions is theoretical and not practical.  The Classes have a high degree of similarity and are cohesive, and Plaintiffs anticipate no difficulty in the management of this matter as a class action.

81.    The nature of notice to the proposed Classes is contemplated to be by direct mail upon certification of the Classes or, if such notice is not practicable, by the best notice practicable under the circumstance including, *inter alia*, email, publication in major newspapers and/or on the internet.

## VII.   CLAIMS FOR RELIEF

### COUNT I
### Fraudulent Concealment
### (On behalf of the Nationwide Class or, alternatively,
### on behalf of the Georgia and Pennsylvania Sub-Classes)

82.   Plaintiffs incorporate and reallege each preceding paragraph as though fully set forth herein.

83.   Plaintiffs bring this count on behalf of themselves and the members of the Nationwide Class or, alternatively, on behalf of the Georgia and Pennsylvania Sub-Classes.

84.   Defendant intentionally and knowingly concealed, suppressed and/or omitted material facts including the standard, quality or grade of the Class Vehicles and the presence of the Exhaust Fume Defect installed in the Class Vehicles, which exposes drivers and occupants to noxious gases, fumes and odors and/or an associated safety hazard from same, with the intent that Plaintiffs and members of the Classes rely on Defendant's omissions.   As a direct result of Defendant's fraudulent conduct, members of the Classes have suffered actual damages.

85.   Defendant knew (at the time of sale or lease and thereafter) that the Class Vehicles contained Exhaust Fume Defect, concealed the defect, and never intended to repair or replace the Exhaust Fume Defect during the warranty periods. To date, Defendant has not provided Plaintiffs or members of the Classes with a repair or remedy that will eliminate Exhaust Fume Defect.

31

86.     Defendant owed a duty to disclose the Exhaust Fume Defect and its corresponding safety hazard to Plaintiffs and members of the Classes because Defendant possessed superior and exclusive knowledge regarding the defect. Rather than disclose the defect, Defendant intentionally and knowingly concealed, suppressed and/or omitted material facts including the standard, quality or grade of the Class Vehicles and the presence of the Exhaust Fume Defect, to sell additional Class Vehicles and avoid the cost of repair or replacement.

87.     The fact that the Exhaust Fume Defect exposes drivers and occupants to dangerous gases including carbon monoxide is material because Plaintiffs and members of the Classes had a reasonable expectation that the vehicles would not expose them and other vehicle occupants to such a safety hazard.  No reasonable consumer expects a vehicle to be designed, manufactured and assembled such that exhaust fumes are present in the passenger compartment while driving.

88.     Plaintiffs and members of the Classes would not have purchased or leased the Class Vehicles but for Defendant's omissions and concealment of material facts regarding the nature and quality of the Class Vehicles and existence of the Exhaust Fume Defect, or would have paid less for the Class Vehicles.

89.     Defendant knew its concealment and suppression of material facts were false and misleading and knew the effect of concealing those material facts. Defendant knew its concealment and suppression of the Exhaust Fume Defect

would sell more Class Vehicles and would discourage Plaintiffs and members of the Classes from seeking replacement or repair of the Exhaust Fume Defect. Further, Defendant intended to induce Plaintiffs and members of the Classes into purchasing or leasing the Class Vehicles and to discourage them from seeking replacement or repair of the Exhaust Fume Defect, in order to decrease costs and increase profits.

90.    Defendant acted with malice, oppression and fraud.

91.    Plaintiffs and members of the Classes reasonably relied upon Defendant's knowing concealment and omissions.  As a direct and proximate result of Defendant's omissions and active concealment of material facts regarding the Exhaust Fume Defect and associated safety hazard, Plaintiffs and members of the Classes have suffered actual damages in an amount to be determined at trial.

**COUNT II**
**Negligent Misrepresentation**
**On behalf of the Nationwide Class or, alternatively,**
**on behalf of the Georgia and Pennsylvania Sub-Classes**

92.    Plaintiffs incorporate and reallege each preceding paragraph as though fully set forth herein.

93.    Plaintiffs bring this count on behalf of themselves and the members of the Nationwide Class or, alternatively, on behalf of the Georgia and Pennsylvania Sub-Classes.

