# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

SURESH PERSAD, DANIEL
WRIGHT, and ROBERT
DRUMMOND, individually
and on behalf of all others
similarly situated,

              Plaintiffs,

     v.

FORD MOTOR COMPANY,

              Defendant.

Case No. 17-12599
Hon. Terrence G. Berg

## OPINION AND ORDER DENYING
## DEFENDANT'S MOTION TO DISMISS (Dkt. 15)

## I.    Introduction

This is a putative class action, concerning 2016 and 2017 model year Ford Explorers. The crux of Plaintiffs' Complaint is that these vehicles have an "exhaust fume defect." In other words, that when they are driven these cars allow dangerous gases – including carbon monoxide – to enter the passenger compartment, sickening the driver and passengers. Defendant Ford Motor Company filed a motion to dismiss (Dkt. 15).[1] Plaintiffs filed a response (Dkt. 17), and

---

[1] Defendant also filed a motion to strike (Dkt. 27) Plaintiffs' second notice of supplemental authority (Dkt. 25). Plaintiffs' second notice of supplemental authority apprises the Court that Defendant has sent "customer satisfaction program" letters to owners of the class vehicles, offering to inspect the cars and to

Defendant filed a reply (Dkt. 18).  Defendant's motion raises a number of arguments as to why Plaintiffs' various claims fail to state a claim upon which relief can be granted.  The parties agree that the claims of Plaintiff Persad are governed by Georgia law while those of Plaintiffs Wright and Drummond are governed by Pennsylvania law.

For the reasons set forth below, Defendant's motion is **DENIED**.

## II.   Background

Plaintiffs seek to certify a nationwide class (or state subclasses) of persons who purchased, leased, or own model year 2016 and 2017 Ford Explorers (Dkt. 14, Amended Compl. at ¶¶ 2, 74).  One of the individual Plaintiffs, Suresh Persad, is a Georgia resident who allegedly purchased a new 2016 Explorer from a Georgia-based dealership (*Id.* at ¶ 16).  The other two Plaintiffs, Daniel Wright and Robert Drummond, are Pennsylvania citizens and residents (*Id.* at ¶¶ 18, 20). Plaintiff Wright claims to have purchased a used 2016 Explorer, while Plaintiff Drummond claims to have purchased a new 2017 Explorer, both from Pennsylvania-based dealerships (*Id.*).

---

reprogram the "climate control module" to allay any customer concerns about exhaust fumes entering the passenger compartment.  Defendant contends that Plaintiffs' "notice" is not new legal authority, but rather is attempting to impermissibly interject new facts into the pleadings.  The Court has not relied on Plaintiff's second notice in deciding Defendant's motion to dismiss, but sees no need to strike the notice from the docket.  Thus, Defendant's motion to strike (Dkt. 27) is **DENIED AS MOOT**.

Plaintiffs' allege that an "exhaust fume defect" exists in the putative class vehicles, which allows noxious gases, including carbon monoxide, to enter the vehicles' passenger compartments (*Id.* at ¶¶ 6, 16-21). Plaintiff Persad claims that after he detected exhaust fumes in his passenger compartment, he took the vehicle to a Ford dealership (*Id.* at ¶ 17). The dealer conducted a road test, identified no exhaust fumes, and allegedly "declined to repair the vehicle" (*Id.*). Plaintiffs Wright and Drummond also purportedly detected exhaust fumes in their passenger compartments, however neither alleges that they presented their vehicles to a Ford dealership for examination or repair (*Id.* ¶¶ 18-21).

Plaintiffs contend that the alleged defect, which they assert also existed in earlier model years of Explorers[2], constitutes a "clear safety hazard" (*Id.* at ¶¶ 5-6, 27). They claim Ford knowingly, actively, affirmatively, and fraudulently concealed the defect from consumers (*Id.* ¶ 8). Plaintiffs specific legal claims are: fraudulent concealment (Count I), negligent misrepresentation (Count II), breach of express warranty (Count III), breach of implied warranty (Count IV), violations of the Magnuson-Moss Warranty Act (Count

---

[2] Earlier model year Ford Explorers with alleged "exhaust fume defects" are the subject of class action litigation in other courts. *See, e.g. Sanchez-Knutson v. Ford Motor Co.*, 52 F. Supp. 3d 1223 (S.D. Fla. 2014); *Salinas v. Ford Motor Co.*, No. 7:15-CV-11, 2016 WL 8461424 (S.D. Tex. May 13, 2016).

