## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

| | |
|---|---|
| SURESH PERSAD, DANIEL G. WRIGHT and ROBERT S. DRUMMOND, individually and on behalf of all others similarly situated, | Civil Action No. 2:17-cv-12599-TGB-MKM |
| | Hon. Terrence G. Berg |
| Plaintiffs, | Magistrate Judge Mona K. Majzoub |
| v. | |
| FORD MOTOR COMPANY, | |
| Defendant. | |

## PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

Plaintiffs Suresh Persad, Daniel G. Wright, and Robert S. Drummond, by and through their attorneys, respectfully move the Court for an Order:

1) granting preliminary approval of the proposed class action Settlement;

2) preliminarily certifying, for settlement purposes only, and pursuant to the terms of the Settlement Agreement, the proposed Settlement Class for the purposes of providing notice to the Members of the proposed Settlement Class; approving the form and content of, and directing the distribution of the proposed Class Notice, annexed to the Settlement Agreement as Exhibit C;

3) authorizing and directing the Parties to retain KCC Class Action Services as the Settlement Claims Administrator;

4) appointing The Miller Law Firm, P.C. and Kessler Topaz Meltzer & Check, LLP as Settlement Class Counsel; and,

5) scheduling a date for the Final Approval Hearing not earlier than one hundred and fifty-five (155) days after Preliminary Approval is granted.

In support thereof, Plaintiffs have contemporaneously filed a Memorandum of Law, with exhibits thereto.

In accordance with L.R. 7.1(a) Plaintiffs' counsel sought the concurrence of Defendant's counsel in the relief sought by this Motion on November 17, 2020 and Defendant's do not oppose Plaintiffs' requested relief contained therein.

For the reasons set forth in the Memorandum of Law, Plaintiffs respectfully request that the Court grant their Unopposed Motion and enter the accompanying [Proposed] Order.

Dated: November 18, 2020                    Respectfully submitted,

                                     */s/ Joseph H. Meltzer*
                                     Joseph H. Meltzer
                                     Ethan J. Barlieb
                                     Natalie Lesser
                                     **KESSLER TOPAZ**
                                      **MELTZER & CHECK, LLP**
                                     280 King of Prussia Road
                                     Radnor, PA 19087
                                     Tel: (610) 667-7706
                                     jmeltzer@ktmc.com
                                     ebarlieb@ktmc.com
                                     nlesser@ktmc.com

**THE MILLER LAW FIRM, P.C.**
E. Powell Miller (P39487)
Sharon S. Almonrode (P33938)
William Kalas (P82113)
950 West University Drive, Suite 300
Rochester, MI 48307
Tel: (248) 841-2200
epm@millerlawpc.com
ssa@millerlawpc.com
wk@millerlawpc.com

*Attorneys for Plaintiffs and the
Proposed Classes*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 18, 2020, I electronically filed the foregoing

document with the Clerk of the Court using the ECF system which will send notification

of such filing to the attorneys of record.

*/s/ Joseph H. Meltzer*
Joseph H. Meltzer

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| SURESH PERSAD, DANIEL G. WRIGHT and ROBERT S. DRUMMOND, individually and on behalf of all others similarly situated, | Civil Action No. 2:17-cv-12599-TGB-MKM |
| | Hon. Terrence G. Berg |
| Plaintiffs, | Magistrate Judge Mona K. Majzoub |
| v. | |
| FORD MOTOR COMPANY, | |
| Defendant. | |

---

## PLAINTIFFS' MEMORANDUM IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

---

## STATEMENT OF ISSUES PRESENTED

1.  Whether Plaintiffs' settlement with Ford Motor Company, embodied in the Settlement Agreement entered into on November 18, 2020 ("Settlement Agreement"), and attached hereto as Exhibit 1, is fair, reasonable, and adequate and should be preliminarily approved?

    Suggested Answer: Yes.

2.  Whether the Court should provisionally certify the Settlement Class as it is defined herein under Federal Rule of Civil Procedure 23(a) and 23(b)(3)?

    Suggested Answer: Yes.

3.  Whether the Court should appoint the law firms of The Miller Law Firm, P.C. and Kessler Topaz Meltzer & Check, LLP as Class counsel where they have extensive experience in class action litigation and exhaustive resources to ensure the matter is prosecuted efficiently and effectively?

    Suggested Answer: Yes.

4.  Whether the Court should grant preliminary approval of the Parties' proposed Class action settlement agreement where federal policy favors settlement of class actions; the Parties negotiated the proposed settlement at arm's-length and in good faith; and the settlement reflects a fair, adequate, and reasonable resolution to the dispute?

    Suggested Answer: Yes.

5.    Whether the Court should approve the Parties' proposed notices to Class Members where they fairly and fully apprise the prospective Members of the Class of the terms proposed in the settlement, the reasons for the settlement, the legal effect of the settlement, and provide Class Members with an opportunity to lodge objections and/or opt out?

Suggested Answer: Yes.

6.    Whether the Court should set a date for a fairness hearing to consider any objections to the proposed settlement?

Suggested Answer: Yes.

## <u>INDEX OF MOST CONTROLLING AUTHORITIES</u>

**Cases**

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997)

*Beattie v. CenturyTel, Inc.*, 234 F.R.D. 160 (E.D. Mich. 2006)

*Beattie v. CenturyTel, Inc.*, 511 F.3d 554 (6th Cir. 2007)

*In re Cardizem CD Antitrust Litig*., 218 F.R.D. 508 (E.D. Mich. 2003)

*Daffin v. Ford Motor Co*., 458 F.3d 549 (6th Cir. 2006)

*Daoust v. Maru Rest., LLC*, 2019 WL 1055231 (E.D. Mich. Feb. 2, 2019)

*Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615 (6th Cir. 2007)

*IUE-CWA v. Gen. Motors Corp.*, 238 F.R.D. 583 (E.D. Mich. 2006).

