## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| SURESH PERSAD, DANIEL G. WRIGHT and ROBERT S. DRUMMOND, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> FORD MOTOR COMPANY, <br><br> Defendant. | Civil Action No. 2:17-cv-12599-TGB-MKM <br><br> Hon. Terrence G. Berg <br><br> Magistrate Judge Mona K. Majzoub |

### PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

Plaintiffs Suresh Persad, Daniel G. Wright, and Robert S. Drummond ("Plaintiffs"), by and through their attorneys, respectfully move the Court for an Order:

1) granting final approval of the proposed class action Settlement; and

2) certifying the Settlement Class for purposes of effectuating the Settlement.

In support thereof, Plaintiffs have contemporaneously filed a Memorandum of Law and Joint Declaration of Joseph H. Meltzer and E. Powell Miller.

In accordance with L.R. 7.1(a) Plaintiffs' counsel sought the concurrence of Defendant's counsel in the relief sought by this Motion on November 1, 2021 and Defendant does not oppose Plaintiffs' requested relief contained therein.

For the reasons set forth in the Memorandum of Law, Plaintiffs respectfully request that the Court grant their Unopposed Motion.

Dated: November 1, 2021             Respectfully submitted,

                                    */s/ Joseph H. Meltzer*
                                    Joseph H. Meltzer
                                    Ethan J. Barlieb
                                    **KESSLER TOPAZ
                                      MELTZER & CHECK, LLP**
                                    280 King of Prussia Road
                                    Radnor, PA 19087
                                    Tel: (610) 667-7706
                                    jmeltzer@ktmc.com
                                    ebarlieb@ktmc.com

                                    **THE MILLER LAW FIRM, P.C.**
                                    E. Powell Miller (P39487)
                                    Sharon S. Almonrode (P33938)
                                    William Kalas (P82113)
                                    950 West University Drive, Suite 300
                                    Rochester, MI 48307
                                    Tel: (248) 841-2200
                                    epm@millerlawpc.com
                                    ssa@millerlawpc.com
                                    wk@millerlawpc.com

                                    *Attorneys for Plaintiffs and the
                                    Proposed Classes*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| SURESH PERSAD, DANIEL G. WRIGHT and ROBERT S. DRUMMOND, individually and on behalf of all others similarly situated, | Civil Action No. 2:17-cv-12599-TGB-MKM |
| | Hon. Terrence G. Berg |
| Plaintiffs, | Magistrate Judge Mona K. Majzoub |
| v. | |
| FORD MOTOR COMPANY, | |
| Defendant. | |

**MEMORANDUM OF LAW IN SUPPORT OF**
**PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF**
**PROPOSED CLASS ACTION SETTLEMENT**

## **TABLE OF CONTENTS**

I.     INTRODUCTION ........................................................................1

II.    ARGUMENT ............................................................................4

    A.    The Settlement Readily Meets the Standard for Final Approval ..........4

    B.    Both the Rule 23(e)(2) Factors and the Sixth Circuit Final Approval Factors Support Approval of the Settlement ........................7

        1.    The Relief Provided to the Settlement Class Is Adequate ..........7

        2.    Plaintiffs and Class Counsel Adequately Represented the Settlement Class ........................................................10

        3.    The Settlement Was Negotiated at Arm's-Length ...................12

        4.    The Complexity, Costs, Risks, and Delay of Further Litigation, Trial, and Appeal .......................................13

        5.    Extent of Discovery Completed and Stage of Proceedings ......17

        6.    The Experience and Views of Counsel ....................................18

        7.    Reaction of the Settlement Class to the Settlement .................19

        8.    Public Interest Favors Approval of the Settlement ..................20

        9.    The Other Factors Set Forth in Rule 23(e)(2) Support Final Approval of the Settlement .............................................20

III.    THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS ..........22

IV.    NOTICE TO THE SETTLEMENT CLASS SATISFIED RULE 23 ..........23

V.    CONCLUSION .........................................................................24

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Arledge v. Domino's Pizza, Inc.*,
  2018 WL 5023950 (S.D. Ohio Oct. 17, 2018) ...................................................12

*Athan v. U.S. Steel Corp.*,
  523 F. Supp. 3d 960 (E.D. Mich. 2021) (Berg, J.) .....................................*passim*

*Bell Atl. Corp. v. Bolger*,
  2 F.3d 1304 (3d Cir. 1993) ...................................................................................7

*In re Canadian Superior Sec. Litig.*,
  2011 WL 5830110 (S.D.N.Y. Nov. 16, 2011)....................................................13

*In re Cardizem CD Antitrust Litig.*,
  218 F.R.D. 508 (E.D. Mich. 2003) ........................................................................6

*In re Cendant Corp. Litig.*,
  264 F.3d 201 (3d Cir. 2001) ...............................................................................17

*Daoust v. Maru Rest., LLC*,
  2019 WL 2866490 (E.D. Mich. July 3, 2019) (Berg, J.)............................*passim*

*In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*,
  248 F.R.D. 483 (E.D. Mich. 2008) .....................................................................13

*Does 1-2 v. Deja Vu Servs., Inc.*,
  925 F.3d 886 (6th Cir. 2019) ................................................................................7

*Fidel v. Farley*,
  534 F.3d 508 (6th Cir. 2008) ..............................................................................23

*Granada Invs., Inc. v. DWG Corp.*,
  962 F.2d 1203 (6th Cir. 1992) ..............................................................................7

