## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| SURESH PERSAD, DANIEL G. WRIGHT and ROBERT S. DRUMMOND, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>FORD MOTOR COMPANY,<br><br>Defendant. | Civil Action No. 2:17-cv-12599-TGB-MKM<br><br>Hon. Terrence G. Berg<br><br>Magistrate Judge Mona K. Majzoub |

## CLASS COUNSEL'S UNOPPOSED MOTION FOR AN AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF LITIGATION EXPENSES, AND SERVICE AWARDS TO PLAINTIFFS

Court-appointed Class Counsel, Kessler Topaz Meltzer & Check, LLP ("Kessler Topaz") and The Miller Law Firm, P.C. ("Miller Law") (together, "Class Counsel"), respectfully move the Court for an Order:

1) awarding attorneys' fees and reimbursement of litigation expenses, and service awards to Plaintiffs.

In support thereof, Class Counsel have contemporaneously filed a Memorandum of Law and Joint Declaration of Joseph H. Meltzer and E. Powell Miller.

In accordance with L.R. 7.1(a) Class Counsel sought the concurrence of Defendant's counsel in the relief sought by this Motion on November 1, 2021, and Defendant does not oppose Plaintiffs' requested relief contained therein.

For the reasons set forth in the Memorandum of Law, Class Counsel respectfully requests that the Court grant their Unopposed Motion.

Dated: November 1, 2021          Respectfully submitted,

*/s/ Joseph H. Meltzer*
Joseph H. Meltzer
Ethan J. Barlieb
**KESSLER TOPAZ**
  **MELTZER & CHECK, LLP**
280 King of Prussia Road
Radnor, PA 19087
Tel: (610) 667-7706
jmeltzer@ktmc.com
ebarlieb@ktmc.com

**THE MILLER LAW FIRM, P.C.**
E. Powell Miller (P39487)
Sharon S. Almonrode (P33938)
William Kalas (P82113)
950 West University Drive, Suite 300
Rochester, MI 48307
Tel: (248) 841-2200
epm@millerlawpc.com
ssa@millerlawpc.com
wk@millerlawpc.com

*Attorneys for Plaintiffs and the*
*Proposed Classes*

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| SURESH PERSAD, DANIEL G. WRIGHT and ROBERT S. DRUMMOND, individually and on behalf of all others similarly situated, | Civil Action No. 2:17-cv-12599-TGB-MKM |
| | Hon. Terrence G. Berg |
| Plaintiffs, | Magistrate Judge Mona K. Majzoub |
| v. | |
| FORD MOTOR COMPANY, | |
| Defendant. | |

## MEMORANDUM OF LAW IN SUPPORT OF CLASS COUNSEL'S UNOPPOSED MOTION FOR AN AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF LITIGATION EXPENSES, AND SERVICE AWARDS TO PLAINTIFFS

# **TABLE OF CONTENTS**

I.     PRELIMINARY STATEMENT ....................................................................1

II.    THE REQUESTED FEE AWARD IS REASONABLE AND
SHOULD BE APPROVED ............................................................................5

     A.    The Value Of The Benefit Rendered To The Settlement Class
Supports The Requested Fee ...............................................................5

     B.    The Value Of Class Counsel's Services On An Hourly Basis,
And A Lodestar Cross-Check, Supports The Fee Request ..................7

     C.    The Contingent Nature Of Class Counsel's Representation
Supports The Fee Request..................................................................10

     D.    Society's Stake In Rewarding Attorneys Who Litigate
Contingent Class Action Matters Supports the Fee Request .............12

     E.    The Complexity Of The Litigation Supports The Fee Request .........12

     F.    The Professional Skill And Standing Of Counsel Involved On
Both Sides Supports The Fee Request ...............................................14

III.   CLASS COUNSEL'S LITIGATION EXPENSES ARE
REASONABLE AND SHOULD BE APPROVED ....................................16

IV.   PLAINTIFFS SHOULD BE AWARDED SERVICE AWARDS...............18

V.    THE LACK OF OBJECTIONS FURTHER SUPPORTS THE
REQUESTED ATTORNEYS' FEES, REIMBURSEMENT OF
LITIGATION EXPENSES, AND SERVICE AWARDS...........................19

VI.   CONCLUSION............................................................................................20

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*,
  2006 WL 3378705 (S.D.N.Y. Nov. 16, 2006)....................................................15

*In re Amgen Inc. Sec. Litig.*,
  2016 WL 10571773 (C.D. Cal. Oct. 25, 2016) ..................................................10

*Arp v. Hohla & Wyss Enters., LLC*,
  2020 WL 6498956 (S.D. Ohio Nov. 5, 2020) ....................................................18

*Asghari v. Volkswagen Grp. of Am., Inc.*,
  2015 WL 12732462 (C.D. Cal. May 29, 2015)....................................................8