33

94.    Defendant owed a duty to disclose the Exhaust Fume Defect and its corresponding safety hazard to Plaintiffs and members of the Classes because Defendant possessed superior and exclusive knowledge regarding the defect and the associated risks.

95.    Defendant negligently omitted material facts including the standard, quality or grade of the Class Vehicles and the presence of the Exhaust Fume Defect in the Class Vehicles. As a direct result of Defendant's negligent conduct, members of the Classes have suffered actual damages.

96.    The Exhaust Fume Defect is material because Plaintiffs and members of the Classes had a reasonable expectation that the vehicles would not suffer from a defect that would expose drivers and occupants to dangerous gases including carbon monoxide.  No reasonable consumer expects a vehicle to present a defect that exposes drivers and occupants such a safety hazard.

97.    Plaintiffs and members of the Classes would not have purchased the Class Vehicles but for Defendant's negligent omissions of material facts regarding the nature and quality of the Class Vehicles and existence of the Exhaust Fume Defect, or would have paid less for the Class Vehicles.  Plaintiffs and members of the Classes justifiably relied upon Defendant's negligent omissions of material facts.

98.     As a direct and proximate result of Defendant's negligent omissions of material facts regarding the standard, quality or grade of the Class Vehicles and/or the presence of the Exhaust Fume Defect, Plaintiffs and members of the Classes have suffered an ascertainable loss and actual damages in an amount to be determined at trial.

## COUNT III
## Breach of Express Warranty
### (On behalf of the Nationwide Class or, alternatively,
### on behalf of the Georgia and Pennsylvania Sub-Classes)

99.     Plaintiffs incorporate and reallege each preceding paragraph as though fully set forth herein.

100.   Plaintiffs bring this count on behalf of themselves and the Nationwide Class or, alternatively, on behalf of the Georgia and Pennsylvania Sub-Classes.

101.   Defendant marketed the Class Vehicles as safe vehicles.   Such representations formed the basis of the bargain in Plaintiffs' and members of the Classes' decisions to purchase or lease the Class Vehicles.

102.   Defendant is and was at all relevant times a merchant and seller of motor vehicles within the meaning of the Uniform Commercial Code.

103.   With respect to leases, Defendant is and was at all relevant times a lessor of motor vehicles within the meaning of the Uniform Commercial Code.

104.   The Class Vehicles are and were at all relevant times goods within the meaning of the Uniform Commercial Code.

35

105.   In connection with the purchase or lease of each of the Class Vehicles, Defendant provides New Vehicle Limited Warranty coverage for the Class Vehicles for 3 years or 36,000 miles which includes all components other than normal wear and maintenance items.   Under the warranties provided to Plaintiffs and members of the Classes, Defendant promised to repair or replace covered components arising out of defects in materials and/or workmanship, including the Exhaust Fume Defect, at no cost to owners and lessees of the Class Vehicles and within a reasonable time.   As alleged herein, Defendant breached these warranties.

106.   Defendant's warranties formed a basis of the bargain that was reached when Plaintiffs and members of the Classes purchased or leased their Class Vehicles.

107.   Plaintiffs and members of the Classes experienced the existence of the Exhaust Fume Defect within the warranty periods but had no knowledge of the existence of the defect and associated safety hazard, which were known and concealed by Defendant.   Despite the existence of the warranties, Defendant failed to adequately inform Plaintiffs and members of the Classes that the Class Vehicles contained the Exhaust Fume Defect and failed to provide a suitable remedy or repair free of charge within a reasonable time.

108.   Defendant breached the express warranty promising to repair and correct a manufacturing defect or defect in materials or workmanship of any parts it supplied.

109.   On information and belief, Defendant has not suitably repaired or replaced the Exhaust Fume Defect free of charge for Plaintiffs and members of the Classes despite the existence of the defect in the Class Vehicles at the time of sale or lease.

110.   Defendant was provided notice of the Exhaust Fume Defect by numerous consumer complaints made to their authorized dealers nationwide, complaints to NHTSA, and through their own testing.   Affording Defendant a reasonable opportunity to cure its breach of written warranties would be unnecessary and futile here because Defendant has known of and concealed the Exhaust Fume Defect and has failed to provide a suitable repair or replacement of the Exhaust Fume Defect free of charge within a reasonable time.