V), unjust enrichment (Count VI), violations of the Georgia Fair Business Practices Act (Count VII), and violations of the Pennsylvania Unfair Trade Practices and Consumer Protections Act (Count VIII).

## III. Standard of Review

A party may move to dismiss under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted." Rule 12(b)(6) is read in conjunction with the pleading standard set forth in Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8(a)(2); *see Ashcroft v. Iqbal*, 556 U.S. 662, 677–68 (2009). This standard does not require detailed factual allegations. *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). However, a party's "obligation to provide the 'grounds' of his 'entitle[ment]' to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations omitted). To survive a Rule 12(b)(6) motion, the complaint and any other matters properly considered must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). A claim has facial plausibility when the pleaded factual content allows the court, drawing upon its "judicial experience and common sense," to

4

reasonably infer that the defendant is liable for the misconduct alleged. *Id*. at 678 (citing *Twombly*, 550 U.S. at 556), 679. "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id*. at 679 (quoting Rule 8(a)(2)).

## IV.  Analysis

As noted above, Plaintiffs raise a variety of claims, under Georgia and Pennsylvania law.  Defendant argues that each type claim is legally deficient.  Each claim is considered below.

### a. Fraudulent Concealment

First, Plaintiffs bring claims of common-law fraudulent concealment under the laws of Pennsylvania and Georgia. Defendant contends that these claims should be dismissed because: (1) Plaintiffs have not pled the circumstances of the fraud with particularity pursuant to Federal Rule of Civil Procedure 9(b); and (2) Plaintiffs have not plausibly alleged that Defendant had a duty to disclose the alleged defect.  The crux of Defendant's second argument is that Plaintiffs have not adequately alleged that Defendant had knowledge of the alleged defect that was superior to that of the Plaintiffs. Defendant says it was essentially common knowledge that Ford Explorers suffered from "exhaust fume defects," because prior model years were the subject of widely publicized class action

litigation and National Highway Transportation and Safety Board (NHTSB) investigations.   Defendant's arguments are not well-taken.

As to Defendant's first argument, that Plaintiffs' claims are not plead with sufficient particularity, it is true that under Rule 9(b), a complaint alleging fraud "must state with particularity the circumstances constituting fraud."   However, Rule 9(b) also provides that "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally."   Thus, it "does not require a plaintiff to allege specific facts related to the defendant's state of mind when the allegedly fraudulent statements [or omissions] were made." *Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1237 (11th Cir. 2008).   Instead, it is sufficient to plead "the who, what, when, where, and how" of the allegedly fraudulent statements or omissions and then allege generally that those statements or omissions were made with the requisite intent.  *Id*.  To the extent Defendant contend that Plaintiffs have failed to plead Defendant's knowledge of the defect with particularity, the argument is not well-taken. Plaintiffs have generally alleged such knowledge, and that is all that is required by Rule 9(b). The Court also finds that Plaintiffs have pled the circumstances of the alleged fraud with sufficient particularity.

As to Defendant's alleged superior knowledge, both Pennsylvania and Georgia recognize a duty to disclose where a defendant has exclusive and superior knowledge.  *See In re MyFord Touch Consumer Litig.*, 46 F. Supp. 3d 936, 960 (N.D. Cal. 2014) (finding manufacturer had duty to disclose based on exclusive knowledge of a defect under, inter alia, Pennsylvania common law and consumer protection statutes); *McCabe v. Daimler AG*, 948 F. Supp. 2d 1347, 1368 (N.D. Ga. 2013) ("*McCabe I*") (sustaining fraud by omission claim under Georgia law upon consideration of a motion to dismiss and imposing a duty to disclose where the defect "could not have been discovered through the exercise of ordinary prudence and caution [by plaintiffs]").  Exclusive knowledge can be established where, for example, the defendant knew of a defect while the plaintiffs did not and, "given the nature of the defect, it was difficult to discover." *In re MyFord Touch Consumer Litig.*, 46 F. Supp. 3d 936, 960 (N.D. Cal. 2014).