*In re Packaged Ice Antitrust Litig*., 2011 WL 6209188 (E.D. Mich. Dec. 13, 2011)

*In re Rio Hair Naturalizer Prods. Liab. Litig.*, 1996 WL 780512 (E.D. Mich. Dec. 20, 1996)

*Senter v. Gen. Motors Corp.*, 532 F.2d 511 (6th Cir.)

*Telectronics Pacing Sys., Inc*., 137 F. Supp. 2d 985 (S.D. Ohio 2001)

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig*., 722 F.3d 838 (6th Cir. 2013)

*Williams v. Vukovich*, 720 F.2d 909 (6th Cir. 1983)

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................. 1

II.   PROCEDURAL HISTORY ................................................................. 3

III.  FACTUAL BACKGROUND ............................................................... 4

IV.  THE SETTLEMENT AGREEMENT AND TERMS ........................... 6

  A. The Proposed Settlement Class ...................................................... 6

  B. The Relief and Settlement Consideration ...................................... 7

  C. Release of Claims ........................................................................... 8

  D. Settlement Notice and Right to Opt Out ........................................ 9

  E. Class Counsel Fees and Expenses and Plaintiffs' Service Award ........................... 9

V.   THE SETTLEMENT CLASS SHOULD BE PRELIMINARILY CERTIFIED .... 10

  A. The Settlement Class Satisfies the Requirements of Rule 23(a) ............................. 11

  B. The Settlement Class May be Properly Certified Under Rule 23(b)(3) ................. 13

    1.   This Action May Be Certified Under Rule 23(b)(3) ........................................ 13

VI.  THE PROPOSED SETTLEMENT SATISFIES THE STANDARD FOR
      PRELIMINARY APPROVAL ................................................................ 16

  A. There is no Fraud or Collusion ....................................................... 17

  B. The Complexity, Expense and Likely Duration of the Litigation Favor
    Approval ........................................................................................... 18

  C. The Amount of Discovery Engaged in by the Parties Favors Approval ................ 19

  D. The Likelihood of Success on the Merits Favors Approval .................................... 19

  E. Experienced Class Counsel's Opinions Favor Approval ........................................ 21

  F. The Settlement is Fair to Absent Class Members ................................................... 21

  G. The Settlement is Consistent With the Public Interest............................................ 22

VII.  THE COURT SHOULD APPOINT CLASS COUNSEL ......................... 22

VIII. THE FORM AND MANNER OF NOTICE ARE PROPER ................... 24

IX.  CONCLUSION ....................................................................................... 26

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997)................................................................................11, 13, 16

*Bautista v. Twin Lakes Farms, Inc.*,
   2007 WL 329162 (W.D. Mich. Jan. 31, 2007)..................................................17

*Beattie v. CenturyTel, Inc.*,
   234 F.R.D. 160 (E.D. Mich. 2006) ....................................................................12

*Beattie v. CenturyTel, Inc.*,
   511 F.3d 554 (6th Cir. 2007) ......................................................................13, 14

*Bobbit v. Acad. of Court Reporting, Inc.*,
   252 F.R.D. 327 (E.D. Mich. 2008) ....................................................................16

*In re Cardizem CD Antitrust Litig.*,
   218 F.R.D. 508 (E.D. Mich. 2003) ..............................................................19, 22

*Daffin v. Ford Motor Co.*,
   458 F.3d 549 (6th Cir. 2006) ......................................................................12, 14

*Daoust v. Maru Rest., LLC*,
   2019 WL 1055231 (E.D. Mich. Feb. 2, 2019) (Berg, J.) ............................11, 24

*Franks v. Kroger Co.*,
   649 F.2d 1216 (6th Cir. 1981) ...........................................................................16

*Griffin v. Flagstar Bancorp, Inc.*,
   2013 WL 6511860 (E.D. Mich. Dec. 12, 2013) ................................................16

*Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of
   Am. v. Gen. Motors Corp.*,
   497 F.3d 615 (6th Cir. 2007) .........................................................10, 11, 16, 17

*IUE-CWA v. Gen. Motors Corp.*,
   238 F.R.D. 583 (E.D. Mich. 2006) ....................................................................18

*Keegan v. Am. Honda Motor Co.*,
    284 F.R.D. 504 (C.D. Cal. 2012) ........................................................................14

*In re Packaged Ice Antitrust Litig.*,
    2011 WL 6209188 (E.D. Mich. Dec. 13, 2011) ..................................................20

*Rankin v. Rots*,
    2006 WL 1876538 (E.D. Mich. June 27, 2006) ..................................................21

*In re Rio Hair Naturalizer Prods. Liab. Litig.*,
    1996 WL 780512 (E.D. Mich. Dec. 20, 1996) ....................................................21

*Robinson v. Ford Motor Co.*,
    2005 WL 5253339 (S.D. Ohio June 15, 2005) ....................................................17

*Rutherford v. City of Cleveland*,
    137 F.3d 905 (6th Cir. 1998) ..............................................................................12

*Sanchez-Knutson v. Ford Motor Company*,
    No. 14-cv-61344-WPD (S.D. Fla.) .........................................................................5

*Senter v. Gen. Motors Corp.*,
    532 F.2d 511 (6th Cir.), *cert. denied*, 429 U.S. 870 (1976) ..............................11

*In re Telectronics Pacing Sys., Inc.*,
    137 F. Supp. 2d 985 (S.D. Ohio 2001) ..........................................................17, 19

*In re U.S. Foodservice Inc. Pricing Litig.*,
    729 F.3d 108 (2d Cir. 2013) ................................................................................15

*UAW v. Ford Motor Co.*,
    2006 WL 1984363 (E.D. Mich. July 13, 2006) ..................................................20

*Vassalle v. Midland Funding LLC*,
    2014 WL 5162380 (N.D. Ohio Oct. 14, 2014), *aff'd sub nom.*
    *Pelzer v. Vassalle*, 655 F. App'x 352 (6th Cir. 2016) ........................................16

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*,
    722 F.3d 838 (6th Cir. 2013) ..............................................................................15