*Griffin v. Flagstar Bancorp, Inc.*,
  2013 WL 6511860 (E.D. Mich. Dec. 12, 2013) ...................................................6

*IUE-CWA v. Gen. Motors Corp.*,
  238 F.R.D. 583 (E.D. Mich. 2006) .......................................................................5

*Leonhardt v. ArvinMeritor, Inc.*,
    581 F. Supp. 2d 818 (E.D. Mich. 2008) ..............................................................5

*In re Nationwide Fin. Servs. Litig.*,
    2009 WL 8747486 (S.D. Ohio Aug. 19, 2009) .............................................6, 19

*In re Netflix Priv. Litig.*,
    2013 WL 1120801 (N.D. Cal. Mar. 18, 2013) ...................................................13

*New England Health Care Emps. Pension Fund v. Fruit of the Loom, Inc.*,
    234 F.R.D. 627 (W.D. Ky. 2006) .......................................................................14

*N.Y. State Tchrs.' Ret. Sys. v. Gen. Motors Co.*,
    315 F.R.D. 226 (E.D. Mich. 2016) ..............................................................17, 22

*In re Polyurethane Foam Antitrust Litig.*,
    168 F. Supp. 3d 985 (N.D. Ohio 2016) ...............................................8, 9, 10, 15

*Sanchez-Knutson v. Ford Motor Co.*,
    2017 U.S. Dist. LEXIS 96560 (S.D. Fla. June 20, 2017)..................................21

*UAW v. Gen. Motors Corp.*,
    2006 WL 891151 (E.D. Mich. Mar. 31, 2006)..................................................19

*UAW v. Gen. Motors Corp.*,
    497 F.3d 615 (6th Cir. 2007) .....................................................................*passim*

*Williams v. Vukovich*,
    720 F.2d 909 (6th Cir. 1983) .............................................................................18

**Rules**

Federal Rule of Civil Procedure 23 ..................................................................*passim*

## <u>STATEMENT OF ISSUES PRESENTED</u>

1.      Whether the Court should approve the proposed settlement as fair, reasonable, and adequate under Federal Rule of Civil Procedure 23(e).

Suggested Answer: Yes.

2.      Whether the Court should finally certify the Action as a class action pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3) for purposes of effectuating the Settlement only.

Suggested Answer: Yes.

iv

## **CONTROLLING OR MOST APPROPRIATE AUTHORITIES**

**Rules**

Federal Rule of Civil Procedure 23

**Cases**

*Athan v. U.S. Steel Corp.*, 523 F. Supp. 3d 960 (E.D. Mich. 2021) (Berg, J.)

*Daoust v. Maru Rest., LLC*, 2019 WL 2866490 (E.D. Mich. July 3, 2019) (Berg, J.)

*UAW v. Gen. Motors Corp.*, 497 F.3d 615 (6th Cir. 2007)

Plaintiffs Suresh Persad, Daniel G. Wright, and Robert S. Drummond ("Plaintiffs"), on behalf of themselves and the Settlement Class, respectfully submit this Memorandum of Law in Support of their Motion for Final Approval of Class Action Settlement ("Motion") pursuant to Federal Rule of Civil Procedure ("Rule") 23(e), requesting: (i) final approval of the proposed Settlement; and (ii) certification of the Settlement Class for purposes of effectuating the Settlement.[1]

## I.    INTRODUCTION

Subject to this Court's final approval, Plaintiffs, through their counsel, Kessler Topaz Meltzer & Check, LLP ("Kessler Topaz") and The Miller Law Firm, P.C. ("Miller Law") (together, "Class Counsel"), have negotiated a Class Action Settlement ("Settlement" or "Settlement Agreement") with Defendant Ford Motor Company ("Defendant" or "Ford"), in exchange for the release of all claims brought in this Action. As described below and in the accompanying Joint Declaration, the Settlement is an excellent result for the Settlement Class, providing a significant and

---

[1] The Settlement Class consists of all entities and natural persons in the United States (including its Territories and the District of Columbia) who currently own or lease (or who in the past owned or leased) a model year 2016 and 2017 Ford Explorer sold or leased in the United States, excluding 2016 and 2017 Police Interceptor Utility Ford Explorers. Capitalized terms not defined herein have the same meanings as set forth in the Settlement Agreement (ECF No. 81-2, as amended by ECF No. 85-2) or in the accompanying Joint Declaration of Joseph H. Meltzer and E. Powell Miller (the "Joint Declaration" or "Joint Decl."). Unless otherwise indicated, internal citations and quotations have been omitted and emphasis has been added.

certain benefit to vehicle owners nationwide in a case that presented numerous hurdles and risks, including the risks of continued litigation.

As described below and in the Joint Declaration, Plaintiffs' decision to settle the Action was well-informed by an extensive investigation, hard-fought litigation by experienced counsel (including substantial discovery efforts), and protracted arm's-length negotiations supervised by an experienced mediator, Rodney Max. While Plaintiffs believe that their claims are meritorious, they also recognize that, in the absence of a settlement, they faced substantial risks to obtaining any benefit for the Settlement Class—let alone a benefit greater than that afforded by the Settlement.