*Athan v. U.S. Steel Corp.*,
  523 F. Supp. 3d 960 (E.D. Mich. 2021) (Berg, J.) ...................................3, 10, 16

*Bailey v. AK Steel Corp.*,
  2008 WL 553764 (S.D. Ohio Feb. 28, 2008) ......................................................9

*Barnes v. City of Cincinnati*,
  401 F.3d 729 (6th Cir. 2005) ..............................................................................7

*Bell Atl. Corp. v. Bolger*,
  2 F.3d 1304 (3d Cir. 1993) ..................................................................................6

*In re Cardinal Health Inc. Sec. Litig.*,
  528 F. Supp. 2d 752 (S.D. Ohio 2007) ...........................................................5, 9

*In re Cardizem CD Antitrust Litig.*,
  218 F.R.D. 508 (E.D. Mich. 2003) ..............................................................12, 14

*In re Cendant Corp. Litig.*,
  264 F.3d 201 (3d Cir. 2001) ..............................................................................14

*Daoust v. Maru Rest., LLC*,
  2019 WL 2866490 (E.D. Mich. July 3, 2019) (Berg, J.)...............................17, 18

*In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*,
  248 F.R.D. 482 (E.D. Mich. 2008) ...........................................................*passim*

*Does 1-2 v. Deja Vu Servs., Inc.*,
   925 F.3d 886 (6th Cir. 2019) ................................................................6

*In re DPL Inc., Sec. Litig.*,
   307 F. Supp. 2d 947 (S.D. Ohio 2004) ..................................................5

*In re Elec. Carbon Prods. Antitrust Litig.*,
   447 F. Supp. 2d 389 (D.N.J. 2006) ......................................................19

*In re F&M Distribs., Inc. Sec. Litig.*,
   1999 U.S. Dist. LEXIS 11090 (E.D. Mich. June 29, 1999) ....................9, 10, 15

*Granada Invs., Inc. v. DWG Corp.*,
   962 F.2d 1203 (6th Cir. 1992) ..............................................................5

*Granillo v. FCA US LLC*,
   2019 WL 4052432 (D.N.J. Aug. 27, 2019) ............................................8

*Kogan v. AIMCO Fox Chase, L.P.*,
   193 F.R.D. 496 (E.D. Mich. 2000) ........................................................9

*New England Health Care Emps. Pension Fund v. Fruit of the Loom, Inc.*,
   234 F.R.D. 627 (W.D. Ky. 2006) ........................................................16

*NILI 2011, LLC v. City of Warren*,
   2018 WL 5264236 (E.D. Mich. Oct. 23, 2018)....................................19

*Palazzolo v. Fiat Chrysler Autos. N.V.*,
   No. 4:16-cv-12803-LVP-SDD (E.D. Mich. May 1, 2019),
   ECF No. 70-5 ........................................................................................9

*Ramey v. Cincinnati Enquirer, Inc.*,
   508 F.2d 1188 (6th Cir. 1974) ......................................................5, 7, 12

*Rikos v. Proctor & Gamble Co.*,
   2018 WL 2009681 (S.D. Ohio Apr. 30, 2018) ....................................10

*In re Se. Milk Antitrust Litig.*,
   2013 WL 2155387 (E.D. Tenn. May 17, 2013) ....................................16

*Stanley v. U.S. Steel Co.*,
   2009 WL 4646647 (E.D. Mich. Dec. 8, 2009) ....................................10

*In re Telectronics Pacing Sys., Inc.*,
    137 F. Supp. 2d 1029 (S.D. Ohio 2001) ............................................................12

**Rules**

Federal Rule of Civil Procedure 23 .....................................................................1, 13

## <u>STATEMENT OF ISSUES PRESENTED</u>

1.      Whether the Court should approve Class Counsel's request for an award of attorneys' fees.

Suggested Answer: Yes.

2.      Whether the Court should approve Class Counsel's request for reimbursement of litigation expenses.

Suggested Answer: Yes.

3.      Whether the Court should approve Class Counsel's requests for service awards to Plaintiffs related to Plaintiffs' representation of the Settlement Class.

Suggested Answer: Yes.

# CONTROLLING OR MOST APPROPRIATE AUTHORITIES

## Rules

Federal Rule of Civil Procedure 23

## Cases

*Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188 (6th Cir. 1974)

*Athan v. U.S. Steel Corp.*, 523 F. Supp. 3d 960 (E.D. Mich. 2021) (Berg, J.)

*Daoust v. Maru Rest., LLC*, 2019 WL 2866490 (E.D. Mich. July 3, 2019) (Berg, J.)