111.   Any attempt by Defendant to disclaim or limit recovery to the terms of the express warranties is unconscionable and unenforceable here.   Specifically, Defendant's warranty limitation is unenforceable because it knowingly sold or leased a defective product without informing consumers about the defect.   The limits contained in Defendant's warranty periods were also unconscionable and inadequate to protect Plaintiffs and members of the Classes.   Among other things,

Plaintiffs and the members of the Classes did not determine these limitations, the terms of which unreasonably favored Defendant.  A gross disparity in bargaining power existed between Defendant and members of the Classes, and Defendant knew or should have known that the Class Vehicles were defective at the time of sale or lease and that the Exhaust Fume Defect posed a safety hazard.

112.  Further, the limited warranty promising to repair and/or correct a manufacturing defect fails in its essential purpose because the contractual remedy is insufficient to make Plaintiffs and members of the Classes whole because, on information and belief, Defendant has failed and/or has refused to adequately provide the promised remedies within a reasonable time.

113.  Defendant knew that the Class Vehicles were inherently defective and did not conform to their warranties, and Plaintiffs and members of the Classes were induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

114.  As a direct and proximate result of Defendant's breach of express warranties, Plaintiffs and members of the Classes have been damaged in an amount to be determined at trial.

115.  Finally, because of Defendant's breach of express warranty as set forth herein, Plaintiffs and members of the Classes assert, as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to

38

Plaintiffs and members of the Classes of the purchase or lease price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

## COUNT IV
### Breach of Implied Warranty of Merchantability,
### (On behalf of the Nationwide Class or, alternatively,
### on behalf of the Georgia and Pennsylvania Sub-Classes)

116.   Plaintiffs incorporate and reallege each preceding paragraph as though fully set forth herein.

117.   Plaintiffs bring this count on behalf of themselves and the Nationwide Class or, alternatively, on behalf of the Georgia and Pennsylvania Sub-Classes.

118.   Plaintiffs and members of the Classes purchased or leased the Class Vehicles from Defendant by and through Defendant's authorized agents for retail sales, or were otherwise expected to be the eventual purchasers of the Class Vehicles when bought from a third party.  At all relevant times, Defendant was the manufacturer, distributor, warrantor, and/or seller of Class Vehicles.  Defendant knew or had reason to know of the specific use for which the Class Vehicles were purchased or leased.

119.   Defendant is and was at all relevant times a merchant and seller of motor vehicles within the meaning of the Uniform Commercial Code.

120.   With respect to leases, Defendant is and was at all relevant times a lessor of motor vehicles within the meaning of the Uniform Commercial Code.

39

121.   The Class Vehicles are and were at all relevant times goods within the meaning of the Uniform Commercial Code.

122.   Defendant impliedly warranted that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used.

123.   The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and were and are not fit for the ordinary purpose of providing safe and reliable transportation.  The Class Vehicles contain an inherent defect – the Exhaust Fume Defect – (at the time of sale or lease and thereafter) and present an undisclosed safety hazard to drivers and occupants.  Thus, Defendant breached its implied warranty of merchantability.

124.   Defendant cannot disclaim its implied warranty as it knowingly sold or leased a defective product.

125.   Defendant was provided notice of the Exhaust Fume Defect by numerous consumer complaints made to its authorized dealers nationwide, complaints to NHTSA, and through its own testing.  Affording Defendant a reasonable opportunity to cure its breach of implied warranties would be unnecessary and futile here because Defendant has known of and concealed the Exhaust Fume Defect and, on information and belief, has refused to repair or replace Exhaust Fume Defect free of charge within a reasonable time.

126.   As a direct and proximate result of Defendant's breach of the implied warranty of merchantability, Plaintiffs and members of the Classes have been damaged in an amount to be proven at trial.

127.   Any attempt by Defendant to disclaim or limit the implied warranty of merchantability vis-à-vis consumers is unconscionable and unenforceable here. Specifically, Defendant's warranty limitation is unenforceable because it knowingly sold or leased a defective product without informing consumers about the defect.   The limits contained in Defendant's warranty periods were also unconscionable and inadequate to protect Plaintiffs and members of the Classes. Among other things, Plaintiffs and members of the Classes did not determine these limitations, the terms of which unreasonably favored Defendant.  A gross disparity in bargaining power existed between Defendant and members of the Classes, and Defendant knew or should have known that the Class Vehicles were defective at the time of sale or lease and that the Exhaust Fume Defect posed a safety hazard.