Plaintiffs allege that Ford had exclusive and superior knowledge of the defect by virtue of "pre-production testing, pre-production design failure mode analysis, production design failure mode analysis, early consumer complaints made to Defendant's network of exclusive dealers, aggregate warranty data compiled from those dealers, repair order and parts data received from the dealers, consumer complaints to dealers and NHTSA, and testing performed

in response to consumer complaints" (FAC ¶38). Moreover, Plaintiffs allege the presence of multiple Technical Service Bulletins[3] ("TSBs") issued as early as 2012 that concern earlier model year Ford Explorers and apparently address the same defect as suffered by the Class Vehicles. Lastly, Plaintiffs allege numerous consumer complaints concerning the Exhaust Fume Defect (FAC ¶5, 44, 47).

Ford relies heavily on *McCabe v. Daimler AG*, 160 F. Supp. 3d 1337 (N.D. Ga. 2015) ("*McCabe II*"), but *McCabe II* does not support dismissal at the pleading stage. *McCabe II* involved motions for summary judgment, and observed that that "the existence of a duty to disclose must be measured by the specific facts of the case" revealed during discovery. *McCabe II*, 160 F. Supp. 3d at 1350. Indeed, the district court that decided *McCabe II* previously denied a motion to dismiss a fraud by omission claim under Georgia law in that case, even as it recognized the duty to disclose. *McCabe I*, 948 F. Supp. 2d. at 1368-70.

Furthermore, the "publicly available information" underpinning Defendant's argument concerned prior model year Ford Explorers. Plaintiffs' have plausibly alleged that consumers would have no way of knowing the same defect was present in the newer 2016-2017 models. Indeed, a plausible inference could be drawn in

---

[3] Generally speaking, TSBs are communications from a car manufacturer to dealers and mechanics that explain repair procedures to address known problems.

the opposite direction—that because older Ford Explorers suffered from well-publicized exhaust fume defects, a reasonably prudent consumer might expect that Ford had rectified this issue in the newer models.  In any event, Plaintiffs have stated a viable claim for fraudulent concealment.

### b. Negligent Misrepresentation

Ford attacks Plaintiffs' negligent misrepresentation claims using the same argument that it made against Plaintiffs' fraudulent concealment claim.  These arguments fail for the same reasons. Plaintiffs adequately plead all of the elements of negligent misrepresentation.

### c. Breach of Express Warranty

Ford contends that Plaintiffs failed to state a claim for breach of express warranty because they do not allege that they experienced a problem within the warranty period.  This is not correct. Plaintiffs quite clearly allege that "Plaintiffs and members of the Classes experienced the Exhaust Fume Defect within the warranty periods[,]" which are defined as 3 years or 36,000 miles (FAC ¶¶ 11, 35).

Ford also urges the Court to dismiss Plaintiffs' breach of express warranty claim since Plaintiffs did not give Ford a mandatory pre-suit written notice.  Under Pennsylvania law, it does appear that notice to a manufacturer is required.  *See, e.g., Schmidt v. Ford*

*Motor Co.*, 972 F. Supp. 2d 712, 719 (E.D. Pa. 2013) (stating that, under Pennsylvania law, "a plaintiff, specifically a buyer, must provide notification of the alleged product defect to the manufacturer prior to bringing suit on a breach-of-warranty theory"); *In re Ford E–350 Van Prods. Liab. Litig.*, No. CV–03–4558 (GEB), 2010 WL 2813788, at *39–40 (D.N.J. July 9, 2010) (in case where plaintiffs sued car manufacturer, denying summary judgment to manufacturer on alleged lack of notice because there was a factual dispute as to the reasonableness of the time within which the plaintiffs gave notice).  However, under Pennsylvania law, the filing of a complaint may constitute sufficient notice.  *See id.*; *Precision Towers, Inc. v. Nat-Com, Inc.,* No. 2143 APRIL TERM 2002, 2002 WL 31247992, at *5 (Pa. Com. Pl. Sept. 23, 2002) (stating that "[t]he filing of a complaint has been held to satisfy the notice requirement for a breach of warranty claim").

Georgia law is similar – pre-suit notice is not required when the action is brought against a remote manufacturer and/or seller. *See In re Volkswagen Timing Chain Prod. Liab. Litig., No. CV 16-2765 (JLL), 2017 WL 1902160, at *13 (D.N.J. May 8, 2017)* ("Plaintiffs need not give a remote manufacturer and/or seller pre-suit notice" under Georgia or Pennsylvania law).  Furthermore, this question is inappropriate to decide at the pleading state – whether

Plaintiffs gave timely notice is a question of fact for the jury to decide. *See, e.g., In re MyFord Touch Consumer Litig.*, 46 F. Supp. 3d 936, 977–78 (N.D. Cal. 2014).