*Williams v. Vukovich*,
    720 F.2d 909 (6th Cir. 1983) ..................................................................16, 17, 21

*Wolin v. Jaguar Land Rover N. Am., LLC*,
   617 F.3d 1168 (9th Cir. 2010) ............................................................14

**Rules**

Fed. R. Civ. P. 23 ...............................................................................*passim*

**Other Authorities**

2 William B. Rubenstein, NEWBERG ON CLASS ACTIONS, § 4.74
   (5th ed. 2020) ................................................................................15

Plaintiffs Suresh Persad, Daniel G. Wright, and Robert S. Drummond ("Plaintiffs"), on behalf of themselves and the Settlement Class, respectfully submit this Memorandum of Law in Support of their Unopposed Motion for Preliminary Approval of Class Action Settlement ("Preliminary Approval Motion") and respectfully move the Court for preliminary approval of the proposed Class Action Settlement ("Settlement" or "Settlement Agreement") entered into with Defendant Ford Motor Company ("Defendant" or "Ford"), as set forth in the Settlement Agreement, attached as Exhibit 1.

## I.    INTRODUCTION

Plaintiffs and Ford (collectively, the "Parties" and each a "Party") have reached a proposed Settlement resolving all allegations that Ford sold the retail versions of 2016 and 2017 Ford Explorers (the "Class Vehicles") with a defect that allows exhaust fumes to enter the passenger compartment.  The Amended Class Action Complaint (ECF No. 14) (the "Complaint") alleged several causes of action against Ford for both statutory violations and under common law, on behalf of Plaintiffs and the owners and lessees of the Class Vehicles.

This litigation has been vigorously contested for over three years, including briefing and argument on a motion to dismiss and motion for class certification, the completion of fact discovery, and substantial expert discovery.  And after an in-depth analysis of the factual and legal issues presented and after arm's-length negotiations

with Defendant with the help of experienced mediator, Rodney Max, Plaintiffs are pleased to present this Settlement which will provide substantial relief to the Settlement Class.  Class Counsel[1] have reached the conclusion that the benefits the Settlement Class Members will receive as a result of this Settlement are eminently fair, reasonable, and adequate, especially when compared to similar settlements and in light of the risks of continued litigation.

In particular, pursuant to the Settlement Agreement and discussed in greater detail below, Settlement Class Members will receive notice of the availability of the FSA Repairs (defined below), which consist of a re-calibration of the Class Vehicles' HVAC systems and which is provided for free, and of the availability of additional TSB Repairs (defined below), which consist of the inspection and sealing of gaps in the passenger compartment and the installation of a modified exhaust system in vehicles equipped with a normally aspirated 3.5-liter TiVCT (defined below) engine. *See* Settlement Agreement, § II(a).  Ford will direct Authorized Ford Dealers to implement FSA Repairs, and in those cases where the FSA Repairs do not remedy the Exhaust Odor concern and upon the request of a Settlement Class Member, the TSB Repairs.  *Id.*  And, for Members of the Settlement Class who

---

[1] "Class Counsel" shall refer to Joseph H. Meltzer, E. Powell Miller and the law firms Kessler Topaz Meltzer & Check, LLP and The Miller Law Firm, P.C.  All other capitalized terms not defined herein shall have the meaning ascribed in the Settlement Agreement, attached hereto as Exhibit 1.

receive additional TSB Repairs after expiration of their warranty, they will be eligible for cash payments in the form of partial reimbursement for such repair costs. *Id.* at § II(c).

The Settlement is a fair, reasonable, and adequate resolution of this action and satisfies all the prerequisites for preliminary approval. For these reasons and those fully stated below, Plaintiffs respectfully request that the Court grant preliminary approval of the Settlement and enter the proposed Preliminary Approval Order.

## II.    PROCEDURAL HISTORY

On August 9, 2017, Plaintiffs brought this class action lawsuit alleging causes of action against Ford for violation of the Magnuson-Moss Warranty Act, Georgia Fair Business Practices Act, Pennsylvania Unfair Trade Practices and Consumer Protection Law, fraudulent concealment, negligent misrepresentation, breach of express warranty, and breach of the implied warranty of merchantability, unjust enrichment, on behalf of the Plaintiffs and current and former owners and lessees of 2016 and 2017 model year Ford Explorers in the United States. Plaintiffs then filed an Amended Class Action Complaint against Ford on October 9, 2017. Ford moved to dismiss the Complaint, which after briefing and argument, was denied in full by the Court.

The Parties thereafter completed extensive fact discovery, which included substantial document productions, written discovery, vehicle inspections of

Plaintiffs' vehicles, the depositions of eight Ford witnesses as well as the three Plaintiffs, and Plaintiffs' submission of 6 merits expert reports (four of these experts were deposed prior to the stay).

Plaintiffs also filed their Motion to Certify this action as a class action for purposes of litigation on June 25, 2019, seeking to certify a nationwide class of the owners and lessees of the retail versions of 2016 and 2017 Ford Explorers, under Federal Rule of Civil Procedure 23(b)(2) as well as various multi-state classes under Federal Rule of Civil Procedure 23(b)(3). Plaintiffs' Motion was fully briefed by September 10, 2019, and the Court conducted a hearing on November 13, 2019 and taking the Motion under advisement.  Subsequently, the Court granted the Parties' stipulated order staying the case pending mediation. The Parties conducted arm's-length negotiations concerning a proposed classwide settlement before mediator Rodney Max on July 24, 2020 and August 11, 2020.  Shortly thereafter, the Parties reached an agreement as memorialized in the Settlement Agreement.