In reaching the Settlement, Plaintiffs and Class Counsel carefully considered the risks of continued litigation. Notably, the Settlement was reached while Plaintiffs' Motion for Class Certification was pending—a litigation milestone that carried significant risks for both sides. Moreover, had the Action continued, Plaintiffs would likely have faced serious challenges to establishing both liability and damages. For example, Defendant would have argued—as they did throughout this litigation—that Plaintiffs could not establish that the Class Vehicles suffered from a uniform design defect or that the detection or presence of exhaust fumes in the Class Vehicles created a safety hazard for passengers.

2

While Plaintiffs successfully opposed these arguments at the pleading stage, they faced a heavier burden at summary judgment and trial, and there was no guarantee that their arguments would prevail. These risks, and others, underscore the adequacy of the Settlement obtained here.

The Court preliminarily approved the Settlement, and provisionally certified the Settlement Class for purposes of effectuating the Settlement, by Order dated April 30, 2021 (the "Preliminary Approval Order"). ECF No. 89. By the same Order, the Court approved the process by which Settlement Class Members would receive notice of the Settlement and submit claims, objections, or requests for exclusion. The deadlines to submit objections and requests for exclusion from the Settlement Class have passed. No Settlement Class Member has objected to the Settlement and the Court-authorized Claims Administrator, KCC Class Action Services ("KCC"), has received just 39 requests for exclusion. *See* Decl. of Lana Lucchesi Regarding A) Mailing of the Notice Packet; and B) Report on Requests for Exclusion Received to Date ("KCC Decl."), ¶¶ 20-24 (attached as Exhibit 1 to the Joint Declaration).[2]

For these reasons, Plaintiffs submit that the Settlement readily meets the standards for final approval under Rule 23 and is a fair, reasonable, and adequate

---

[2] Pursuant to the Preliminary Approval Order, the deadline for requests for exclusion and objections was August 28, 2021 (or September 25, 2021 for New Hampshire residents). Should any requests for exclusion or objections be received after the date of this submission, Class Counsel will address them in their supplemental memorandum to be filed on or before November 8, 2021.

result for the Settlement Class. Accordingly, Plaintiffs respectfully request that the Court grant final approval of the Settlement.

Last, Plaintiffs request that the Court finally certify the Settlement Class for purposes of effectuating the Settlement pursuant to Rules 23(a) and (b)(3), as nothing has changed to alter the propriety of the Court's provisional certification of the Settlement Class in its Preliminary Approval Order. *See* ECF No. 89, ¶¶ 7-12.[3]

## II.   ARGUMENT

### A.   The Settlement Readily Meets the Standard for Final Approval

Rule 23(e) requires judicial approval for any settlement of class action claims. Where, as here, a settlement is binding on class members, the Court may approve it "only after a hearing and only on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). To determine whether a settlement is fair, reasonable, and adequate, Rule 23(e)(2) directs the Court to examine whether:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

---

[3] Plaintiffs' Unopposed Motion for Preliminary Approval of Proposed Class Action Settlement (ECF No. 81), and the reasons supporting certification of the Settlement Class set forth therein, are incorporated herein by reference.

Consistent with Rule 23(e), courts in this Circuit consider the following seven factors in determining whether a class action settlement should be approved:

> (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

*UAW v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007); *accord Athan v. U.S. Steel Corp.*, 523 F. Supp. 3d 960 (E.D. Mich. 2021) (Berg, J.); *Daoust v. Maru Rest., LLC*, 2019 WL 2866490 (E.D. Mich. July 3, 2019) (Berg, J.).

In its analysis, the Court "may choose to 'consider only factors that are relevant to the settlement and may weigh particular factors according to the demands of the case.'" *Leonhardt v. ArvinMeritor, Inc.*, 581 F. Supp. 2d 818, 832 (E.D. Mich. 2008).[4]

The determination of whether a settlement is fair, reasonable, and adequate "is committed to the sound discretion of the district court." *IUE-CWA v. Gen. Motors Corp.*, 238 F.R.D. 583, 594 (E.D. Mich. 2006). In making this determination, the Court must consider "whether the interests of the class as a whole are better served

---

[4] The December 1, 2018 amendments to Rule 23(e)(2) were not intended to "displace any factor" used by courts to assess final settlement approval, but rather to focus on core substantive and procedural concerns to guide the approval decision. Fed. R. Civ. P. 23 Advisory Committee's note to 2018 amendment. The factors in amended Rule 23(e)(2) are entirely consistent with the factors used by the Sixth Circuit to assess final settlement approval and both sets of factors are addressed in the sections below.

5

if the litigation is resolved by the settlement rather than pursued." *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 522 (E.D. Mich. 2003). "[W]hile courts have discretion in determining whether to approve a proposed settlement, they should be hesitant to engage in a trial on the merits or to substitute their judgment for that of the parties who negotiated the proposed settlement." *In re Nationwide Fin. Servs. Litig.*, 2009 WL 8747486, at *2 (S.D. Ohio Aug. 19, 2009). "Thus, in determining the reasonableness and adequacy of a proposed settlement, the Court should ascertain whether the settlement is within a 'range of reasonableness,' . . . and in the end, the Court's determinations are no more than 'an amalgam of delicate balancing, gross approximations and rough justice.'" *Id.* (quoting *Leonhardt*, 581 F. Supp. 2d at 831 and *Officers for Just. v. Civil Serv. Comm'n of S.F.*, 688 F.2d 615, 625 (9th Cir. 1982)). In determining whether to approve a settlement, courts should also recognize "the federal policy favoring settlement of class actions." *UAW*, 497 F.3d at 632.[5]

As demonstrated herein and in the Joint Declaration, the Settlement readily satisfies each of the factors enumerated in Rule 23(e)(2) and traditionally considered by courts in the Sixth Circuit; furthers the favored public policy goal of resolving

---

[5] *See also Griffin v. Flagstar Bancorp, Inc.*, 2013 WL 6511860, at *2 (E.D. Mich. Dec. 12, 2013) ("[T]he law favors the settlement of class action lawsuits."); *Cardizem*, 218 F.R.D. at 530 ("[T]here is a strong public interest in encouraging settlement of complex litigation and class action suits because they are 'notoriously difficult and unpredictable' . . . .").

class action claims through negotiated settlements; and warrants this Court's final approval.