Court-appointed Class Counsel, Kessler Topaz Meltzer & Check, LLP ("Kessler Topaz") and The Miller Law Firm, P.C. ("Miller Law") (together, "Class Counsel"), respectfully submit this Memorandum of Law in Support of their Motion, pursuant to Rules 23(e) and 23(h) of the Federal Rules of Civil Procedure, for an award of attorneys' fees in the amount of $3,000,000.[1] Class Counsel also seek reimbursement in the total amount of $500,000 for litigation expenses that were reasonably and necessarily incurred in prosecuting and resolving the Action, and service awards for costs incurred by Plaintiffs directly related to their representation of the Settlement Class in the aggregate amount of $30,000.

## I.   PRELIMINARY STATEMENT

After more than four years of dedicated litigation efforts, Class Counsel have successfully negotiated a settlement of the Action with Defendant Ford Motor Company ("Defendant" or "Ford") resolving all allegations that Ford sold the retail versions of 2016 and 2017 Ford Explorers (the "Class Vehicles") with a defect that allows exhaust fumes to enter the passenger compartment. The proposed Settlement, if approved by the Court, will resolve this case in its entirety in exchange for meaningful benefits for Settlement Class Members nationwide.

---

[1] Capitalized terms not defined herein have the same meanings as set forth in the Settlement Agreement (ECF No. 81-2, as amended by ECF No. 85-2) or in the accompanying joint declaration of Joseph H. Meltzer and E. Powell Miller (the "Joint Declaration" or "Joint Decl."). Unless otherwise noted, all internal citations and quotations have been omitted and emphasis has been added.

The benefits of the Settlement include notice of the availability of the FSA Repairs, which Ford only offered for the Class Vehicles after Plaintiffs filed their Initial Complaint in this Action. To date, 438,015 Settlement Class Members have received the free, FSA Repairs, which have addressed the vast majority of exhaust fume concerns in the Class Vehicles. *See* ECF No. 86 (stating that based on Ford's internal data, only 0.2% of the Class Vehicles had subsequent odor or exhaust intrusion repair after FSA Repairs were performed). The benefits of the Settlement also includes notice of the availability of additional TSB Repairs, which Settlement Class Members can request in the event that the FSA Repairs were not entirely successful. *See* Settlement Agreement, § II(a). Further, Settlement Class Members who receive these additional TSB Repairs after expiration of their warranty will be eligible for cash payments in the form of partial reimbursement for such repair costs. *Id.* at § II(c). By any measure, the Settlement represents an excellent result. It provides meaningful benefits to the Settlement Class while avoiding the substantial risks and delays of continued litigation.

As detailed below and in the Joint Declaration, Class Counsel vigorously pursued this litigation from its outset, and were fully prepared to continue down the path towards trial. Among their efforts, Class Counsel: (i) conducted a thorough legal and factual investigation into the Settlement Class's claims; (ii) researched and drafted a detailed complaint; (iii) opposed (and defeated) Defendant's Motion to

Dismiss; (iv) engaged in extensive fact discovery, including the review and analysis of more than 299,00 pages of documents produced in this Action, and the taking or defending of 11 fact depositions; (v) exchanged extensive expert discovery, including expert reports and depositions; (vi) researched, drafted, and argued a motion for class certification; and (vii) engaged in hard-fought settlement negotiations under the supervision of an experienced mediator, Rodney Max.

In total, Class Counsel have devoted over 7,820 hours with a resulting lodestar of $3,801,650.50, to the investigation, prosecution, and resolution of the Action.[2] Here, unlike most cases, Class Counsel's fee request is *less than* the total lodestar value of the time that Class Counsel dedicated to the Action. *See Athan v. U.S. Steel Corp.*, 523 F. Supp. 3d 960, 971 (E.D. Mich. 2021) (Berg, J.) ("The fees are *all the more reasonable* given that they are the result of vigorous negotiations between the Parties and are *less than the total lodestar actually incurred on this matter by Plaintiffs' Counsel*."). Likewise, Class Counsel's expense request is *less than* the total out of pocket expenses incurred in prosecuting the Action.

Further supporting this motion, there have been no objections, to date, to the requests for attorneys' fees and expenses. Pursuant to the Court's Preliminary Approval Order, 848,949 copies of the Notice were disseminated to potential

---

[2] Class Counsel will continue to devote resources to the Action through the completion of the settlement administration process.

Settlement Class Members. *See* Decl. of Lana Lucchesi Regarding A) Mailing of the Notice Packet; and B) Report on Requests for Exclusion Received to Date ("KCC Decl."), ¶ 14, attached to the Joint Declaration as Exhibit 1. The Notice advises recipients that Class Counsel would be applying to the Court for an award of attorneys' fees in an amount not to exceed $3,000,000, and reimbursement of Litigation Expenses in an amount not to exceed $500,000. The Notice further informs Settlement Class Members that they could object to the requests for attorneys' fees and expenses until August 28, 2021 (or September 25, 2021 for New Hampshire residents), but no such objections have been received.[3] Moreover, all Plaintiffs fully support Class Counsel's request for fees and expenses.