128.   Plaintiffs and members of the Classes have been excused from performance of any warranty obligations as a result of Defendant's conduct described herein.

129.   The applicable statute of limitations for the implied warranty claim has been tolled by the discovery rule, fraudulent concealment and the terms of the express warranty.

**COUNT V**
**Violation of the Magnuson-Moss Warranty Act ("MMWA"),**
**15 U.S.C. § 2301, et seq.**
**(On behalf of the Nationwide Class or, alternatively,**
**on behalf of the Georgia and Pennsylvania Sub-Classes)**

130.   Plaintiffs incorporate and reallege each preceding paragraph as though fully set forth herein.

131.   Plaintiffs bring this count on behalf of themselves and the Nationwide Class or, alternatively, on behalf of the Georgia and Pennsylvania Sub-Classes.

132.   Plaintiffs satisfy the MMWA jurisdictional requirement because Plaintiffs allege diversity jurisdiction under CAFA, 28 U.S.C. § 1332(d)(2).

133.   Plaintiffs and members of the Classes are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

134.   Defendant is a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

135.   The Class Vehicles are "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

136.   The MMWA provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty. *See* 15 U.S.C. § 2310(d)(1).

137.   Defendant provided Plaintiffs and members of the Classes with one or more express warranties, which are covered under 15 U.S.C. § 2301(6).

Specifically, Defendant provided a warranty for 3 years or 36,000 miles which includes all components other than normal wear and maintenance items.  Under warranties provided to members of the Classes, Defendant promised to repair or replace covered defective components arising out of defects in materials and/or workmanship, including the Exhaust Fume Defect, at no cost to owners and lessees of the Class Vehicles.  As alleged herein, Defendant breached these warranties.

138.   Plaintiffs and members of the Classes experienced the Exhaust Fume Defect within the warranty periods but Defendant failed to inform Plaintiffs and members of the Classes of the existence of the Exhaust Fume Defect and associated safety hazard, and failed to provide a suitable remedy or repair of the Exhaust Fume Defect free of charge within a reasonable time.

139.   Any attempt by Defendant to disclaim or limit their express or implied warranties is unconscionable and unenforceable here. Specifically, Defendant's warranty limitations are unenforceable because it knowingly sold or leased a defective product without informing consumers about the defect.  The limits contained in Defendant's warranty periods are also unconscionable and inadequate to protect Plaintiffs and members of the Classes.  Among other things, Plaintiffs and members of the Classes did not determine these limitations, the terms of which unreasonably favored Defendant.  A gross disparity in bargaining power existed between Defendant and members of the Classes, and Defendant knew or should

have known that the Class Vehicles were defective at the time of sale or lease and that they posed a safety risk.

140.   The Class Vehicles' implied warranties are covered under 15 U.S.C. § 2301(7).

141.   Defendant breached these warranties by failing to disclose and fraudulently concealing information regarding the standard, quality or grade of the Class Vehicles and the presence of the Exhaust Fume Defect.  Without limitation, the Class Vehicles share a common defect in design, material, manufacturing and/or workmanship that fails to operate as represented by Defendant and presents a safety risk.

142.   Affording Defendant a reasonable opportunity to cure its breach of warranties would be unnecessary and futile.  At the time of sale or lease of each Class Vehicle and all relevant times thereafter, Defendant knew, or was reckless in not knowing, of the material omissions concerning the standard, quality or grade of the Class Vehicles and the presence of the Exhaust Fume Defect, but failed to repair or remedy and/or disclose the defect.  Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement that Plaintiffs resort to an informal dispute resolution procedure and/or afford Defendant a reasonable opportunity to cure their breach of warranties is excused and thereby deemed satisfied.

143.   Plaintiffs and members of the Classes would suffer economic hardship if they returned their Class Vehicles, but did not receive the return of all payments made by them to Defendant.  Thus, Plaintiffs and members of the Classes have not re-accepted their Class Vehicles by retaining them.