Ford next argues that Plaintiffs allege only a design defect, which is exempt from Ford's express warranty. However, Plaintiffs point out that while they do allege that the Class Vehicles are defectively designed, they also allege that the presence of exhaust odor and gases, including carbon monoxide, in the passenger compartment could be caused by defects in materials, workmanship, or manufacture (FAC ¶¶ 28-30). Discovery is needed to determine whether the fumes are also entering the compartment due to defects in the manufacturing process or particular materials that were used in the exhaust or HVAC systems. At this stage of the litigation, Plaintiffs' allegations are sufficient to sustain that the Exhaust Fume Defect is covered by the applicable warranties. *See, e.g., In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prod. Liab. Litig.*, 754 F. Supp. 2d 1145, 1181 (C.D. Cal. 2010) (crediting allegations of "[t]he failure to design, assemble and manufacture" and sustaining express warranty claim).

Moreover, courts have rejected efforts to create an artificial distinction between design and materials/workmanship defects. *See Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1225 (9th Cir. 2015) (holding that Ford's express warranty "must be construed to guarantee

against both manufacturing and design defects"); *Koulajian v. Trek Bicycle Corp.*, 1992 WL 28884 at *2 (S.D.N.Y. Feb. 11, 1992) (rejecting the distinction between design and manufacturing defects and reasoning that "the warranty's reference to 'workmanship' could refer to [] design as well as implementation of those designs in the manufacturing process"); *Alin v. Am. Honda Motor Co.*, 2010 WL 1372308, at *6 (D.N.J. Mar. 31, 2010) (holding that "where the distinction between defect in design and defect in materials or workmanship is a matter of semantics, and sufficient facts are alleged to assert both, the defendant's characterization of the nature of the claim pre-discovery should not control whether the complaint survives."); *In re Volkswagen Timing Chain Prod. Liab. Litig.*, No. CV 16-2765 (JLL), 2017 WL 1902160, at *12 (D.N.J. May 8, 2017) (same). Plaintiffs' Complaint contains sufficient factual allegations to assert a breach of the warranty, regardless of whether the defect is in design or in manufacturing and workmanship. Plaintiffs have stated a valid claim for breach of express warranty.

### d. Breach of Implied Warranty

Defendant contends that Plaintiffs' implied warranty claims fail because they do not plead that the defect manifested during the applicable warranty period, i.e., 3 years/36,000 miles. As already noted in the discussion of the express warranty claims, this contention is belied by the language of the Complaint. It alleges that

Plaintiffs "and members of the Classes experienced the Exhaust Fume Defect within the warranty periods" (FAC ¶35; *see also* ¶¶16-21 (alleging that each Plaintiff experienced exhaust fumes within the passenger compartment soon after purchasing the vehicle)).

Defendant also argues that Plaintiffs' breach of implied warranty claims must fail they do not plausibly allege that the exhaust fume defect renders the vehicles "un-merchantable." This argument is also not well-taken. The implied warranty of merchantability is designed "to protect buyers from loss where the goods purchased are below commercial standards." *Altronics of Bethlehem, Inc. v. Repco, Inc.*, 957 F.2d 1102, 1105 (3d Cir. 1992). "In order to be merchantable, goods must be 'fit for the ordinary purposes for which such goods are used.' " *Id.* (citation omitted). "[T]o establish a breach of this warranty, a plaintiff must show, among other things, that the product at issue was defective." *In re Volkswagen Timing Chain Prod. Liab. Litig.*, No. CV 16-2765 (JLL), 2017 WL 1902160, at *15 (D.N.J. May 8, 2017) (internal quotations omitted). "In the context of a car, this warranty is satisfied when the vehicle provides safe and reliable transportation." *Greene v. BMW of North Am.*, 2013 WL 5287314, *2 (D.N.J. Sept. 17, 2013). Here, despite Defendant's assertion that the Class Vehicles were merchantable, Plaintiffs have successfully pled a prima facie claim for breach of

the implied warranty of merchantability. The First Amended Complaint alleges that the Class Vehicles, by allowing exhaust odor and gases, including carbon monoxide, into the passenger compartment, are not in a safe condition and are not fit for their ordinary purpose. Defendant attacks Plaintiffs' labeling the exhaust fume defect as a "safety hazard," but at this stage of the case, Plaintiffs need only plausibly allege that the defect at issue impacts the safe operation of the car. Quite clearly, Plaintiffs have done so. Indeed, in class litigation involving prior model year Explorers, a court sustained a breach of implied warranty claim against Ford for a similar exhaust fume defect. *See Sanchez-Knutson*, 52 F. Supp. 3d at 1234.