## III.   FACTUAL BACKGROUND

Plaintiffs have alleged that the Class Vehicles suffer from a defect that allows exhaust fumes, including carbon monoxide ("CO"), to infiltrate and accumulate in the passenger cabin (the "Defect") and that the Defect dates back to earlier model

year Ford Explorers.[2] *See, e.g.*, ECF No. 49-3 at EST07 112592; ECF No. 49-4 at EST07 198654; ECF No. 49-8 at 75:4-8. *See also* ECF Nos. 49-2, 49-3, 49-4, 49-5. Ford has received numerous customer complaints concerning the Defect. *See* ECF No. 49-6 at 130:21-131:2; *see also* ECF No.49-13 at 4; ECF No. 49-14.  And, Ford has identified certain root causes of the Defect–namely negative cabin pressure when a vehicle's Heating, Ventilation, and Air Conditioning system (the "HVAC system") is in "Recirculation" mode, which pulls exhaust fumes and CO into the vehicle.  ECF No. 49-6 at 83:19-86:21.

Ford's initial response to the Defect included the internal publication, on May 15, 2017, of a Technical Service Bulletin, TSB 17-0044, which applied to all Class Vehicles. *See* ECF No. 48-11 at EST03 000017, PageID.1628.  The procedures in TSB 17-0044 included reprogramming the HVAC module, the sealing and patching of any holes or air leaks, and the installation of downturned exhaust tips in Ford Explorers with 3.5L Twin Independent Variable Camshaft Timing ("TiVCT") engine types, where a vehicle owner has lodged repeat complaints. *Id.* The owners

---

[2] In 2017, Ford settled a class action litigation, *Sanchez-Knutson v. Ford Motor Company*, No. 14-cv-61344-WPD (S.D. Fla.), which alleged a defect identical to the Defect here for model year 2011-2015 Ford Explorers.  The *Sanchez-Knutson* settlement provided notice of a new TSB with updated procedures for addressing exhaust fumes and reimbursement of related expenses.  *See* Final Order and Judgment, *Sanchez-Knutson*, No. 14-cv-61344 (S.D. Fla. June 21, 2017), ECF No. 468 (granting final approval of class action settlement).

5

and lessees of Class Vehicles were not notified of the existence of the Defect or the potential TSB repairs.

On October 25, 2017—over two months after Plaintiffs' initial complaint had been filed—Ford instituted Field Service Action 17N03 (later re-numbered as 19N05). The Field Service Action provided for the reprogramming of the HVAC system (which automatically took the vehicle out of "Recirculation" mode after extended acceleration) (the "FSA Repairs"). Ford notified vehicle owners of the FSA Repairs by sending letters to the owners of 2011-2017 Ford Explorers.

## IV.   THE SETTLEMENT AGREEMENT AND TERMS

### A.   The Proposed Settlement Class

Plaintiffs seek to certify the following Settlement Class for Settlement purposes only: all entities and natural persons in the United States (including its Territories and the District of Columbia) who currently own or lease (or who in the past owned or leased) a model year 2016 and 2017 Ford Explorers sold or leased in the United States, excluding 2016 and 2017 Police Interceptor Utility Ford Explorers ("Class Vehicle"). *See* Settlement Agreement, §§ I(d), (t).

Excluded from the Settlement Class are: (1) all federal court judges who have presided over this case and any members of their immediate families; (2) all entities and natural persons who elect to exclude themselves from the Settlement Class; (3) all entities and natural persons who delivered to Ford releases of all their claims; and

(4) Ford's employees, officers, directors, agents, and representatives, and their family members.  § I(t)

## B.    The Relief and Settlement Consideration

The initial relief in this Settlement is notice to Settlement Class Members regarding the availability of the certain repairs to their vehicles.  *See* Settlement Agreement, § II(a).  Specifically, this includes notice of:

1.  Repairs provided under Field Service Actions 17N03 and 19N05 to 2016 and 2017 retail Ford Explorers addressing concerns about Exhaust Odor and which are offered regardless of mileage or warranty status until July 31, 2022 ("FSA Repairs"); and

2.  Repairs by an Authorized Ford Dealer to address Exhaust Odor, including the following repairs performed under TSB 17-0044:  (1) inspection and sealing of gaps in the passenger compartment; and (2) installation of a modified exhaust system in vehicles equipped with  a normally aspirated 3.5-liter [TiVCT] engine ("TSB Repairs").

*Id.* at §§ I(j), (x). Ford will direct Authorized Ford Dealers to implement the FSA Repairs and TSB Repairs upon the request of a Settlement Class Member.  *Id.* at § II(a).

Additionally, Members of the Settlement Class are eligible for cash payments in the form of partial reimbursement for the costs of post-warranty TSB Repairs.  *Id.* at § II(c).  Specifically, Settlement Class Members who have had the FSA Repairs performed on their vehicle and then request and pay for TSB Repairs after the

expiration of their warranty,[3] are eligible for partial reimbursement of those costs if they occur within the later of (1) 4 years or 48,000 miles after the vehicle was placed in service (whichever comes first), or (2) 120 days after the date for the completion of Class Notice, as set forth in the Preliminary Approval Order or any order modifying that order. *Id.* Such eligible Settlement Class Members shall be reimbursed up to $125 for costs related to the inspection and sealing of gaps in the passenger compartment and up to $400 for costs related to the installation of a modified exhaust system in vehicles equipped with a normally aspirated 3.5-liter TiVCT engine. *Id.*

This Settlement provides substantial relief to the Settlement Class.  The relief – which is nationwide in scope – includes directly informing Class Vehicles owners and lessees of the availability of repairs to address Exhaust Odor.  In addition, certain eligible Settlement Class Members will be entitled to partial reimbursement for post-warranty TSB repairs.  This relief directly addresses the Exhaust Odor issue by giving Settlement Class Members the ability to get their vehicles fixed.

## C.    Release of Claims

As set forth in full in the Settlement Agreement, including Section § I(p), in exchange for the above relief, Plaintiffs and the Settlement Class will release Ford

---

[3] TSB Repairs provided in-warranty are free of cost.

from liability for all claims arising out of this litigation and the facts or circumstances that were or could have been alleged in the litigation. *Id.* at § I(p).