**B.      Both the Rule 23(e)(2) Factors and the Sixth Circuit Final Approval Factors Support Approval of the Settlement**

### 1.      <u>The Relief Provided to the Settlement Class Is Adequate</u>

A key factor that courts consider in assessing approval of a class action settlement is plaintiff's likelihood of success on the merits balanced against the relief offered in the settlement. *UAW*, 497 F.3d at 631. To that end, the Sixth Circuit has expressly recognized that "nonpecuniary benefits" can confer "substantial benefit" to a settlement class. *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1206 (6th Cir. 1992) (affirming final approval of settlement where it provided for, among other things, "changes in corporate governance"); *Does 1-2 v. Deja Vu Servs., Inc.*, 925 F.3d 886, 897 (6th Cir. 2019) ("When compared against the risks involved in litigating or arbitrating the Dancers' claims, the value of the Settlement Agreement is significant. The injunctive relief mandates extensive changes to Déjà Vu's business practices . . . ."); *see also Bell Atl. Corp. v. Bolger*, 2 F.3d 1304, 1311 (3d Cir. 1993) ("Despite the difficulties they pose to measurement, nonpecuniary benefits . . . may support a settlement.").

Moreover, "[t]he possibility 'that the settlement could have been better . . . does not mean the settlement presented was not fair, reasonable or adequate,' because '[s]ettlement is the offspring of compromise; the question . . . is not whether

the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion.'" *In re Polyurethane Foam Antitrust Litig.*, 168 F. Supp. 3d 985, 1001 (N.D. Ohio 2016) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir.1998)) (alterations in original).

Here, the initial relief in this Settlement is notice to Settlement Class Members regarding the availability of the certain repairs to their vehicles. *See* Settlement Agreement, § II(a). Specifically, this includes notice of:

1.   Repairs provided under Field Service Actions 17N03 and 19N05 to 2016 and 2017 retail Ford Explorers addressing concerns about Exhaust Odor and which are offered regardless of mileage or warranty status until July 31, 2022 ("FSA Repairs"); and

2.   Repairs by an Authorized Ford Dealer to address Exhaust Odor, including the following repairs performed under TSB 17-0044: (1) inspection and sealing of gaps in the passenger compartment; and (2) installation of a modified exhaust system in vehicles equipped with a normally aspirated 3.5-liter [TiVCT] engine ("TSB Repairs").

*Id*. at §§ I(j), (x). Ford will direct Authorized Ford Dealers to implement the FSA Repairs and TSB Repairs upon the request of a Settlement Class Member submitted according to the deadlines and procedures set forth in the FSA and the Settlement Agreement. *Id*. at § II(a).

Additionally, Members of the Settlement Class are eligible for cash payments in the form of partial reimbursement for the costs of post-warranty TSB Repairs. *Id*. at § II(c). Specifically, Settlement Class Members who have had the FSA Repairs performed on their vehicle and then request and pay for TSB Repairs after the

expiration of their warranty, are eligible for partial reimbursement of those costs if they occur within the later of (1) 4 years or 48,000 miles after the vehicle was placed in service (whichever comes first); or (2) 120 days after the date for the completion of Class Notice, as set forth in the Preliminary Approval Order or any order modifying that order. *Id.* Such eligible Settlement Class Members shall be reimbursed up to $400 for costs related to the inspection and sealing of gaps in the passenger compartment and up to $400 for costs related to the installation of a modified exhaust system in vehicles equipped with a normally aspirated 3.5-liter TiVCT engine. *Id.*

This Settlement provides substantial relief to the Settlement Class. The relief—which is nationwide in scope—includes directly informing the owners and lessees of Class Vehicles of the availability of repairs to address Exhaust Odor. The FSA Repairs, which are provided to the Settlement Class free of charge, were first offered for the Class Vehicles by Defendant after the filing of Plaintiffs' Initial Complaint. The FSA Repairs are available until July 31, 2022. The relief also includes notice to Settlement Class Members of the availability of the TSB Repairs, in particular the inspection and sealing of gaps in the passenger compartment and the installation of a modified exhaust system in certain vehicles, in the event that the FSA Repairs did not remedy Exhaust Odor concerns. In addition, Settlement Class Members will be entitled to partial reimbursement of costs incurred for post-

warranty TSB repairs. Thus, this meaningful benefit directly addresses the Exhaust Odor issue by giving Settlement Class Members the ability to get their vehicles fixed.

The result achieved is also significant in light of the risks to further litigation and the possibility of obtaining no relief whatsoever. While Plaintiffs are confident in the merits of their claims and believe that they could have ultimately prevailed against Defendant, they recognize the numerous risks that would accompany further litigation of these claims. Joint Decl., ¶¶ 48-49; *see infra* Section I. As a result, the relief provided to the Settlement Class is more than adequate since "there was a very real risk of complete non-recovery." *Polyurethane Foam*, 168 F. Supp. 3d at 1001.