For the reasons discussed herein, the requested fee is fair and reasonable, particularly in light of the favorable benefit obtained for the Settlement Class and the fact that such an award does not even cover the lodestar incurred by Class Counsel in litigating the Action. In addition, Class Counsel also respectfully submit that the expenses for which they seek reimbursement were reasonable and necessary for the successful prosecution of the Action. Finally, the requests for service awards to Plaintiffs for the time they dedicated to the Action on behalf of the Settlement Class are likewise reasonable and appropriate.

---

[3] Class Counsel will address any objections received after this submission in their supplemental papers to be filed by November 8, 2021.

4

## II.   THE REQUESTED FEE AWARD IS REASONABLE AND SHOULD BE APPROVED

In reviewing the reasonableness of a fee request, the Sixth Circuit instructs district courts to consider the following six "*Ramey*" factors:

> 1) the value of the benefit rendered to the corporation or its stockholders, 2) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others, 3) whether the services were undertaken on a contingent fee basis, 4) the value of the services on an hourly basis [the lodestar cross-check], 5) the complexity of the litigation, and 6) the professional skill and standing of counsel involved on both sides.

*Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1194-97 (6th Cir. 1974). Each of the *Ramey* factors confirms that the requested $3,000,000 fee is fair and reasonable.

### A.   The Value Of The Benefit Rendered To The Settlement Class Supports The Requested Fee

The first *Ramey* factor requires courts to evaluate the benefit of the settlement for the class. "District courts in this Circuit widely regard [this] factor as the most important." *In re Cardinal Health Inc. Sec. Litig.*, 528 F. Supp. 2d 752, 764 (S.D. Ohio 2007); *see also In re DPL Inc., Sec. Litig.*, 307 F. Supp. 2d 947, 951 (S.D. Ohio 2004) ("Herein, the award of attorneys' fees must be driven by the results obtained by Plaintiffs' counsel."). In making this determination, the Sixth Circuit has expressly recognized that "nonpecuniary benefits" can confer "substantial benefit" to a settlement class. *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1206 (6th Cir. 1992) (affirming final approval of settlement where it provided for, among other

things, "changes in corporate governance"); *Does 1-2 v. Deja Vu Servs., Inc.*, 925 F.3d 886, 897 (6th Cir. 2019) ("When compared against the risks involved in litigating or arbitrating the Dancers' claims, the value of the Settlement Agreement is significant. The injunctive relief mandates extensive changes to Déjà Vu's business practices . . . ."); *see also Bell Atl. Corp. v. Bolger*, 2 F.3d 1304, 1311 (3d Cir. 1993) ("Despite the difficulties they pose to measurement, nonpecuniary benefits . . . may support a settlement.").

After Plaintiffs' initiated this Action, Defendant began offering the FSA Repairs for the Class Vehicles. To date, a total of 438,015 Class Vehicles have received the FSA Repairs. As stated in the Notice, which informs Settlement Class Members of their availability, the FSA Repairs are provided to Settlement Class Members free of charge and are available until July 31, 2022. The Notice also informs Settlement Class Members of the availability of additional TSB Repairs, notably the inspection and sealing of gaps in the passenger compartment and the installation of a modified exhaust system in certain vehicles. For these TSB Repairs, the Settlement provides for a partial reimbursement of post-warranty costs.

According to Ford, its average costs for providing the FSA Repairs are $54.26 and $113.36 per vehicle, depending on the procedure utilized. Thus, for the 438,015 Class Vehicles that have received these repairs to date (324,719 Class Vehicles at an average cost of $113.36 and 113,296 Class Vehicles at an average cost of $54.26),

the total benefit of the FSA Repairs can be estimated at approximately $42.9 million. Joint Declaration ¶ 45. This figure does not include the value of informing Settlement Class Members of the availability of the FSA and TSB Repairs, nor does it include the reimbursements that will be offered for the TSB Repairs under the Settlement, which could be up to $800 per vehicle for the majority of Class Vehicles.

Here, Class Counsel submit that the Settlement is an excellent result for the Settlement Class when considering the risk of obtaining a lesser benefit (or no benefit at all). At the time the Parties agreed to settle the Action, Plaintiffs' Motion for Class Certification—a motion that was hotly contested by Defendant—had been pending for more than a year. And, going forward, Defendant would have continued to advance their numerous defenses to Plaintiffs' claims—among others, that Plaintiffs could not establish the Class Vehicles were defectively designed and that any exhaust fumes detectable in the Class Vehicles are not significant enough to create a safety hazard.

Thus, the Settlement provides a meaningful benefit for Settlement Class Members, while avoiding the many complexities and risks of further litigation.

## B. The Value Of Class Counsel's Services On An Hourly Basis, And A Lodestar Cross-Check, Supports The Fee Request

The fourth *Ramey* factor compares the fee request to counsel's lodestar— often referred to as a "lodestar cross-check." Lodestar is determined by multiplying "the number of hours reasonably expended on the case by a reasonable hourly rate."