144.   The amount in controversy of Plaintiffs' individual claims meets or exceeds the sum of $25.  The amount in controversy of this action exceeds the sum of $50,000, exclusive of interest and costs, computed on the basis of all claims to be determined in this lawsuit.

145.   Plaintiffs, individually and on behalf of members of the Classes, seek all damages permitted by law, including diminution in the value of the Class Vehicles, in an amount to be proven at trial.

### COUNT VI
### Unjust Enrichment
### (On behalf of the Nationwide Class or, alternatively,
### on behalf of the Georgia and Pennsylvania Sub-Classes)

146.   Plaintiffs incorporate and reallege each preceding paragraph as though fully set forth herein.

147.   Plaintiffs bring this count on behalf of themselves and the Nationwide Class or, alternatively, on behalf of the Georgia and Pennsylvania Sub-Classes.

148.   Plaintiffs and members of the Classes conferred a benefit on Defendant by leasing or purchasing the Class Vehicles.  Defendant was and should

45

have been reasonably expected to provide Class Vehicles free from the Exhaust Fume Defect and associated safety risks.

149.    Defendant unjustly profited from the lease and sale of the Class Vehicles at inflated prices as a result of its omissions and concealment of the Exhaust Fume Defect in the Class Vehicles.

150.    As a proximate result of Defendant's omissions and concealment of the Exhaust Fume Defect in the Class Vehicles, and as a result of Defendant's ill-gotten gains, benefits and profits, Defendant has been unjustly enriched at the expense of Plaintiffs and members of the Classes.  It would be inequitable for Defendant to retain its ill-gotten profits without paying the value thereof to Plaintiffs and members of the Classes.

151.    Plaintiffs and members of the Classes are entitled to restitution of the amount of Defendant's ill-gotten gains, benefits and profits, including interest, resulting from its unlawful, unjust and inequitable conduct.

152.    Plaintiffs and members of the Classes seek an order requiring Defendant to disgorge its gains and profits to Plaintiffs and members of the Classes, together with interest, in a manner to be determined by the Court.

## COUNT VII
## VIOLATION OF THE GEORGIA FAIR BUSINESS PRACTICES ACT, GA. CODE ANN., COM. LAW § 10-393.
### (On Behalf of Plaintiff Persad and the Georgia Sub-class)

153.   Plaintiffs incorporate by reference all allegations in the above preceding paragraphs as if set forth fully in this count.

154.   Plaintiff Persad asserts this count on behalf of himself and members of the Georgia Sub-Class.

155.   Defendant's practices, acts, policies and course of conduct, as described above, constitute unconscionable commercial practices, deception, fraud, false pretense, false promise, misrepresentations and/or the knowing concealment, suppression, or omission of material facts with the intent that consumers, including Plaintiff and members of the Georgia Sub-Class, rely upon such concealment, suppression and omission in connection with the sale or advertisement of Class Vehicles in violation of the Georgia Fair Business Practices Act ("FBPA"), Ga. Code Ann., § 10-1-393, when purchasing and/or leasing the Class Vehicles.

156.   Defendant intentionally concealed, suppressed and omitted to Plaintiff and members of the Georgia Sub-Class, at the time of purchase or lease, that the Class Vehicles contained manufacturing, materials and/or workmanship defects, with the intent that Plaintiff and members of the Georgia Sub-Class rely upon such concealment, suppression, failure to disclose or omission.

47

157.   Defendant knew and intentionally concealed, suppressed and omitted to consumers who purchased or leased the Class Vehicles, including Plaintiff and members of the Georgia Sub-Class, the existence of defect in the Class Vehicles that permitted exhaust fumes, such as carbon monoxide, to enter the passenger compartment.

158.   Defendant actively concealed to Plaintiff and members of the Georgia Sub-Class, the fact that the Class Vehicles were defective, despite the fact that Defendants learned of such defects at least as early as 2012.

159.   Defendant's acts of omission were done with knowledge and intent to induce Plaintiff and members of the Georgia Sub-Class to rely upon Defendants' deception and decide to purchase and/or lease a Class Vehicle.

160.   Defendant's deceptive acts of omission were material and in regard to facts material to a consumer's decision to purchase and/or lease a Class Vehicle.