Finally, the Court notes that Defendant's reliance on Judge Goldsmith's decision in *Beck v. FCA US LLC*, 273 F. Supp. 3d 735 (E.D. Mich. 2017) is misplaced. *Beck* dismissed the putative class plaintiff's breach of implied warranty claim by noting, among other things, that the plaintiff's continued use of the class vehicle was fatal to this claim. Defendant notes that Plaintiffs in this case have not alleged that they stopped driving their vehicles thus, under *Beck's* line of reasoning, Plaintiffs' implied warranty claims should be dismissed. However, *Beck* is distinguishable. First, *Beck* involved an entirely different type of defect – a "rotary shifter" which allegedly inaccurately indicated that the vehicles are in the Park gear when, in fact, they were not, which supposedly led to a number

14

of rollaway incidents.  Second, *Beck* applied California law, not Georgia or Pennsylvania law, as is at issue in this case.  In any event, at this stage of the case, Plaintiffs have stated a valid claim for breach of implied warranty.

### e. Magnuson-Moss Warranty Act

Plaintiffs also bring claims under the Magnuson-Moss Warranty Act (MMWA).  Defendant argues that the ability to sustain an MMWA cause of action is dependent on the existence of an underlying viable state warranty claim.  As noted above, Plaintiffs' have stated viable claims for breach of express and implied warranty.  As Plaintiffs' claims for violation of MMWA are generally derivative of Plaintiffs' breach of express and implied warranty claims, Plaintiffs' MMWA claim should proceed in the event the warranty claims survive.  *See Sanchez-Knutson v. Ford Motor Co.*, 52 F. Supp. 3d 1223, 1234 (S.D. Fla. 2014).

Defendant also argues that Plaintiffs' MMWA claims should be dismissed, because Plaintiffs did not comply with the MMWA's informal dispute resolution process.  However, Plaintiffs have alleged that any informal dispute settlement procedure would be futile.  For instance, Plaintiffs allege that Defendant steadfastly denies the existence of the Exhaust Fume Defect (FAC ¶52 (Defendant "argued that the carbon monoxide levels … are within permissible levels, that 'only a small number of customers are affected by

the exhaust odors' and that the fumes are not harmful")). And, Plaintiffs allege that Defendant's attempts to address exhaust fume issues have been ineffective (FAC ¶44 (consumer complaints concerning, among other things, the inability to remedy), ¶ 47 (NHTSA report stating "[c]oncerns over the effectiveness of the procedures [to address complaints] have been raised"), ¶¶ 57-59 (Defendant's Technical Service Bulletins did not provide a specific fix for exhaust fume issues)). Plaintiffs' allegations that any informal dispute resolution process would be futile are enough to sustain the MMWA claims at this stage of the case. *See In re Toyota Motor Corp.*, 754 F. Supp. at 1189 ("At the pleadings stage, the Court cannot say whether attempts to comply with the informal dispute settlement procedure put in place by Toyota are futile. Plaintiffs' allegations allow for such an inference"); *see also Sanchez-Knutson v. Ford Motor Co.*, 52 F. Supp. 3d 1223, 1235 (S.D. Fla. 2014) (the MMWA's "informal dispute settlement procedure is an affirmative defense—subject to waiver, tolling, and estoppel, that [a defendant] may raise, not that [the p]laintiff must negate in her Complaint;" also noting that compliance with MMWA's informal dispute resolution process is more appropriately addressed at the summary judgment stage of litigation, and is premature at the pleading stage). Plaintiffs have stated a viable MMWA claim at this stage of the litigation.