### D.    Settlement Notice and Right to Opt Out

The Settlement Claims Administrator will mail a short form Class Notice, as approved by the Court, to all Settlement Class Members. *See* Settlement Agreement, § III(c). The Settlement Claims Administrator will also post on a website established for this litigation, a long form Class Notice, also approved by the Court. *Id.*

The Settlement Notice will prominently notify Settlement Class Members that they must request an exclusion in order to pursue any Released Claims. *Id.* at § III(d)(2). To request an exclusion, Settlement Class Members may submit a request for exclusion to the Settlement Administrator sent via first-class mail and:

- Include the Settlement Class Member's full name, address, and telephone number;
- Identify the model, model year, and vehicle identification number of the Settlement Class Member's Class Vehicle(s);
- Explicitly and unambiguously state his or her desire to be excluded from the Settlement Class in *Suresh Persad, Daniel G. Wright, and Robert S. Drummond v. Ford Motor Company*; and
- Be individually and personally signed by the Settlement Class Member (if the Settlement Class Member is represented by counsel, it must also be signed by such counsel).

*Id.*

### E.    Class Counsel Fees and Expenses and Plaintiffs' Service Award

No later than fourteen days prior to the Final Fairness Hearing, Class Counsel will apply to the Court for attorney's fees and expenses award in an amount not to

exceed, collectively, three million five hundred thousand ($3,500,000). *See* Settlement Agreement, § II(f). This sum includes all fees, costs, and expenses incurred by Class Counsel in connection with the Litigation, as well as ongoing and future fees, costs, and expenses associated with the Litigation and Settlement. For the Plaintiffs, Class Counsel will apply to the Court for a service award not to exceed thirty thousand dollars ($30,000), to be allocated by the Court equally among the Plaintiffs. *Id.* at § II(g). Ford agrees not to oppose Class Counsel's motion for attorney's fees, expenses, and service award. *Id* at § II(f).

## V.  THE SETTLEMENT CLASS SHOULD BE PRELIMINARILY CERTIFIED

In connection with granting preliminary approval of the Settlement, the Court should preliminarily certify the Settlement Class, comprised of all entities and natural persons in the United States (including its Territories and the District of Columbia) who currently own or lease (or who in the past owned or leased) a Class Vehicle. *See* Settlement Agreement, § I(t).[4]

A proposed settlement class must satisfy the requirements of Rule 23. *Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 625 (6th Cir. 2007). To be entitled to class certification, a

---

[4] Certification of the Settlement Class is specifically appropriate here based on the extensive record provided through the motion for class certification briefing. *See* ECF Nos. 48, 49, 64, 65, 66.

plaintiff must satisfy each of Rule 23(a)'s four prerequisites to class certification: (i) numerosity; (ii) commonality; (iii) typicality; and (iv) adequacy of representation. *See* Fed. R. Civ. P. 23(a). In addition, the proposed class must meet one of the three requirements of Rule 23(b). *See id.* That the Parties have reached a settlement in this matter is a relevant consideration in the class-certification analysis. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 619 (1997). Indeed, "courts should give weight to the parties' consensual decision to settle class action cases, because that law favors settlement in class action suits." *Daoust v. Maru Rest., LLC*, 2019 WL 1055231, at *1 (E.D. Mich. Feb. 2, 2019) (Berg, J.) (granting preliminary approval of class action settlement). *See also Amchem*, 521 U.S. at 620 (when "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial.").

### A.    The Settlement Class Satisfies the Requirements of Rule 23(a)

The proposed Settlement Class meets Rule 23(a)'s requirements of numerosity, commonality, typicality, and adequacy of representation. *See Senter v. Gen. Motors Corp.*, 532 F.2d 511 (6th Cir.), *cert. denied*, 429 U.S. 870 (1976); *UAW*, 497 F.3d at 626. The Class, consisting of the current and former owners and lessees of approximately 550,000 Ford Explorers (*see* Expert Report of Paul M. Taylor,

Ph.D., P.E. at 22, ECF No. 56-3), is "so numerous that joinder of all members is impracticable." *See* Fed. R. Civ. P. 23(a)(1).

Common issues of fact and law are present because the Class's causes of action all flow from the same common defect. *See Daffin v. Ford Motor Co*., 458 F.3d 549, 552 (6th Cir. 2006) (affirming finding of commonality based on an alleged uniform design defect in vehicles). These common issues include whether the Defect exists in the Class Vehicles, and whether Ford was aware of the Defect. Typicality is similarly satisfied because the Settlement Class's claims all arise from the same course of conduct and the common Defect. *See Beattie v. CenturyTel, Inc.*, 234 F.R.D. 160, 169 (E.D. Mich. 2006) (finding typicality to be satisfied where the plaintiffs' claims "arise[] from the same event or practice or course of conduct that gives rise to the claims of other class members.").

Finally, the Plaintiffs "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Plaintiffs have common interests with other Class Members and have vigorously prosecuted the interests of the Class through qualified counsel. *Rutherford v. City of Cleveland*, 137 F.3d 905 (6th Cir. 1998). There is no conflict between the Plaintiffs and any member of the Settlement Class. Rather, Plaintiffs should be applauded for their efforts in obtaining a successful resolution of this case.

**B.    The Settlement Class May be Properly Certified Under Rule 23(b)(3)**

In addition to the requirements of Rule 23(a), a proposed class must satisfy one of the three alternatives of Rule 23(b).  Plaintiffs here seek certification under Rule 23(b)(3).

### 1.    This Action May Be Certified Under Rule 23(b)(3)

Certification under Rule 23(b)(3) is appropriate here.  Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3). These requirements were added "to cover cases 'in which a class action would achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'"  *Amchem*, 521 U.S. at 615 (quoting Fed. R. Civ. P. 23(b)(3) advisory committee's notes to 1966 Amendment).  Both of these requirements are satisfied here.

#### i.    Common Issues of Fact and Law Predominate

Rule 23(b)(3)'s predominance requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 564 (6th Cir. 2007) (quoting *Amchem*, 521 U.S. at 632). A plaintiff "must establish that 'the issues in the class action that are subject

13

to generalized proof, and thus applicable to the class as a whole, . . . predominate over those issues that are subject only to individualized proof.'" *Id.* (citation omitted).