### 2. Plaintiffs and Class Counsel Adequately Represented the Settlement Class

Final approval of the Settlement is also warranted under Rule 23(e)(2)(A) because Plaintiffs and Class Counsel "have adequately represented the class." Here, Messrs. Persad, Wright, and Drummond have actively monitored and engaged in the prosecution and resolution of the Action on behalf of the Settlement Class. To this end, Plaintiffs regularly communicated with Class Counsel on litigation strategy and case developments, reviewed significant Court filings, and conferred with Class Counsel throughout the Parties' settlement negotiations. Plaintiffs have also devoted substantial time producing documentary discovery, responding to discovery

requests, sitting for depositions, and presenting their vehicles for inspections by Ford. *See* Joint Decl., ¶ 35.

In addition, Plaintiffs—whose vehicles are alleged to suffer from the same defect as all other Class Vehicles, and whose claims arise from the same course of conduct by Defendant—have claims that are typical of other Settlement Class Members and their interests are aligned. *See UAW*, 497 F.3d at 626 (representation adequate where class members' "legal interests parallel the named representatives' interests").

Class Counsel have also adequately represented the Settlement Class. As detailed in the Joint Declaration, Class Counsel actively litigated this Action for more than four years, undertaking a substantial investigation, and then engaging in hard-fought motion practice, extensive discovery, and protracted settlement negotiations. Joint Decl., ¶¶ 19-34, 39-40.

With the knowledge gleaned from these efforts, Class Counsel carefully considered the strengths and weaknesses of the claims asserted and the risks of further litigation when agreeing to resolve the Action. Class Counsel firmly believes the Settlement represents an excellent result in the best interests of the Settlement Class. *See UAW*, 497 F.3d at 626 (finding representation adequate because counsel "was willing to, and indeed did, commit substantial 'resources . . . to representing the class'") (alteration in original).

### 3.   The Settlement Was Negotiated at Arm's-Length

Rule 23(e)(2)(B) and the first *UAW* factor—the nature of the negotiations and the risk of fraud or collusion—also support final approval because the Settlement was reached only after arm's-length negotiations facilitated by an experienced and well-respected mediator. Joint Decl., ¶ 39. Without evidence to the contrary, the court may presume that settlement negotiations were conducted in good faith and that the resulting agreements were reached without collusion. *Athan*, 523 F. Supp. 3d at 966.

Here, the Parties' settlement negotiations were extensive and included the determined assistance of an experienced mediator. Joint Decl., ¶¶ 39-40. It was only after two sessions held on July 24, 2020 and August 11, 2020, which included the exchange of detailed mediation statements outlining the strengths and weaknesses of the Parties' respective positions, that the Parties were ultimately able to reach an agreement. Joint Decl., ¶¶ 39-41. As such, the risk that the Settlement was the product of collusion is effectively non-existent. *See Arledge v. Domino's Pizza, Inc.*, 2018 WL 5023950, at *2 (S.D. Ohio Oct. 17, 2018) ("[P]articipation of an independent mediator in settlement negotiations virtually insures that the negotiations were conducted at arm's length and without collusion . . . ."); *see also Daoust*, 2019 WL 2866490, at *2 ("To help resolve the case, the parties enlisted the

services of a retired Federal Judge, Judge Steven Rhodes, in facilitating the Parties' mediation, thereby reinforcing that the Settlement Agreement is non-collusive.").[6]

### 4.   The Complexity, Costs, Risks, and Delay of Further Litigation, Trial, and Appeal

Rule 23(e)(2)(C)(i) and the second *UAW* factor further support final approval of the Settlement, as "[c]ourts have consistently held that the expense and possible duration of litigation are major factors to be considered in evaluating the reasonableness of a settlement." *In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*, 248 F.R.D. 483, 497-98 (E.D. Mich. 2008) ("[T]he proposed Settlements secure . . . an immediate benefit, after approximately two years of litigation, undiminished by further expenses and without the delay, risk and uncertainty of continued litigation."); *Athan*, 523 F. Supp. 3d at 967 ("The complexity, expense, and length of continued litigation militate in favor of this settlement.").

---

[6] Indeed, many courts have afforded a *presumption* of fairness and reasonableness of a settlement agreement where, as here, that agreement was the product of non-collusive, arm's-length negotiations. *See, e.g.*, *In re Canadian Superior Sec. Litig.*, 2011 WL 5830110, at *2 (S.D.N.Y. Nov. 16, 2011) ("[A] strong presumption of fairness attaches because the settlement was reached by experienced counsel after arm's length negotiations."); *In re Netflix Priv. Litig.*, 2013 WL 1120801, at *4 (N.D. Cal. Mar. 18, 2013) ("[P]resumption of fairness and reasonableness of a settlement agreement where that agreement was the product of non-collusive, arms' length negotiations conducted by capable and experienced counsel.").

13

As discussed below, if the Action continued, the Settlement Class faced protracted delays, substantial litigation costs, and significant risks. *See also* Joint Decl., ¶¶ 48-59.