*Barnes v. City of Cincinnati*, 401 F.3d 729, 745 (6th Cir. 2005). The lodestar cross-check is particularly appropriate here "[b]ecause the benefits, like those offered in other class action settlements against automobile manufacturers, are not derived from a common fund and, at this juncture, cannot be calculated precisely." *Granillo v. FCA US LLC*, 2019 WL 4052432, at *3 (D.N.J. Aug. 27, 2019) (approving settlement and applying lodestar multiplier of 1.11); *Asghari v. Volkswagen Grp. of Am., Inc.*, 2015 WL 12732462, at *41 (C.D. Cal. May 29, 2015) (collecting cases and explaining lodestar method is appropriate in automobile cases where calculation of the common fund was uncertain).

Here, a lodestar cross-check fully supports Class Counsel's fee request. As detailed herein and in the Joint Declaration, Class Counsel exerted substantial efforts in advancing this litigation in the face of aggressive and highly-skilled defense attorneys. In total, Class Counsel spent over 7,820 hours of attorney and other professional support time prosecuting the Action for the benefit of the Settlement Class through October 25, 2021. Based on these hours, Class Counsel's lodestar is $3,801,650.50 (or an average of $486 per hour). Joint Declaration ¶ 74. Accordingly, the $3,000,000 fee request represents a negative multiplier of .79 of the total lodestar and results in an effective hourly rate of $383, given the total number of hours that Class Counsel dedicated to the Action.

This "negative" or fractional multiplier is well below the range of multipliers commonly awarded in comparable litigation. Fee awards in class actions with substantial contingency risks generally represent positive multipliers of counsel's lodestar, often ranging from one to four times the lodestar or even higher. *See Cardinal Health*, 528 F. Supp. 2d at 767 (approving multiplier of approximately 5.9, and observing that "[m]ost courts agree that the typical lodestar multiplier" on a large class action "ranges from 1.3 to 4.5"); *Bailey v. AK Steel Corp.*, 2008 WL 553764, at *2-3 (S.D. Ohio Feb. 28, 2008) (awarding multiplier of 3.04, noting that "[c]ourts typically . . . increas[e] the lodestar amount by a multiple of several times itself" and identifying a "normal range of between two and five"); *Kogan v. AIMCO Fox Chase, L.P.*, 193 F.R.D. 496, 503-04 (E.D. Mich. 2000) (awarding fees amounting to 2.49 multiplier); *In re F&M Distribs., Inc. Sec. Litig.*, 1999 U.S. Dist. LEXIS 11090, at *5, *19-20 (E.D. Mich. June 29, 1999) (awarding fees amounting to 1.35 multiplier).

Here, despite the existence of numerous substantial litigation risks in the case from the outset, Class Counsel are seeking a fee that is *less than* the lodestar value of their time.[4] Courts, including this Court, have repeatedly recognized that a

---

[4] As described in the Joint Declaration, the hourly rates utilized by Class Counsel in calculating their lodestar range from: (i) $690 per hour to $925 per hour for partners; (ii) $350 per hour to $690 per hour for counsel, associates, staff attorneys, and project attorneys; and (iii) $175 per hour to $275 per hour for paralegals and law clerks. *See* Joint Decl. ¶ 73. Class Counsel believes these rates are within the range

percentage fee request that is less than counsel's lodestar provides strong confirmation for the reasonableness of the award. *See, e.g.*, *Athan*, 523 F. Supp. 3d at 971 ("The fees are all the more reasonable given that they are the result of vigorous negotiations between the Parties and are less than the total lodestar actually incurred on this matter by Plaintiffs' Counsel."); *Rikos v. Proctor & Gamble Co.*, 2018 WL 2009681, at *10 (S.D. Ohio Apr. 30, 2018) ("Dividing the amount Plaintiffs' Counsel request ($4,139,987.48) by the lodestar results in a negative multiplier, which demonstrates that the fee sought is reasonable."); *In re Amgen Inc. Sec. Litig.*, 2016 WL 10571773, at *9 (C.D. Cal. Oct. 25, 2016) ("courts have recognized that a percentage fee that falls below counsel's lodestar strongly supports the reasonableness of the award").

## C. The Contingent Nature Of Class Counsel's Representation Supports The Fee Request

"Whether counsel's services were undertaken on [a] contingent fee basis is another factor for the Court to consider in evaluating a fee request." *In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*, 248 F.R.D. 482, 503-04 (E.D. Mich. 2008). Indeed, courts in this Circuit recognize that the attorneys' contingent risk

---

of reasonable fees for attorneys working on sophisticated class action litigation, in this District. *See, e.g.*, Decl. of Gregory M. Castaldo in Supp. of Lead Counsel's Mot. for an Award of Attorney's Fees and Reimbursement of Litig. Expenses at 6-7, *Palazzolo v. Fiat Chrysler Autos. N.V.*, No. 4:16-cv-12803-LVP-SDD (E.D. Mich. May 1, 2019), ECF No. 70-5.