161.   Defendant's conduct was in the course of conduct involving trade or commerce in the sale and/or lease of the Class Vehicles, and/or related activities.

162.   Defendant's acts of omission caused Plaintiff and members of the Georgia Sub-Class to suffer ascertainable losses of money and property in that they were forced to expend sums of money at Defendants' dealerships and elsewhere to repair the defect, despite the fact Defendants had prior knowledge of the defect at the time of placing Class Vehicles into the stream of commerce.

163.   In addition to direct monetary losses, Plaintiff and members of the Georgia Sub-Class suffered an ascertainable loss by receiving less value than what was promised to them at the time of purchase and/or lease and by being forced to pay for repairs out of pocket.  Specifically, Plaintiff and members of the Georgia Sub-Class paid for a vehicle that is now worth significantly less because of the existence of the defect, because of the safety hazard it causes to occupants of the Class Vehicles, and because the purchase price of the Class Vehicles included a warranty program that was supposed to provide free repairs for all defects in materials or workmanship that occurred during the warranty period, but instead were deprived of the value of this warranty due to Defendants' knowing concealment.

164.  A causal relationship exists between Defendant's deceptive and unlawful conduct and the ascertainable losses suffered by Plaintiff and members of the Georgia Sub-Class.   Consumers, including Plaintiff and members of the Georgia Sub-Class relied upon Defendant's concealments, and omissions in deciding to purchase and/or lease their Class Vehicles.  Had the defect in the Class Vehicles been disclosed, they would not have purchased them or would have paid less for the Class Vehicles had they decided to purchase them.

## COUNT VIII
## VIOLATION OF THE PENNSYLVANIA UNFAIR TRADE PRACTICES AND
## CONSUMER PROTECTION LAW, 73 P.S. §§ 201-1 *ET SEQ.*
### (On Behalf of Plaintiffs Wright and Drummond and the Pennsylvania Sub-Class)

165.   Plaintiffs incorporate by reference all allegations in the above preceding paragraphs as if set forth fully in this count.

166.   Plaintiffs Wright and Drummond assert this count on behalf of themselves and members of the Pennsylvania Sub-Class.

167.   Plaintiffs Wright and Drummond and members of the Pennsylvania Sub-Class are persons within the context of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. §§ 201-1 *et seq.* (hereinafter "PUTPCPL"), specifically § 201-2(2).

168.   Defendant is a person within the context of PUTPCPL, § 201-2(2).

169.   Defendant is engaged in trade and commerce within the context of PUTPCPL, § 201-2(3).

170.   Plaintiffs Wright and Drummond and members of the Pennsylvania Sub-Class purchased and/or leased Class Vehicles for personal, family or household use.

171.   Defendant committed unfair and deceptive acts in the course of trade and commerce as described in this complaint in violation of PUTPCPL, § 201-2(4)(v), (vii), (ix) and (xxi), *inter alia*.

50

172.   Defendant committed unconscionable, deceptive and unfair trade practices including but not limited to deception, fraud and the knowing concealment, suppression and omission of material facts concerning Class Vehicles' defect, which permitted exhaust fumes, such as carbon monoxide, to enter the passenger compartment, with intent that Plaintiffs Wright and Drummond and members of the Pennsylvania Sub-Class would rely upon their omissions in connection with the sale and/or advertisement of Class Vehicles.

173.   Defendants actively suppressed the fact that the Class Vehicles permitted exhaust fumes, such as carbon monoxide, to enter the passenger compartment because of materials, workmanship, design and manufacture defects.

174.   Defendant's deceptive trade practices were likely to deceive a consumer acting reasonably under the circumstances under which Plaintiffs Wright and Drummond and members of the Pennsylvania Sub-Class were caused to expend sums of money in purchasing and later repairing their Class Vehicles.  As reasonable consumers, Plaintiffs Wright and Drummond and members of the Pennsylvania Sub-Class had no reasonable way to know that Class Vehicles were defective in materials, workmanship, design and manufacture.  Any reasonable consumer under the circumstances would have relied on the representations of Defendant who alone possessed the knowledge as to the quality and characteristics of the Class Vehicles.