16

### f. Unjust Enrichment

Defendant next argues that Plaintiffs may not assert a claim for unjust enrichment where there is an express warranty. Plaintiffs, however, properly plead their claim for unjust enrichment in the alternative. This is especially true since Defendant denies the applicability of any warranty in its motion to dismiss, and presumably will continue to do so as this litigation progresses. Rule 8(a)(3) specifically allows a party to plead in the alternative, and Plaintiffs have properly done so here. *See, e.g., Terry Barr Sales Agency, Inc. v. All–Lock Co., Inc.*, 96 F.3d 174, 182 (6th Cir. 1996) (allowing plaintiff to proceed under both breach of contract and unjust enrichment theories where defendant "kept its options open, and may deny the existence of a contract"). Plaintiffs' unjust enrichment claim will not be dismissed at this stage of the proceedings.

### g. Georgia Fair Business Practices Act

Defendant next challenges Plaintiff Persad's claim under Georgia's Fair Business Practices Act (FBPA). The gist of Defendant's argument is that Plaintiff Persad failed to send a required written demand for relief at least 30 days prior to filing suit. Defendant relies on Ga. Code Ann. § 10-1-399(b).

Plaintiff Persad admits that he did not send any written demand to Defendant 30-days prior to filing the *Original* Complaint Dkt. 1) in this action, which was filed on August 9, 2017. However,

Plaintiff Persad states that he sent the required written demand to Defendant on August 15, 2017 (FAC, Ex. K), which is more than 30-days prior to Plaintiffs' filing of the *Amended* Complaint (Dkt. 14), which was filed on October 9, 2017.  According to Plaintiff Persad, the filing of the Amended Complaint completely supersedes the Original Complaint, renders the Original Complaint a nullity and, in effect, "cures" any failure to send the demand before filing suit in the first instance.  At least one district court in Georgia has implicitly recognized that the filing of an amended complaint 30-days after sending notice can cure a plaintiff's failure to send the notice in the first instance.  *See, e.g., Nickens v. Equifax Info. Servs., LLC*, No. 1:13-CV-0333-TWT-ECS, 2013 WL 4786975, at *4 (N.D. Ga. Sept. 6, 2013) (granting motion for leave to amend to file third amended complaint, and noting that the plaintiff failed to initially give notice earlier).[4]  Defendant relies on a case from the Northern District of Illinois, interpreting Georgia law, to argue that the filing of an amended complaint cannot cure the failure to send notice 30-days prior to filing the original complaint.  *See Gibbs v. Abbott Labs., Inc.*, No. 01 C 1315, 2001 WL 1558279, at *4 (N.D. Ill. Dec.

---

[4] The Court recognizes that in *Nickens* that the defendant did "not challenge[] whether the actions taken by [the p]laintiff after filing his [motion to amend] satisf[ied] the notice requirements of O.C.G.A. § 10–1–399(b).  *Nickens*, 2013 WL 4786975, at FN 2.  Nevertheless, the Court in *Nickens* permitted the plaintiff's Fair Business Practice Act to proceed, even though the plaintiff failed to give notice at least 30-days prior to filing the initial complaint.

5, 2001). *Gibbs*, however, is distinguishable. The court in *Gibbs* was ruling on a motion to dismiss the original and only complaint filed in the case, not an amended complaint filed 30 days after giving notice, and not after a motion for leave to amend had been granted. *Id*. at *2. *Gibbs* was also decided prior to the 2009 amendments to Rule 15. Prior to December 1, 2009, Rule 15 permitted a plaintiff to amend the complaint "once as a matter of course ... *before being served with a responsive pleading*." Fed. R. Civ. P. 15(a)(1)(A) (emphasis added). All other amendments required leave of court.

The 2009 amendments to Rule 15 fundamentally altered pleading practice. Now, a plaintiff may amend the complaint "as a matter of course" within 21 days after serving it, OR "21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Fed. R. Civ. P. 15(a)(1). In this case, Defendant filed a motion to dismiss the Original Complaint (Dkt. 12). In response, Plaintiff filed the Amended Complaint (Dkt. 14) within 21 days "as a matter of course," which they had the right to do. "It is well-established that an amended complaint supersedes an original complaint and renders the original complaint without legal effect.*" In re Atlas Van Lines, Inc*., 209 F.3d 1064, 1067 (8th Cir. 2000). "[W]hen a plaintiff files an amended complaint, the new complaint supersedes all previous