Here, Ford's common course of conduct with respect to the Defect gives rise to the basis for the claims at bar and demonstrates that common proof, not dependent on any individual Class member's circumstances, will overwhelmingly predominate in this case and weighs determinatively in favor of certification.

The common questions applicable to every Class Member include whether there is a Defect, whether Ford was aware of the existence of the Defect, whether Ford concealed the existence of the Defect, and whether Class Members sustained damages. Courts have routinely found that similar common issues predominate in automotive defect cases. *See, e.g.*, *Daffin*, 458 F.3d at 554; *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1173 (9th Cir. 2010) (common issues predominate such as whether Land Rover was aware of and had a duty to disclose the defect); *Keegan v. Am. Honda Motor Co.*, 284 F.R.D. 504, 532-34 (C.D. Cal. 2012) (predominance found based on common evidence of the nature of the defect, the defect's impact on vehicle safety, Honda's knowledge, and what Honda disclosed to consumers). Given the uniformity of the Defect and Ford's conduct, resolution of the Settlement Class's claims are particular susceptible to adjudication on a collective basis pursuant to Rule 23(b)(3).

### ii.  A Class Action is a Superior Method of Adjudication

Rule 23(b)(3) also requires that Plaintiffs demonstrate that a class action is "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Here, class wide resolution of this action is the superior method of adjudication.

First, the value of the claims is too low to incentivize many Class Members to litigate their claims individually and weighs in favor of concentrating the claims in a single forum. *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 861 (6th Cir. 2013).  This is especially true here, where Settlement Class Members would likely be unable or unwilling to individually shoulder the expense of litigating the claims at issue against a well-funded Defendant like Ford, given the potential monetary awards for those Settlement Class Members.

In addition, because the central issues here are common to all Class Members, resolution on a class-wide basis is the most efficient method of resolving the claims. *See* 2 William B. Rubenstein, Newberg on Class Actions, § 4.74 (5th ed. 2020) (noting that "a finding of predominance is typically . . . coupled with a finding that a class is manageable"). Indeed, proceeding as a class action will "achieve significant economies of 'time, effort and expense, and promote uniformity of decision.'" *See In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 130 (2d Cir. 2013) (quoting Fed. R. Civ. P. 23(b)(3) advisory committee's notes to 1946

Amendment; *see also Bobbit v. Acad. of Court Reporting, Inc.*, 252 F.R.D. 327, 345

(E.D. Mich. 2008).

## VI.   THE PROPOSED SETTLEMENT SATISFIES THE STANDARD FOR PRELIMINARY APPROVAL

Federal Rule of Civil Procedure 23(e) governs the settlement of class actions.

*See* Fed. R. Civ. P. 23(e); *Amchem*, 521 U.S. at 617.  Under Rule 23(e), a class

settlement must be "fair, reasonable, and adequate."  *UAW*, 497 F.3d at 631 (citing

*Granada Inv., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir.1992); *Williams v.*

*Vukovich*, 720 F.2d 909, 922-23 (6th Cir. 1983).  The Sixth Circuit has recognized

that "the law generally favors and encourages the settlement of class actions."

*Franks v. Kroger Co.*, 649 F.2d 1216, 1224 (6th Cir. 1981); *UAW*,  497 F. 3d at 632

("[W]e must consider—the federal policy favoring settlement of class actions[.]");

*Vassalle v. Midland Funding LLC*, 2014 WL 5162380, at *6 (N.D. Ohio Oct. 14,

2014), *aff'd sub nom. Pelzer v. Vassalle*, 655 F. App'x 352 (6th Cir. 2016) ("It is

axiomatic that the settlement of class-action litigation is favored."); *Griffin v.*

*Flagstar Bancorp, Inc*., 2013 WL 6511860, at *2 (E.D. Mich. Dec. 12, 2013) ("The

Sixth Circuit and courts in this district have recognized that the law favors the

settlement of class action lawsuits.").

The Sixth Circuit utilizes seven factors in evaluating class action settlements:

(1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of

the litigation; (3) the amount of discovery engaged in by the parties; (4) the

likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest. *UAW*, 497 F.3d at 626; *Williams*, 720 F.2d at 922-23. In considering these factors, courts apply a "strong presumption" in favor of finding a settlement to be fair. *In re Telectronics Pacing Sys., Inc*., 137 F. Supp. 2d 985, 1008 (S.D. Ohio 2001) ("Being a preferred means of dispute resolution, there is a strong presumption by courts in favor of settlement."); *see also Bautista v. Twin Lakes Farms, Inc.*, 2007 WL 329162, at *5 (W.D. Mich. Jan. 31, 2007); *Robinson v. Ford Motor Co*., 2005 WL 5253339, at *4 (S.D. Ohio June 15, 2005).

As set forth below, the seven-factor standard supports approval of the Settlement Agreement.

### A. There is no Fraud or Collusion

The Parties were all represented by experienced counsel. Class counsel have significant experience litigating numerous consumer class actions, including automotive defect cases. This was a contested litigation all the way through – Ford challenged (i) the sufficiency of the allegations, (ii) the appropriateness of class certification and (iii) the opinions proffered by Plaintiffs' experts. Further, the Settlement Agreement was achieved only after arm's-length and good faith negotiations between the Parties with mediator Rodney Max. As such, there is no indication of fraud or collusion. *In re Telectronics Pacing*, 137 F. Supp. 2d at 1018

(citing NEWBERG ON CLASS ACTIONS § 11.51 (3d ed. 1992) ("Courts respect the integrity of counsel and presume the absence of fraud or collusion in negotiating the settlement, unless evidence to the contrary is offered.").