> a)   **The Significant Costs and Delay of Further Litigation**

The Parties had completed fact discovery, and were in the midst of extensive expert discovery, when the Settlement was reached. Joint Decl., ¶¶ 28-32. Barring settlement, continued litigation of the Action—through the conclusion of expert discovery, *Daubert* and dispositive motion practice, pre-trial preparation, and post-trial appeals—would have undoubtedly been a long and expensive endeavor. *See Daoust*, 2019 WL 2866490, at *2 (approving settlement where, "[i]f forced to litigate this case further, the Parties would certainly engage in complex, costly and protracted wrangling").

In contrast, the Settlement has provided an immediate and substantial benefit for the Settlement Class without exposing Settlement Class Members to the risk, expense, and delay of continued litigation. *See id.* ("The Settlement, on the other hand, provides substantial relief to Representative Plaintiff and the Class Members promptly and efficiently, and amplifies the benefits of that relief through the economies of class resolution."); *New England Health Care Emps. Pension Fund v. Fruit of the Loom, Inc.*, 234 F.R.D. 627, 631 (W.D. Ky. 2006) ("Consideration of

the possible expense, duration, and complexity of this litigation also weighs in favor of the proposed settlements.").

### b) Risks to Continued Litigation

"The most important of the factors to be considered in reviewing a settlement is the probability of success on the merits. The likelihood of success, in turn, provides a gauge from which the benefits of the settlement must be measured." *Polyurethane Foam*, 168 F. Supp. 3d at 995 (quoting *In re Gen. Tire & Rubber Co. Sec. Litig.*, 726 F.2d 1075, 1086 (6th Cir. 1984)). Here, Plaintiffs faced significant risks to both certifying a class and establishing Defendant's liability if the Action continued through summary judgment and trial.

*First*, when the Parties agreed to the Settlement, Plaintiffs' Motion for Class Certification was pending before the Court. Plaintiffs sought certification of multi-state damages classes, under Rule 23(b)(3), for each of the common law claims asserted in the Complaint, or alternatively Pennsylvania- and Georgia-only classes. Plaintiffs also sought certification of an injunctive class under Rule 23(b)(2). Joint Decl., ¶ 50.

Defendant opposed certification of any damages classes, arguing that the proposed classes were overbroad and that individual issues predominated, primarily because of variations in state law. Joint Decl., ¶ 50. Defendant also opposed an injunctive class. Plaintiffs and the Settlement Class thus faced substantial risk that

the Court would have declined to certify any classes or that the Court would have certified narrower classes (which would have limited the scope of vehicle owners eligible for relief). Joint Decl., ¶ 50.

*Second*, Plaintiffs faced significant hurdles to proving liability at trial. In particular, Defendant would likely have argued that Plaintiffs failed to establish that the Class Vehicles suffered from a uniform design defect, i.e., that the Class Vehicles allowed exhaust fumes, including CO, into the passenger compartment while in use. Joint Decl., ¶ 53 Defendant may also have argued that even if exhaust fumes can be detected in the Class Vehicles, the levels of such fumes are not significant enough to create a safety hazard. Joint Decl., ¶ 53. Last, Defendant may have argued that even if the Class Vehicles, when manufactured, suffered from some design defect, the issue had been remedied. Plaintiffs would bear a heavy burden to prove their claims at summary judgment and trial, and it is entirely possible that Defendant's arguments could have resonated with a jury. Joint Decl., ¶¶ 56-57.

*Third*, Plaintiffs faced formidable challenges with respect to proving damages. Defendant would likely have challenged the testimony of Plaintiffs' damages experts, who proposed a conjoint analysis, which measured the diminished value to the Class Vehicles, and a cost of repair analysis. Joint Decl., ¶ 55. Resolution of these issues would undoubtedly hinge upon "a 'battle of experts' . . . with no

guarantee whom the jury would believe." *In re Cendant Corp. Litig.*, 264 F.3d 201, 239 (3d Cir. 2001).

On the other hand, pursuant to the Settlement, the Settlement Class has received a substantial benefit without having to undertake these risks, and others, which weighs strongly in favor of final approval. *Athan*, 523 F. Supp. 3d at 967-68 ("There are many unique factual and novel legal issues in this matter that make it difficult for the Parties to gauge their respective likelihood of success, resulting in a considerable risk to each side. Thus, the Court agrees that this proposed settlement is a fair and reasonable settlement in relation to the potential risks and uncertain recovery in this case."); *Daoust*, 2019 WL 2866490, at *2 ("Here, the fact-intensive nature of Plaintiffs' claims and Defendant's affirmative defenses present risk. The settlement eliminates this uncertainty.").

**5.** **Extent of Discovery Completed and Stage of Proceedings**

"The relevant inquiry with respect to [the third *UAW*] factor is whether the plaintiff has obtained a sufficient understanding of the case to gauge the strengths and weaknesses of the claims and the adequacy of the settlement." *N.Y. State Tchrs.' Ret. Sys. v. Gen. Motors Co.*, 315 F.R.D. 226, 236 (E.D. Mich. 2016). As detailed in the Joint Declaration, during the course of this Action, Class Counsel spent significant time and resources analyzing and litigating the legal and factual issues of this case, including, inter alia: (i) conducting a wide-ranging legal and factual

17

investigation; (ii) drafting a detailed Amended Complaint; (iii) opposing (successfully) Defendant's Motion to Dismiss; (iv) engaging in extensive fact discovery, including the review and analysis of nearly 300,000 pages of documents, and numerous depositions of Ford witnesses; (v) engaging in significant expert discovery; and (vi) engaging in a hard-fought mediation process facilitated by Rodney Max. Joint Decl., ¶ 69.