"counsels in favor of a generous fee." *F&M*, 1999 U.S. Dist. LEXIS 11090, at *18 (noting importance that counsel "undertook this case on a contingent fee basis, which required them to fund all of the significant litigation costs while facing the risk of a rejection [of their] clients' claims on the merits"); *Stanley v. U.S. Steel Co.*, 2009 WL 4646647, at *3 (E.D. Mich. Dec. 8, 2009) ("A contingency fee arrangement often justifies an increase in the award of attorneys' fees.").

Class Counsel have received no compensation during the more than four years this Action has been ongoing. During this time, Class Counsel invested over 7,820 hours for a total lodestar of $3,801,650.50, and incurred out-of-pocket expenses of $558,402.97. Joint Decl., ¶¶ 73-82. And, additional further work in connection with the Settlement and claims administration will still be required.

Moreover, any fee award to Class Counsel has always been at risk, and completely contingent on the result achieved and on this Court's discretion in awarding fees and expenses. What is more, unlike defense counsel—who typically receive payment on a timely basis whether they win or lose—Class Counsel sustained the entire risk that they would have to fund the expenses of this Action and that, unless Class Counsel succeeded, they would not be entitled to any compensation whatsoever. *See Delphi*, 248 F.R.D. at 503-04 (granting fee request where class counsel "prosecuted this action entirely on a contingent basis, knowing that it possibly could last for four or five years, require the expenditure of thousands

11

of attorney hours and millions of dollars in expenses and ultimately result in a loss at summary judgment or at trial").

### D. Society's Stake In Rewarding Attorneys Who Litigate Contingent Class Action Matters Supports the Fee Request

The second *Ramey* factor requires courts to consider "society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others." *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 533 (E.D. Mich. 2003). Courts in this circuit consistently recognize that "[a]ttorneys who take on class action matters serve a benefit to society and the judicial process by enabling such small claimants to pool their claims and resources." *In re Telectronics Pacing Sys., Inc.*, 137 F. Supp. 2d 1029, 1043 (S.D. Ohio 2001).

Here, Class Counsel litigated this case for more than four years on a fully contingent basis. Rewarding Class Counsel for the risk incurred and the substantial benefit they achieved for the Settlement Class furthers the public policy of incentivizing suits that are simply not practicable to bring on an individual basis.

### E. The Complexity Of The Litigation Supports The Fee Request

The fifth *Ramey* factor—the complexity of the litigation—is a significant factor to be considered in determining the reasonableness of an attorneys' fee award. *See Delphi*, 248 F.R.D. at 504.

As the Court is aware, this Action involved a number of complex and disputed questions of law and fact that placed the ultimate outcome of the case in doubt.

Indeed, Plaintiffs faced significant risks to prevailing at class certification and proving Defendant's liability and damages. Joint Decl., ¶¶ 52-57.

*First*, when the Parties agreed to the Settlement, Plaintiffs' Motion for Class Certification was pending before the Court. Through that Motion, Plaintiffs sought certification of multi-state damages classes, under Rule 23(b)(3), for each of the common law claims asserted in the Complaint, or alternatively Pennsylvania- and Georgia-only classes. Plaintiffs also sought certification of an injunctive class under Rule 23(b)(2). Joint Decl., ¶ 50.

Defendant vigorously opposed certification of any classes, arguing that the proposed classes were overbroad and that individual issues predominated, primarily because of variations in state law. Joint Decl., ¶ 50. Acceptance of these arguments by the Court could potentially defeat class certification, narrow the certified class, and/or greatly limit any relief obtained for vehicle owners. Joint Decl., ¶ 51.

*Second*, Plaintiffs faced significant hurdles to proving liability at trial. In particular, Defendant would likely have argued that Plaintiffs failed to establish that the Class Vehicles were defectively designed, i.e., that the Class Vehicles allowed exhaust fumes, including CO, into the passenger compartment while in use. Joint Decl., ¶ 53. Defendant may also have argued that even if exhaust fumes can be detected in the Class Vehicles, the levels of such fumes are not significant enough to create a safety hazard. Joint Decl., ¶ 53. Last, Defendant would likely have argued

that even if the Class Vehicles, when manufactured, suffered from some design defect, the issue had been remedied. Plaintiffs would bear a heavy burden to prove their claims at summary judgment and trial, and it is entirely possible that Defendant's arguments could have resonated with a jury. Joint Decl., ¶ 56.

*Third*, Plaintiffs faced formidable challenges with respect to proving damages. Defendant would likely have challenged the testimony of Plaintiffs' damages experts, who proposed a conjoint analysis, which measured the diminished value to the Class Vehicles, and a cost of repair analysis. Joint Decl., ¶ 55. Resolution of these issues would undoubtedly hinge upon "a 'battle of experts' . . . with no guarantee whom the jury would believe." *In re Cendant Corp. Litig.*, 264 F.3d 201, 239 (3d Cir. 2001).