175.   Defendant fraudulently concealed the defect within the express warranty period without repairing it.

176.   Defendant violated the PUTPCPL by failing to inform Class Vehicle owners and lessors prior to purchase or lease and/or during the warranty period that Class Vehicle Class Vehicles' defect, which permitted exhaust fumes, such as carbon monoxide, to enter the passenger compartment.

177.   Defendant violated the PUTPCPL by failing to inform Class Vehicle owners and lessors prior to purchase or lease and/or during the warranty period that Class Vehicle Class Vehicles' defect, which permitted exhaust fumes, such as carbon monoxide, to enter the passenger compartment.

178.   Defendant committed unfair and deceptive business practices as described in this complaint.   Defendant repeatedly violated the PUTPCPL on multiple occasions with their continuous course of conduct including omissions of material fact concerning, *inter alia,* the presence of the Exhaust Fume Defect in the Class Vehicles owned by Plaintiffs Wright and Drummond and members of the Pennsylvania Sub-Class.

179.   As a proximate and direct result of Defendant's unfair and deceptive business trade practices, Plaintiffs Wright and Drummond and members of the Pennsylvania Sub-Class purchased or leased Class Vehicles and sustained an ascertainable loss and financial harm.

180.   Plaintiffs Wright and Drummond and members of the Pennsylvania Sub-Class experienced diminution of Class Vehicle resale value, repair costs and incurred other substantial monetary damages and inconvenience.

181.   Defendant's conduct offends public policy as established by statutes and common law; is immoral, unethical, oppressive and/or unscrupulous; and caused unavoidable substantial injury to Class Vehicle owners and lessors (who were unable to have reasonably avoided the injury due to no fault of their own) without any countervailing benefits to consumers.

182.   Plaintiffs Wright and Drummond and members of the Pennsylvania Sub-Class demand judgment against Defendant for restitution, disgorgement, statutory and actual monetary damages including multiple damages, interest, costs, attorneys' fees and injunctive relief including a declaratory judgment and an appropriate court order prohibiting Defendant from further deceptive acts and practices described in this complaint.

## VIII. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, respectfully requests that this Court enter judgment against Defendant and in favor of Plaintiffs and the Classes, and award the following relief:

- An order certifying this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, declaring Plaintiff as the representative of the Class and Sub-Classes, and Plaintiff's counsel as counsel for the Class and Sub-Classes;

- An order awarding declaratory relief and enjoining Defendant from continuing the unlawful, deceptive, fraudulent, harmful, and unfair business conduct and practices alleged herein;

- Appropriate injunctive and equitable relief;

- A declaration that Defendant is financially responsible for all Class notice and the administration of Class relief;

- An order awarding costs, restitution, disgorgement, punitive damages, statutory damages, treble damages and exemplary damages under applicable law, and compensatory damages for economic loss, diminished value, and out-of-pocket costs in an amount to be determined at trial;

- An order awarding any applicable statutory and civil penalties;

- An order requiring Defendant to pay both pre- and post-judgment interest on any amounts awarded;

- An award of costs, expenses and attorneys' fees as permitted by law; and

- Such other or further relief as the Court may deem appropriate, just, and equitable.

## IX.   DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of any and all issues in this action so triable of right.

DATED: August 9, 2017                    Respectfully submitted,


                                         */s/ E. Powell Miller*
                                         E. Powell Miller (P39487)
                                         Sharon S. Almonrode (P33938)
                                         Dennis A. Lienhardt (P81118)
                                         **THE MILLER LAW FIRM, P.C.**
                                         950 West University Drive, Suite 300
                                         Rochester, MI  48307
                                         Telephone: (248) 841-2200
                                         Facsimile: (248) 652-2852
                                         epm@millerlawpc.com
                                         ssa@millerlawpc.com
                                         dal@millerlawpc.com

                                         **KESSLER TOPAZ**
                                           **MELTZER & CHECK, LLP**
                                         Joseph H. Meltzer
                                         Peter A. Muhic
                                         Ethan J. Barlieb
                                         280 King of Prussia Road
                                         Radnor, PA  19087
                                         Telephone: (610) 667-7706
                                         Facsimile: (610) 667-7056
                                         jmeltzer@ktmc.com
                                         pmuhic@ktmc.com
                                         ebarlieb@ktmc.com

                                         ***Attorneys for Plaintiffs and the
                                         Proposed Classe***