19

complaints and controls the case from that point forward" and "wipes away prior pleadings." *Massey v. Helman*, 196 F.3d 727, 735 (7th Cir. 1999). *See also B & H Medical, L.L.C. v. ABP Admin., Inc.*, 526 F.3d 257, 268 n. 8 (6th Cir. 2008) ("a prior 'complaint is a nullity, because an amended complaint supercedes all prior complaints'") (quoting *Drake v. City of Detroit*, 2008 WL 482283 at \*2 (6th Cir. Feb. 21, 2008); *Parry v. Mohawk Motors of Michigan, Inc.*, 236 F.3d 299, 306 (6th Cir. 2000) ("Plaintiff's first amended complaint, not his original complaint, was the legally operative complaint ...").

In any event, Defendant notes that "the clear purpose of the notice requirement is to foster early settlement negotiations before litigation is commenced" (Dkt. 15, Pg ID 478). The Court finds that Plaintiff Persad's notice (filed approximately two months before the filing of the Amended Complaint) sufficed to accomplish this goal. The Court notes that Defendant has not settled this case with Plaintiff Persad, despite having received Plaintiff Persad's notice of intent to sue under Georgia's FBPA nearly a year ago. Plaintiff Persad's FBPA claim under Georgia law will be permitted to proceed.

### h. Pennsylvania Unfair Trade Practices Act

Finally, Defendant challenges Plaintiffs Wright and Drummond's claims under Pennsylvania's Unfair Trade Practices and

Consumer Protection Law (UTPCPL).  Defendant first argues that this claim is barred by the economic loss doctrine, and cites a Third Circuit case in support of that contention – *Werwinski v. Ford Motor Co.*, 286 F.3d 661 (3d Cir. 2002).  In *Werwinski*, the Third Circuit held, based on its prediction at the time of how the Pennsylvania Supreme Court would rule on the issue, that the economic loss doctrine applies not only to claims of negligence, but also to claims under the UTPCPL and to intentional torts.  *See id*. at 674–82.

However, as numerous other courts have explained, there are reasons to doubt the soundness of *Werwinski's* prediction.  *See, e.g., In re Gen. Motors LLC Ignition Switch Litig.*, 257 F. Supp. 3d 372, 435–36 (S.D.N.Y. 2017), modified on reconsideration, No. 14-MC-2543 (JMF), 2017 WL 3443623 (S.D.N.Y. Aug. 9, 2017); *DeFebo v. Andersen Windows, Inc.*, 654 F.Supp.2d 285, 293–94 (E.D. Pa. 2009); *O'Keefe v. Mercedes–Benz USA, LLC*, 214 F.R.D. 266, 276 (E.D. Pa. 2003); *Smith v. Reinhart Ford*, 68 Pa. D. & C. 4th 432, 437–38 (C.P. Lanc. 2002); *Zwiercan v. General Motors Corp.*, 58 D. & C. 4th 251, 266–70, 2002 WL 31053838 (C. P. Phila. 2002). In fact, citing intervening decisions by the lower Pennsylvania courts, several district courts within the Third Circuit itself have gone so far as to decline to follow *Werwinski. See, e.g., Landau v. Viridian Energy PA LLC,* 223 F. Supp. 3d 401, 410-415 (E.D. Pa. 2016) (citing cases). The Third Circuit's decision, of course, is not binding on

this Court. But in any event, the Court concludes, substantially for the reasons enumerated in the *Landau* Court, that the more recent cases have the better of the argument. Thus, the Court concludes that the economic loss doctrine does not call for dismissal of the Pennsylvania Plaintiffs' UTPCPL claims.

## V.     Conclusion

For the foregoing reasons, Defendant's motion to dismiss is **DENIED**. Defendant is hereby ordered to file an Answer to Plaintiffs' Amended Complaint (Dkt. 14) within fourteen (14) days of the date of this order. The parties are further directed to file a Rule 26(f) discovery plan within fourteen (14) days of Defendants' Answer, and the Court will set this matter for a telephonic scheduling conference.

**SO ORDERED.**

s/Terrence G. Berg
TERRENCE G. BERG
UNITED STATES DISTRICT JUDGE

Dated: July 16, 2018

## <u>Certificate of Service</u>

I hereby certify that this Order was electronically submitted on July 16, 2018, using the CM/ECF system, which will send notification to each party.


s/A. Chubb
Case Manager