### B. The Complexity, Expense and Likely Duration of the Litigation Favor Approval

The Settlement in this action comes at an opportune time given that, if the litigation continues, there will be substantial additional expense to the Parties associated with necessary expert discovery, dispositive motion practice, and pre-trial preparations.  If litigation continues, the Parties will continue to engage in expert discovery, including additional depositions and preparation of rebuttal and reply reports.  Additionally, the Parties may file motions for summary judgment. Moreover, a trial in this action would be complex given the relevant factual and legal issues involved.

And, even if Plaintiffs prevailed at trial, it could be years before any Settlement Class member received any benefit in light of the likely post-trial motions and appeals to follow.  Meanwhile, the Settlement provides substantial relief to the Settlement Class in a prompt and efficient manner. "Whatever the relative merits of the parties' positions, there is no such thing as risk-free, expense-free litigation." *IUE-CWA v. Gen. Motors Corp.*, 238 F.R.D. 583, 596 (E.D. Mich. 2006).

**C.     The Amount of Discovery Engaged in by the Parties Favors Approval**

This case involved significant discovery including voluntary Federal Rule of Civil Procedure 26(a) disclosures, review of nearly 300,000 pages of documents produced by Ford, written discovery requests, the inspections of Plaintiffs' vehicles, depositions of eight Ford fact witnesses, depositions of each of the three Plaintiffs, and the submission of Plaintiffs' merits expert reports which addressed, among other things, the cause of the Defect from an engineering perspective, the CO levels in Plaintiffs' vehicles, and the potential health implications and damages. This discovery allowed Class Counsel to make informed decisions regarding the terms of the Settlement Agreement, and whether they are fair, reasonable, and adequate.

**D.     The Likelihood of Success on the Merits Favors Approval**

When evaluating the reasonableness of a class action settlement, courts consider "the risks, expense, and delay Plaintiffs would face if they continued to prosecute this complex litigation through trial and appeal and weighs those factors against the amount of recovery provided to the Class in the Proposed Settlement." *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 523 (E.D. Mich. 2003).  A settlement is generally viewed favorably because it "avoids the costs, delays, and multitudes of other problems associated with them." *See In re Telectronics Pacing*, 137 F. Supp. 2d at 1013 (citation and internal quotation marks omitted).

Here, but for the Settlement, the litigation would have continued to be contested, and counsel for all Parties were committed to litigate this case through trial and beyond, if necessary. Accordingly, there are substantial risks and costs if this action were to proceed. While Class Counsel believes that the Plaintiffs and putative Class would ultimately prevail at trial, counsel recognizes that ultimate success is not assured and believes that this Settlement, when viewed in light of the risks of proving both liability and recoverable damages, is unquestionably fair, adequate, and reasonable. *See, e.g.*, *In re Packaged Ice Antitrust Litig.*, 2011 WL 6209188, at *11 (E.D. Mich. Dec. 13, 2011) (finding that while plaintiffs may "remain optimistic about their ultimate chance of success [ ] there is always a risk that Defendants could prevail with respect certain legal or factual issues," which weighs in favor of approval of settlement). Throughout the litigation, Ford has asserted numerous defenses to the merits of claims alleged and the ability to certify the Class. While Plaintiffs oppose Ford's arguments, there nonetheless remains a risk of non-recovery to the Class. As such, avoiding unnecessary expense of time and resources clearly benefits all parties and the Court. *See UAW v. Ford Motor Co.*, 2006 WL 1984363, at *24 (E.D. Mich. July 13, 2006) ("The costs and uncertainty of lengthy and complex litigation weigh in favor of settlement.").

### E.      Experienced Class Counsel's Opinions Favor Approval

In considering approval of a proposed settlement, "[t]he Court should also consider the judgment of counsel and the presence of good faith bargaining between the contending parties." *Rankin v. Rots*, 2006 WL 1876538, at *3 (E.D. Mich. June 27, 2006). Courts are particularly likely to defer to the judgment of experienced trial counsel where, as here, significant discovery has been completed. *Williams*, 720 F.2d at 922–23.  Class counsel here have extensive experience in handling class action cases, including automotive defect cases like at issue here (as discussed below).  Class counsel have thoroughly investigated and analyzed the claims alleged in this action and made informed judgments regarding the Settlement and believe it is fair, reasonable, and adequate.  Counsel also engaged in good-faith bargaining overseen by an experienced mediator.  This further weighs in support of preliminary approval.

### F.      The Settlement is Fair to Absent Class Members

This factor evaluates whether the settlement "appears to be the result of arm's length negotiations between the parties and fairly resolves all claims which were, or could have been asserted." *In re Rio Hair Naturalizer Prods. Liab. Litig.*, 1996 WL 780512, at *14 (E.D. Mich. Dec. 20, 1996) (internal citation omitted).  As set forth above, the Settlement Agreement was reached only after several years of active litigation and hard fought, arm's-length negotiations. The resulting Settlement

Agreement provides fair terms to all Settlement Class Members.  Moreover, the release in this case extends only to claims that were or could have been asserted in this case and thus there is no risk of unfairness to absent class members.

### G.     The Settlement is Consistent With the Public Interest

Finally, the Court considers whether the settlement is consistent with the public interest.  "[T]here is a strong public interest in encouraging settlement of complex litigation and class action suits because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources." *In re Cardizem CD*, 218 F.R.D. at 530 (quoting *Granada Inv., Inc.*, 962 F.2d at 1205).  Here, it is clearly in the public interest to approve this settlement.  The Settlement provides extensive benefits and resolves the claims of the Class, eliminates the risk of non-recovery on behalf of the Class, provides certainty to the Defendant, and eases the burden of the Court's resources.

Overall, given the complexity, expense, and risks with continued litigation, the proposed settlement is fair, adequate, and reasonable.

## VII.   THE COURT SHOULD APPOINT CLASS COUNSEL

Pursuant to Rule 23(g), Plaintiffs also move to appoint Joseph H. Meltzer, E. Powell Miller and the law firms Kessler Topaz Meltzer & Check, LLP and The Miller Law Firm, P.C. as "Class Counsel."  Rule 23(g) focuses on the qualifications of class counsel, complementing the requirement of Rule 23(a)(4) that the

representative parties adequately represent the interests of the class members. Fed. R. Civ. P. 23. Rule 23(g)(1)(A) specifically instructs a court to consider:

> (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class.