As such, "all of aspects of the dispute are well-understood by both sides, and the parties have completed enough discovery to recommend settlement." *Daoust*, 2019 WL 2866490, at *2; *Athan*, 523 F. Supp. 3d at 967 ("The Court is satisfied that the Parties reviewed all of the exchanged and available information and used it to evaluate the merits of their respective claims or defenses in comparison to the costs and risks associated with further litigation.").

### 6.    **The Experience and Views of Counsel**

The fifth *UAW* factor also supports the Settlement, as courts recognize that the opinion of experienced and knowledgeable counsel supporting settlement after vigorous arm's-length negotiation is entitled to considerable weight. *See Williams v. Vukovich*, 720 F.2d 909, 922-23 (6th Cir. 1983).

Class Counsel—who have extensive experience prosecuting complex class actions, *see* Exhibits 3 and 4 to the Joint Declaration—are intimately familiar with the facts and legal issues involved in the Action and firmly believe that the

Settlement is fair, reasonable, and adequate, and in the best interests of the Settlement Class. Likewise, Defendant was represented by highly experienced and skilled counsel who vigorously defended their clients.

Under these circumstances, Class Counsel's opinion that the proposed Settlement is fair "is entitled to significant weight, and supports the fairness of the class settlement." *UAW v. Gen. Motors Corp.*, 2006 WL 891151, at *18 (E.D. Mich. Mar. 31, 2006); *Daoust*, 2019 WL 2866490, at *3 (approving settlement where "both Plaintiffs' and Defendants' counsel believe that the settlement is fair and reasonable, which weighs in favor of approving the settlement"); *Athan*, 523 F. Supp. 3d at 967-68 (same).

## 7. <u>Reaction of the Settlement Class to the Settlement</u>

"In considering a class action settlement, the Court should also look to the reaction of the class members." *Nationwide*, 2009 WL 8747486, at *7. As of October 21, 2021, KCC has disseminated over 848,949 copies of the Notice Packet to potential Settlement Class Members. KCC Decl., ¶ 14. The deadlines for Settlement Class Members to object to the Settlement, or to request exclusion from the Settlement Class, have both passed. To date, there have been no objections and just 39 requests for exclusion. KCC Decl., ¶¶ 20-24. *See Daoust*, 2019 WL 2866490, at *3 ("The fact that the vast majority of class members neither objected nor opted out

is a strong indication of fairness."). The Settlement also has the full support of Plaintiffs. *See* Joint Decl., ¶¶ 35-38.

### 8.    Public Interest Favors Approval of the Settlement

The final *UAW* factor strongly supports this Settlement. "The Sixth Circuit has recognized that 'the law generally favors and encourages the settlement of class actions.'" *Daoust*, 2019 WL 2866490, at *3 (quoting *Franks v. Kroger Co.*, 649 F.2d 1216, 1224 (6th Cir. 1981) and collecting cases). The Settlement furthers this policy and promotes judicial efficiency; it resolves at once the claims of the entire Settlement Class and avoids further litigation.

### 9.    The Other Factors Set Forth in Rule 23(e)(2) Support Final Approval of the Settlement

Rule 23(e)(2), as amended, also considers: (i) the effectiveness of the proposed method of distributing relief to the class, including the method of processing class-member claims; (ii) the terms of any proposed award of attorneys' fees, including timing of payment; (iii) any agreement made in connection with the proposed settlement; and (iv) the equitable treatment of class members. *See* Rule 23(e)(2)(C)(ii), (iii), and (iv); Rule 23(e)(2)(D). Each of these additional considerations also supports final approval of the Settlement.

#### a)    The Proposed Method of Processing Class-Member Claims Is Effective

As described above, the primary relief from the Settlement is providing notice to Settlement Class Members of the availability of the FSA Repairs and TSB

20

Repairs. The Settlement also provides for the partial reimbursement of costs incurred from post-warranty TSB repairs—relief for which Settlement Class Members can make claims that will be processed pursuant to a method that is standard in cases such as this one. The Court-authorized Claims Administrator, KCC, will review and process all claims received, provide claimants with an opportunity to cure any deficiency in their claim and will ultimately mail or wire claimants any monetary amounts they are entitled to under the Settlement Agreement. *See, e.g.*, *Sanchez-Knutson v. Ford Motor Co.*, 2017 U.S. Dist. LEXIS 96560 (S.D. Fla. June 20, 2017) (granting approval of settlement with nearly identical relief and claims process).

### b)   Requested Attorneys' Fees and Expenses Are Fair and Reasonable

Class Counsel have filed a Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses concurrently herewith (the "Fee Motion"), which is incorporated by reference. As detailed therein, Class Counsel is applying to the Court for attorneys' fees and expenses in the amount of $3,500,000. This sum includes all fees, costs, and expenses incurred by Class Counsel in connection with the Litigation, as well as ongoing and future fees, costs, and expenses associated with the Litigation and Settlement. Class Counsel is also applying to the Court for a service award not to exceed thirty thousand dollars ($30,000), to be allocated by the Court equally among the Plaintiffs. Like the relief sought through this Motion, Ford does not oppose Class Counsel's Fee Motion.

c)      **The Settlement Treats Settlement Class Members Equitably**

Finally, the proposed Settlement treats all Settlement Class Members equitably relative to one another. There is no preferential treatment for any member of the Settlement Class. Plaintiffs will receive the same benefit as all Settlement Class Members, other than any Court-approved service awards related to their representation of the Settlement Class.[7]

## III.    THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS

In its Preliminary Approval Order, the Court provisionally certified the Settlement Class for settlement purposes. *See* ECF No. 89, ¶¶ 7-12 (analyzing how the Action satisfies each element for class certification). Nothing has changed to alter the propriety of the Court's provisional certification and, for all the reasons stated in Plaintiffs' Unopposed Motion for Preliminary Approval of Proposed Class Action Settlement and supporting memorandum (ECF No. 81), Plaintiffs respectfully request that the Court finally certify the Settlement Class for purposes of settlement. *See Gen. Motors*, 315 F.R.D. at 235 (approving certification of settlement class where "[n]othing ha[d] changed to alter the Court's" provisional certification in the preliminary approval order).