### F. The Professional Skill And Standing Of Counsel Involved On Both Sides Supports The Fee Request

Finally, courts in this Circuit evaluate the professional skill and standing of counsel in determining the reasonableness of a fee request. *See Cardizem*, 218 F.R.D. at 533. Here, the skill and standing of counsel for all parties was of the highest caliber.

Both Class Counsel firms have national standing and extensive experience in litigating complex class actions. *See* firm résumés attached as Exhibits 3 and 4 to the Joint Declaration. Class Counsel prosecuted the case vigorously, provided high quality legal services, and achieved a great result for the Settlement Class. Moreover,

the effort and skill of Class Counsel in surviving Defendant's Motion to Dismiss, navigating through highly contested discovery, briefing class certification, and presenting a strong case throughout the Parties' settlement discussions was essential to achieving a meaningful resolution of the Action. *See F&M*, 1999 U.S. Dist. LEXIS 11090, at *19 ("The skill and competence of the attorneys for the Plaintiffs was evident, especially when viewed on the basis of the results that they obtained in this case[.]").

The quality of opposing counsel is also important in evaluating the services rendered by Class Counsel. *See Delphi*, 248 F.R.D. at 504. Defendant was represented by very skilled attorneys from the nationwide firms of Dykema Gossett PLLC and DLA Piper LLP, both of which have well-deserved reputations for vigorous advocacy in the defense of complex civil cases such as this. *See In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*, 2006 WL 3378705, at *3 (S.D.N.Y. Nov. 16, 2006) ("The fact that the settlements were obtained from defendants represented by 'formidable opposing counsel from some of the best defense firms in the country' also evidences the high quality of lead counsels' work."). In the face of this formidable opposition, Class Counsel were able to persuade Defendant to settle the case at both a point in the litigation and on terms that were favorable to the Settlement Class.

15

### III.   CLASS COUNSEL'S LITIGATION EXPENSES ARE REASONABLE AND SHOULD BE APPROVED

Class Counsel also request reimbursement of the expenses they incurred in prosecuting and resolving the Action in the total amount of $500,000. As is routine in cases such as this one, "class counsel is entitled to reimbursement of all reasonable out-of-pocket litigation expenses and costs in the prosecution of claims and settlement, including expenses incurred in connection with document production, consulting with experts and consultants, travel and other litigation-related expenses." *New England Health Care Emps. Pension Fund v. Fruit of the Loom, Inc.*, 234 F.R.D. 627, 634-35 (W.D. Ky. 2006); *see also In re Se. Milk Antitrust Litig.*, 2013 WL 2155387, at *7 (E.D. Tenn. May 17, 2013) (noting "[e]xpense awards are customary" in common fund cases).

The expenses for which Class Counsel seek reimbursement are detailed in the Joint Declaration, which sets forth the specific categories of expenses and amounts incurred. Joint Decl. ¶ 77. The types of expenses for which Class Counsel seek reimbursement were necessarily incurred in this Action and are of the type routinely charged in complex cases such as this. These include expenses associated with, among other things, research, travel, experts, document hosting/management, and mediation. *See, e.g., Athan*, 523 F. Supp. 3d at 971 (approving comparable expense categories); *Delphi*, 248 F.R.D. at 505 (same).

16

The largest component of Class Counsel's expenses was the cost of Plaintiffs' experts (i.e., $444,761.33, or approximately 80% of total expenses). Another component of Class Counsel's expenses ($22,915.80) was incurred for document hosting/management—specifically for the maintenance of an electronic database enabling Class Counsel to effectively (and efficiently) analyze and review more than 299,000 pages of documents produced in the Action. Class Counsel also incurred the cost of formal mediation ($14,250.80), the cost of online research ($7,114.11), and the cost of travel—airline tickets, meals, and lodging—required to prosecute this Action ($28,712.84). Joint Decl., ¶¶ 78-81. The other expenses for which Class Counsel seek reimbursement include, among others, court reporters and transcripts, court fees, document-reproduction costs, and delivery expenses. *Id.* ¶ 82. Accordingly, reimbursement of the requested expenses is reasonable and appropriate.

Last, and notably, the amount of expenses requested here ($500,000) is *less* than the total amount of expenses ($558,402.97) that Class Counsel actually incurred in prosecuting the Action. And, as set forth above, to date, there have been no objections to the maximum expense amount set forth in the Notice. KCC Decl., ¶ 24.

## IV.   PLAINTIFFS SHOULD BE AWARDED SERVICE AWARDS

As this Court has recognized, "service awards are common in class action cases and are important to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by plaintiffs." *Daoust v. Maru Rest., LLC*, 2019 WL 2866490, at *6 (E.D. Mich. July 3, 2019) (Berg, J.).