*Id.* Here, each of Rule 23(g)(1)(A)'s considerations weigh strongly in favor of finding Class Counsel adequate. Specifically, Class Counsel did substantial work identifying and investigating potential claims and properly supporting the allegations in the Amended Class Action Complaint, as shown by the fact that this Court denied in full Defendant's Motion to Dismiss. ECF No. 31. As part of their investigation and work, Class Counsel retained and consulted with multiple experts in different fields, and carefully reviewed public materials along with the voluminous documents and information produced by Ford in discovery.

As reflected in their firm resumes, Class Counsel has substantial experience, individually and collectively, successfully prosecuting class actions and other complex litigation, including claims of the type asserted in this action. *See* Exs. 2, 3. Hence, Class Counsel's extensive efforts in prosecuting this case, combined with their in-depth knowledge of the subject area, satisfy Rule 23(g).

## VIII.  THE FORM AND MANNER OF NOTICE ARE PROPER

The manner in which the Class Notice is disseminated, as well as its content, must satisfy Rule 23(c)(2) (governing class certification notice), Rule 23(e)(1) (governing settlement notice), and due process.  *See Daoust*, 2019 WL 1055231, at *2.  Plaintiffs adequately satisfy these requirements.  Rule 23(e) requires that notice of a proposed settlement be provided to class members.  Fed. R. Civ. P. 23.  Notice satisfies the Rule when it adequately puts Settlement Class Members on notice of the proposed settlement and "describes the terms of the settlement, informs the classes about the allocation of attorneys' fees, and provides specific information regarding the date, time, and place of the final approval hearing."  *Daoust*, 2019 WL 1055231, at *2.

Here, Class Notice includes a "Short Form Class Notice" to be mailed to all Settlement Class Members that informs Settlement Class Members of the Settlement and the availability of:  (1) the FSA Repairs, and (2) the TSB Repairs in the event that the FSA Repairs do not remedy the Exhaust Odor concerns.  *See* Settlement Agreement at Exhibit C.  The Short Form Class Notice also informs Settlement Class Members of the potential for cash payments in the form of partial reimbursement for the costs of post-warranty TSB Repairs.  *Id.*  Lastly, the Short Form Class Notice will direct Settlement Class Members to a Settlement Website, which will enable Settlement Class Members to readily look up their Class Vehicle by VIN to

determine whether the FSA Repairs are available for their vehicle, have questions answered, obtain additional copies of materials sent by the Settlement Claims Administrator, and find instructions on how to submit a Claim for reimbursement either by mail or online submission. The Settlement Website will also post the "Long Form Class Notice" which contains additional details concerning the Settlement and claims process. *See* Settlement Agreement at Exhibit D.

Here, the proposed notice plan satisfies all of Rule 23's requirements. The language of the Class Notice was drafted and agreed to by the Parties and is written in plain, simple terminology, including: (1) a description of the Settlement Class; (2) a description of the claims asserted in the action; (3) a description of the Settlement and release of claims; (4) the deadlines for requesting exclusion; (5) the identity of Class Counsel for the Settlement Class; (6) the Final Approval Hearing date; (7) an explanation of eligibility for appearing at the Final Approval Hearing; and (8) the deadline for objecting to the Settlement. The Class Notice thus allows Settlement Class Members to make an informed and intelligent decision on whether to exclude themselves or object to the Settlement. In addition, pursuant to Rule 23(h), the proposed Class Notice sets forth the maximum amount of Attorneys' Fees and Expenses and Case Contribution Awards that may be sought.

The dissemination of the Class Notice likewise satisfies all requirements. The Settlement Claims Administrator will mail the short form Class Notice to the last

known address of each potential member of the Settlement Class, which will be checked and updated via the National Change of Address database.  *See* Settlement Agreement, § III(c).  If any Class Notice is returned as undeliverable, the Settlement Claims Administrator shall perform a reasonable search for a more current address and re-send the Class Notice.

Accordingly, the proposed Class Notice complies with the standards of fairness, completeness, and neutrality required of a settlement class notice disseminated under authority of the Court.

## IX.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court: (1) grant preliminary approval of the Settlement as fair, reasonable, and adequate, and in the best interest of the Class Members; (2) preliminarily certify the proposed Settlement Class for settlement purposes only; (3) preliminarily appoint Kessler Topaz Meltzer & Check, LLP and the Miller Law Firm, P.C. as Lead Settlement Class Counsel; (4) approve the form and content of, and direct the distribution of, the proposed Class Notice and accompanying Claim Form Instructions and Claim Form, and authorize and direct the Parties to retain KCC Class Action Services as Settlement Claims Administrator; and (5) schedule a Final Approval Hearing not earlier than one hundred and fifty-five days after Preliminary Approval is granted.

Dated: November 18, 2020                    Respectfully submitted,

                                            */s/ Joseph H. Meltzer*
                                            Joseph H. Meltzer
                                            Ethan J. Barlieb
                                            Natalie Lesser
                                            **KESSLER TOPAZ**
                                              **MELTZER & CHECK, LLP**
                                            280 King of Prussia Road
                                            Radnor, PA 19087
                                            Tel: (610) 667-7706
                                            jmeltzer@ktmc.com
                                            ebarlieb@ktmc.com
                                            nlesser@ktmc.com

                                            **THE MILLER LAW FIRM, P.C.**
                                            E. Powell Miller (P39487)
                                            Sharon S. Almonrode (P33938)
                                            William Kalas (P82113)
                                            950 West University Drive, Suite 300
                                            Rochester, MI 48307
                                            Tel: (248) 841-2200
                                            epm@millerlawpc.com
                                            ssa@millerlawpc.com
                                            wk@millerlawpc.com

                                            *Attorneys for Plaintiffs and the*
                                            *Proposed Classes*