---

[7] Rule 23(e)(2)(C)(iv) asks the Court to consider any additional agreements made by the Parties in connection with the Settlement. The Settlement (and its related exhibits) is the only agreement made by the Parties in connection with the Settlement.

## IV.   NOTICE TO THE SETTLEMENT CLASS SATISFIED RULE 23

Rule 23(e)(1)(B) requires that notice of the proposed settlement be given "in a reasonable manner to all class members who would be bound by the proposal." Rule 23(c)(2)(B) further requires certified classes to receive "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." "To comport with the requirements of due process, notice must be 'reasonably calculated to reach interested parties.'" *Fidel v. Farley*, 534 F.3d 508, 514 (6th Cir. 2008).

Here, both the content of the Court-approved Notice and its distribution to Settlement Class Members satisfy all applicable notice requirements. In accordance with the Preliminary Approval Order, KCC disseminated, via U.S. mail, the Short Form Class Notice to the last known address of each potential member of the Settlement Class. *See* Settlement Agreement, § III(c). KCC Decl., ¶¶ 6-14. The Notice, as well as the Settlement, Preliminary Approval Order, and other relevant documents, were also posted on the Settlement website. KCC Decl., ¶¶ 17-19. Defendant also issued notice of the Settlement pursuant to CAFA. KCC Decl., ¶¶ 3-5.

Here, the Notice satisfies all of Rule 23's requirements. The language of the Class Notice was drafted and agreed to by the Parties and was written in plain, simple terminology, including: (1) a description of the Settlement Class; (2) a description

of the claims asserted in the action; (3) a description of the Settlement and release of claims; (4) the deadlines for requesting exclusion; (5) the identity of Class Counsel for the Settlement Class; (6) the Final Approval Hearing date; (7) an explanation of eligibility for appearing at the Final Approval Hearing; and (8) the deadline for objecting to the Settlement. The Class Notice thus allowed Settlement Class Members to make an informed and intelligent decision on whether to exclude themselves or object to the Settlement. In addition, pursuant to Rule 23(h), the proposed Class Notice set forth the maximum amount of attorneys' fees and expenses and service awards that may be sought.

In sum, the Notice provided sufficient information for Settlement Class Members to make informed decisions regarding the Settlement, fairly apprised them of their rights with respect to the Settlement, was the best notice practicable under the circumstances, and complied with the Court's Preliminary Approval Order, Rule 23, and due process. Comparable notice programs are routinely approved by courts in this Circuit. *See, e.g.*, *Daoust*, 2019 WL 2866490, at *4.

## V.   CONCLUSION

For the reasons stated herein and in the Joint Declaration and Fee Motion filed herewith, Plaintiffs respectfully request that the Court grant final approval of the Settlement and certify the Settlement Class.

Dated: November 1, 2021                    Respectfully submitted,

                                           */s/ Joseph H. Meltzer*
                                           Joseph H. Meltzer
                                           Ethan J. Barlieb
                                           **KESSLER TOPAZ
                                             MELTZER & CHECK, LLP**
                                           280 King of Prussia Road
                                           Radnor, PA 19087
                                           Tel: (610) 667-7706
                                           jmeltzer@ktmc.com
                                           ebarlieb@ktmc.com

                                           **THE MILLER LAW FIRM, P.C.**
                                           E. Powell Miller (P39487)
                                           Sharon S. Almonrode (P33938)
                                           William Kalas (P82113)
                                           950 West University Drive, Suite 300
                                           Rochester, MI 48307
                                           Tel: (248) 841-2200
                                           epm@millerlawpc.com
                                           ssa@millerlawpc.com
                                           wk@millerlawpc.com

                                           *Attorneys for Plaintiffs and the
                                           Proposed Classes*

## CERTIFICATE OF SERVICE

I hereby certify that on November 1, 2021, I caused a true and correct copy of the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system. Notice of this filing will be sent to counsel of record by operation of the Court's electronic filing system.

*/s/ Joseph H. Meltzer*
Joseph H. Meltzer
Ethan J. Barlieb
**KESSLER TOPAZ**
 **MELTZER & CHECK, LLP**
280 King of Prussia Road
Radnor, PA 19087
Tel: (610) 667-7706
jmeltzer@ktmc.com
ebarlieb@ktmc.com

**THE MILLER LAW FIRM, P.C.**
E. Powell Miller (P39487)
Sharon S. Almonrode (P33938)
William Kalas (P82113)
950 West University Drive, Suite 300
Rochester, MI 48307
Tel: (248) 841-2200
epm@millerlawpc.com
ssa@millerlawpc.com
wk@millerlawpc.com

*Attorneys for Plaintiffs and the*
*Proposed Classes*

26