Here, Class Counsel seek reimbursement in the aggregate amount of $30,000 for Plaintiffs, to be divided equally, in connection with their representation of the Settlement Class.[5] Numerous courts, including this Court, have approved similar awards to reimburse named plaintiffs and proposed class representatives for their time and effort on behalf of a class. *See, e.g.*, *Daoust*, 2019 WL 2866490, at *6 (awarding service award of $5,000); *Arp v. Hohla & Wyss Enters., LLC*, 2020 WL 6498956, at *8 (S.D. Ohio Nov. 5, 2020) (approving $10,000 service award because "[i]t is important to compensate the work and additional risk that a class representative takes on").

As detailed in the Joint Declaration, Plaintiffs dedicated their personal time to the prosecution of the Action on behalf of the Settlement Class. In particular, Plaintiffs reviewed significant pleadings and briefs; communicated regularly with

---

[5] The Notice advises that Plaintiffs may seek a service award of $30,000, to be allocated equally. To date, there have been no objections to this request. KCC Decl., ¶ 24.

Class Counsel regarding the issues in the case, significant case developments, and litigation strategy; searched for and gathered documents in response to Defendant's document requests; responded to Defendant's interrogatories; prepared and sat for depositions; presented their vehicles for inspections by both Ford and Plaintiffs' experts; and approved the Settlement, as well as Class Counsel's fee and expense requests. *See* Joint Decl., ¶¶ 35-38.

For the foregoing reasons, the aggregate award of $30,000 sought here is reasonable and justified based on Plaintiffs' active involvement in the Action, and should be granted.

## V.  THE LACK OF OBJECTIONS FURTHER SUPPORTS THE REQUESTED ATTORNEYS' FEES, REIMBURSEMENT OF LITIGATION EXPENSES, AND SERVICE AWARDS

Finally, the fact that no objections have been received to the Settlement to date—including to the requested attorneys' fees, reimbursement of litigation expenses, and service awards, KCC Decl., ¶ 24 —strongly supports Class Counsel's request. *See, e.g.*, *In re Elec. Carbon Prods. Antitrust Litig.*, 447 F. Supp. 2d 389, 406 (D.N.J. 2006) ("The absence of objections to a fee request, or the imposition of minimal objections, is seen as an indicator that the fee request is fair."); *NILI 2011, LLC v. City of Warren*, 2018 WL 5264236, at *4-5 (E.D. Mich. Oct. 23, 2018) (concluding that fees were reasonable because, in relevant part, the court did not receive "any objections to the award").

## VI.    CONCLUSION

Class Counsel respectfully request that the Court award attorneys' fees in the

amount of $3,000,000 and approve reimbursement of Class Counsel's expenses in

the amount of $500,000, as well as the proposed awards to Plaintiffs in the aggregate

amount of $30,000.


Dated:  November 1, 2021                 Respectfully submitted,

                                         */s/ Joseph H. Meltzer*
                                         Joseph H. Meltzer
                                         Ethan J. Barlieb
                                         **KESSLER TOPAZ**
                                           **MELTZER & CHECK, LLP**
                                         280 King of Prussia Road
                                         Radnor, PA 19087
                                         Tel: (610) 667-7706
                                         jmeltzer@ktmc.com
                                         ebarlieb@ktmc.com

                                         **THE MILLER LAW FIRM, P.C.**
                                         E. Powell Miller (P39487)
                                         Sharon S. Almonrode (P33938)
                                         William Kalas (P82113)
                                         950 West University Drive, Suite 300
                                         Rochester, MI 48307
                                         Tel: (248) 841-2200
                                         epm@millerlawpc.com
                                         ssa@millerlawpc.com
                                         wk@millerlawpc.com

                                         *Attorneys for Plaintiffs and the*
                                         *Proposed Classes*

## CERTIFICATE OF SERVICE

I hereby certify that on November 1, 2021, I caused a true and correct copy of the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system. Notice of this filing will be sent to counsel of record by operation of the Court's electronic filing system.

*/s/ Joseph H. Meltzer*
Joseph H. Meltzer
Ethan J. Barlieb
**KESSLER TOPAZ**
  **MELTZER & CHECK, LLP**
280 King of Prussia Road
Radnor, PA 19087
Tel: (610) 667-7706
jmeltzer@ktmc.com
ebarlieb@ktmc.com

**THE MILLER LAW FIRM, P.C.**
E. Powell Miller (P39487)
Sharon S. Almonrode (P33938)
William Kalas (P82113)
950 West University Drive, Suite 300
Rochester, MI 48307
Tel: (248) 841-2200
epm@millerlawpc.com
ssa@millerlawpc.com
wk@millerlawpc.com

*Attorneys for Plaintiffs and the*
*Proposed Classes*