# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| SURESH PERSAD, DANIEL G. WRIGHT and ROBERT S. DRUMMOND, individually and on behalf of all others similarly situated, | Civil Action No. 2:17-cv-12599-TGB-MKM |
| | Hon. Terrence G. Berg |
| Plaintiffs, | Magistrate Judge Mona K. Majzoub |
| v. | |
| FORD MOTOR COMPANY, | |
| Defendant. | |

**JOINT DECLARATION OF JOSEPH H. MELTZER AND E. POWELL MILLER IN SUPPORT OF: (A) PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; AND (B) CLASS COUNSEL'S UNOPPOSED MOTION FOR AN AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF LITIGATION EXPENSES, <u>AND SERVICE AWARDS TO PLAINTIFFS</u>**

# **TABLE OF CONTENTS**

I.   INTRODUCTION...................................................................................2

II.  HISTORY AND PROSECUTION OF THE ACTION ....................................7

     A.   Commencement of the Action, Summary of Plaintiffs' Claims, and Defendant's Motion to Dismiss ...........................................................7

     B.   The Parties' Discovery Efforts and Plaintiffs' Motion for Class Certification...........................................................................................8

     C.   Summary of Plaintiffs' Work as Plaintiffs and Proposed Class Representatives.....................................................................................10

III. THE SETTLEMENT NEGOTIATIONS AND TERMS OF THE SETTLEMENT ....................................................................................12

IV. THE SIGNIFICANT RISKS OF CONTINUED LITIGATION ......................15

     A.   Plaintiffs Faced Substantial Risk at Class Certification......................16

     B.   Plaintiffs Faced Substantial Risks in Proving Defendant's Liability and Damages .......................................................................................16

     C.   Plaintiffs Faced Appellate Risk...........................................................18

V.  PLAINTIFFS' COMPLIANCE WITH THE COURT'S PRELIMINARY APPROVAL ORDER ..........................................................................19

VI. THE FEE AND LITIGATION EXPENSE APPLICATION ...........................21

VII.CONCLUSION ..................................................................................26

i

We, JOSEPH H. MELTZER and E. POWELL MILLER, declare as follows, pursuant to 28 U.S.C. § 1746:

1.      We, Joseph H. Meltzer and E. Powell Miller, are partners of the law firms of Kessler Topaz Meltzer & Check, LLP ("Kessler Topaz") and The Miller Law Firm, P.C. ("Miller Law"), respectively.[1] Kessler Topaz and Miller Law (together, "Class Counsel") represent Plaintiffs Suresh Persad, Daniel G. Wright, and Robert S. Drummond ("Plaintiffs") in the above-captioned action (the "Action"). We have personal knowledge of the matters set forth herein based on our active supervision of, and participation in, the prosecution and resolution of the Action.

2.      We respectfully submit this Declaration in support of: (a) Plaintiffs' Unopposed Motion for Final Approval of Class Action Settlement (the "Final Approval Motion"); and (b) Class Counsel's Unopposed Motion for an Award of Attorneys' Fees, Reimbursement of Litigation Expenses, and Service Awards to Plaintiffs (the "Fee Motion").

---

[1] Capitalized terms not defined herein have the same meanings as set forth in the Settlement Agreement. ECF No. 81-2, as amended by ECF No. 85-2. Unless otherwise indicated, internal citations and quotations have been omitted and emphasis has been added.

## I.   INTRODUCTION

3.     The proposed Settlement, if approved by the Court, will resolve all claims in this Action. *See* Stipulation and Agreement of Settlement ("Settlement Agreement") with exhibits, attached hereto as Exhibit 1. In particular, Settlement Class Members will receive notice of (i) the availability of the FSA Repairs, which consist of a re-calibration of the Class Vehicles' HVAC Systems, which is provided for free and are available until July 31, 2022, and (ii) the availability of additional TSB Repairs, which consist of the inspection and sealing of gaps in the passenger compartment, and the installation of a modified exhaust system in vehicles equipped with a normally aspirated 3.5-liter TiVCT engine. *See* Settlement Agreement § II(a). Further, Defendant Ford Motor Company ("Defendant" or "Ford") will direct Authorized Ford Dealers to implement the FSA Repairs and, in those cases where the FSA Repairs do not remedy the Exhaust Odor concern, the TSB Repairs; upon the request of a Settlement Class Member that is submitted according to the deadlines and terms of the Settlement Agreement. *Id.* Finally, for Settlement Class Members who receive the TSB Repairs after expiration of their warranty, they will be eligible for cash payments in the form of partial reimbursement for such repair costs. *Id.* at § II(c).

4.     The Settlement was achieved after four years of highly contested litigation, during which time Class Counsel expended significant efforts and

resources on behalf of the Class. These efforts included: (i) a thorough investigation of the claims against Ford; (ii) defeating a motion to dismiss; (iii) briefing, and arguing, a motion for class certification; (iv) extensive fact discovery, including taking or defending 11 fact depositions, and analyzing over 299,000 pages of documents produced in this Action, (vi) substantial expert discovery, including the submission of 6 expert reports on behalf of Plaintiffs, and taking or defending 4 expert depositions; and (vii) arm's-length negotiations between Plaintiffs and Defendant (the "Parties" or "Settling Parties") under the supervision of Rodney Max, a highly-experienced mediator.

5.     Class Counsel respectfully submits that the proposed Settlement—achieved following a significant litigation effort undertaken in the face of vigorous opposition and substantial risks—represents an excellent result for Plaintiffs and the Class, in light of the risks and challenges of continued litigation and trial.

6.     This case concerns an automotive defect, which allows the intrusion and accumulation of exhaust fumes, including carbon monoxide ("CO"), under certain driving conditions in the retail versions of Model Year 2016 and 2017 Ford Explorers (the "Class Vehicles"). Plaintiffs, three owners of these vehicles, sought redress under various legal theories, including unjust enrichment, breach of express warranty, breach of implied warranty, and state consumer protection statutes.

7. Proving these claims was no simple matter. Throughout the course of this Action, and as set forth below, Ford vehemently denied, and continues to deny, liability, and has maintained that Settlement Class Members were not entitled to any recovery at all.

8. As a consequence, Plaintiffs and Class Counsel faced substantial risks, and challenges, in developing the factual record necessary to overcome Defendant's defenses to Plaintiffs' claims. If Defendant had succeeded on any one of the multitude of defenses it pursued (or succeeded on one of its defenses at summary judgment or trial), the benefit flowing to the Class could have been substantially reduced, or even eliminated.

9. As such, Class Counsel had to devote substantial time and resources to the prosecution of this Action. For example, Class Counsel had to obtain, analyze, and digest a vast number of documents from Defendant, in order to educate themselves on the complexities of alleged defect.

10. In total, Defendant produced over 299,000 pages of documents. The review and analysis of this extensive document production was critically important to the ability of Class Counsel to effectively prosecute this Action. Thus, Class Counsel had to assemble a team of attorneys to assist in completing this task.

11. Deposition testimony was likewise important, both from a fact-gathering perspective and in fleshing out the Parties' respective positions. In that

regard, Class Counsel prepared for, defended, took, or otherwise participated in 15 depositions, including depositions of Plaintiffs, Ford employees, and the Parties' experts. Such depositions were taken nationwide, including in Michigan, Pennsylvania, Georgia, California, Florida, and Massachusetts.

12.   Class Counsel also retained and worked extensively with multiple subject-matter experts, including an automotive industry expert, experts on CO and damages experts.

13.   Given this effort, by the time the Parties reached an agreement in principle to resolve this matter in August 2020, Class Counsel were well aware of the merits of the proposed Settlement and fully understood the strengths and risks of the claims asserted in the Action.

14.   To be sure, had the Action continued, Plaintiffs and Class Counsel faced significant risks to obtaining any benefit more significant than that conferred by the Settlement. Indeed, at the time the Settlement was reached, Plaintiffs' Motion for Class Certification had been pending for over a year, and the Parties had not yet filed dispositive motions. An adverse ruling for Plaintiffs at class certification or summary judgment could have resulted in a less meaningful benefit for the Class— or none at all.

15.   In addition to dispositive motions, Plaintiffs also anticipated presenting expert testimony on multiple issues at trial, which would have been subject to

*Daubert* motions. In light of these risks (and others) as well as the considerable cost and delay of taking a complex case, such as this, through summary judgment, trial, and the inevitable post-trial appeals, Plaintiffs and Class Counsel believe that the Settlement is an excellent result for the Class.

16.     Class Counsel is proud of the hard-fought result obtained in this Action. For all of the foregoing reasons, and those discussed below and in the accompanying memoranda, Plaintiffs and Class Counsel strongly endorse the Settlement and believe that it provides an excellent recovery for the Class.[2]

17.     Set forth below is a description of the history of this Action, a summary of the efforts of Class Counsel in achieving the proposed Settlement, and a description of the risks and challenges posed by continued litigation.

18.     Also set forth below are the reasons why the Settlement should be finally approved as fair, reasonable, and adequate, and why Class Counsel's request for attorneys' fees, reimbursement of litigation expenses, and Service Awards to the Plaintiffs, should be granted in full.

---

[2] In addition to this Declaration, Plaintiffs and Class Counsel are submitting: (i) the Memorandum in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement ("Settlement Memorandum"); and (ii) the Memorandum in Support of Class Counsel's Motion for an Award of Attorneys' Fees, Reimbursement of Litigation Expenses, and Service Awards to Plaintiffs ("Fee Memorandum").

## II.   HISTORY AND PROSECUTION OF THE ACTION

### A.   Commencement of the Action, Summary of Plaintiffs' Claims, and Defendant's Motion to Dismiss

19.     In 2017, Plaintiffs and Class Counsel began analyzing and researching the claims at issue in the Action. In addition to factual research, Class Counsel thoroughly researched Sixth Circuit law applicable to the claims asserted and potential defenses thereto.

20.     On August 9, 2017, Plaintiffs brought this class action lawsuit on behalf of the Plaintiffs, and current and former owners and lessees of 2016 and 2017 model year Ford Explorers, in the United States. ECF No. 1.

21.     Plaintiffs then filed the operative Amended Class Action Complaint ("Complaint") against Ford on October 9, 2017. ECF No. 14.

22.     The Complaint alleges causes of action against Ford for violation of the Magnuson-Moss Warranty Act, Georgia Fair Business Practices Act, Pennsylvania Unfair Trade Practices and Consumer Protection Law, fraudulent concealment, negligent misrepresentation, breach of express warranty, and breach of the implied warranty of merchantability, unjust enrichment, on behalf of the Plaintiffs, and current and former owners and lessees of 2016 and 2017 model year Ford Explorers, in the United States. In particular, the Complaint alleges Ford sold model year 2016 and 2017 Ford Explorers that are defective because exhaust fumes may enter the passenger compartment of those vehicles.

7

23.     Throughout the Action, Defendant denied these allegations and that they entitled the Class to any recovery.

24.     Defendant moved to dismiss the Complaint on October 23, 2017 (ECF No. 15), which Plaintiffs opposed on November 13, 2017 (ECF No. 17). Defendant filed a reply in further support of its motion to dismiss on November 21, 2017. ECF No. 18.

25.     The Court held a hearing on Defendant's Motion to Dismiss on January 17, 2018. ECF No. 30.

26.     On July 16, 2018, the Court issued an Opinion and Order denying the motion to dismiss. ECF No. 31.

27.     On July 30, 2018, Defendant answered the Complaint and denied the allegations. ECF No. 32.

**B.     The Parties' Discovery Efforts and Plaintiffs' Motion for Class Certification**

28.     The Parties engaged in significant discovery during the course of the Action, including voluntary Federal Rule of Civil Procedure 26(a) disclosures, review of the productions by Ford, which included over 299,000 pages of documents, written discovery requests, depositions of Ford employees and each of the three Plaintiffs, and extensive expert discovery.

29.     Below is a chart of the depositions taken and defended by Class Counsel:

| Deponent | Role | Date | Location |
|---|---|---|---|
| Daniel Wright | Plaintiff | 03/05/19 | Pennsylvania |
| Robert Drummond | Plaintiff | 03/15/19 | Pennsylvania |
| Christopher Eikey | 30(b)(6) | 03/20/19 | Michigan |
| Suresh Persad | Plaintiff | 03/27/19 | Georgia |
| Arie Groenveld | 30(b)(6) | 04/17/19 | Michigan |
| Arthur Gariepy | Ford | 05/14/19 | Michigan |
| Lokesh Setti | Ford | 06/20/19 | Michigan |
| Elizabeth Weingandt | Ford | 06/27/19 | Michigan |
| Petros Frantzeskakis | Ford | 07/11/19 | Michigan |
| Mark Turneff | Ford | 09/11/19 | Michigan |
| William Gubing | Ford | 09/12/19 | Michigan |
| Paul Taylor | Def Expert | 11/01/19 | California |
| David Penney | Pls Expert | 12/18/19 | Florida |
| Steven Gaskin | Pls Expert | 12/27/19 | Massachusetts |
| Howard Kipen | Pls Expert | 01/09/20 | New Jersey |

30.     Plaintiffs also engaged in substantial work with expert witnesses intended to support their claims. In particular, Plaintiffs submitted 6 expert reports, which included a report from an automotive expert concerning the cause of exhaust fume intrusion in the Class Vehicles, a report on the testing of CO levels in Plaintiffs' vehicles, reports on the potential health risks of CO and exhaust fume exposure, and reports setting forth a class-wide damages methodology and a calculation of potential damages.

31.     Three of Plaintiffs' experts, and one of Defendant's experts, were deposed prior to the Settlement.

32.     While discovery efforts were ongoing, Plaintiffs also moved to certify the Action as a class action on June 25, 2019. ECF No. 48.

33.     Defendant opposed the Motion for Class Certification on July 30, 2019. ECF No. 55. Plaintiffs filed a Reply in Further Support of their Motion for Class Certification on September 10, 2019. ECF No. 65.

34.     The Court held a hearing on Plaintiffs' Motion for Class Certification on November 13, 2019. ECF No. 71. At the time Settlement was reached, Plaintiffs' Motion for Class Certification remained sub judice.

## C.     Summary of Plaintiffs' Work as Named Plaintiffs and Proposed Class Representatives

35.     Along with the extensive discovery efforts described above, Plaintiffs performed additional duties to fulfill their responsibilities as proposed class representatives and to further protect the best interests of the Class. Plaintiffs have devoted substantial time to meeting those responsibilities. Among other things, Plaintiffs:

(a) Submitted their vehicles for inspection by Ford and by Plaintiffs' experts;

(b) Searched their files and facilitated Class Counsel's access to information and documents, prior to approving the filing of this case, and in connection with the investigation of the claims asserted;

(c) Reviewed and approved the filing of the initial complaint and operative Complaint;

(d) Monitored the prosecution of this Action, throughout the more than four years that it has been pending, including receiving periodic updates on its progress and of the Court's rulings;

(e) During discovery, and in response to document requests from Ford, performed further searches for documents and again ensured Class Counsel's access to responsive documents;

(f) Provided responses to written interrogatories served by Ford;

(g) Sat for depositions lasting, collectively, approximately 10 hours on the record, which included meeting with their attorneys for several hours before the depositions in order to prepare, and reviewing their respective transcript for any errors;

(h) Reviewed and authorized filings in connection with class certification; and

(i) Stayed in contact with Class Counsel during the Parties' settlement discussions, and formal mediation process.

36.    Moreover, each Plaintiff provided Class Counsel with authority to resolve the Action and fully supports and endorses the proposed Settlement.

37.    Further, Plaintiffs believe that the attorneys representing the Class have worked diligently to secure the Settlement in the best interests of the Settlement Class.

11

38.     Each Plaintiff also fully supports and endorses Class Counsel's request for an award of attorneys' fees and reimbursement of expenses.

## III.   THE SETTLEMENT NEGOTIATIONS AND TERMS OF THE SETTLEMENT

39.     The Parties conducted arm's-length negotiations, concerning a proposed class-wide settlement, before mediator Rodney Max on July 24, 2020, and August 11, 2020. Shortly thereafter, the Parties reached an agreement, as memorialized in the Settlement Agreement.

40.     In advance of that session, the Parties prepared and submitted detailed mediation statements outlining the strengths and weaknesses of their respective positions. The Parties then held a full-day, in-person mediation session with Mr. Max. The Parties were able to resolve the Action after a second mediation session with Mr. Max.

41.     On August 31, 2020, the Parties informed the Court that they had reached an agreement in principle to resolve this matter in its entirety, on a class-wide basis. In an order dated the same day, the Court stayed the action to allow the Parties to finalize the settlement agreement, and submit papers to the Court for preliminary and final approval of the Settlement. ECF No. 78.

42.     Following their agreement in principle, Class Counsel began working on various documents to be submitted with Plaintiffs' Motion for Preliminary Approval of the Settlement. Over the following weeks, counsel for the Parties

negotiated the specific terms of the Settlement (and the exhibits thereto) and exchanged multiple drafts of these documents. The Parties also worked closely with the then-proposed Settlement Administrator, KCC Class Action Services ("KCC"), on the best means to provide notice of the Settlement to the Class.

43.     Plaintiffs filed their Unopposed Motion for Preliminary Approval of Class Action Settlement on November 18, 2020. ECF No. 81. Plaintiffs' Motion was granted by the Court on April 30, 2021. ECF No. 89.

44.     Pursuant to the terms of the Settlement, the initial relief is notice to Settlement Class Members, regarding the availability of the certain repairs to their vehicles. *See* Settlement Agreement, § II(a). Specifically, this includes notice of:

1.   Repairs provided under Field Service Actions 17N03 and 19N05 to 2016 and 2017 retail Ford Explorers addressing concerns about Exhaust Odor, which are offered regardless of mileage or warranty status until July 31, 2022 ("FSA Repairs"); and

2.   Repairs by an Authorized Ford Dealer to address Exhaust Odor, including the following repairs performed under TSB 17-0044: (1) inspection and sealing of gaps in the passenger compartment; and (2) installation of a modified exhaust system in vehicles equipped with a normally aspirated 3.5-liter [TiVCT] engine ("TSB Repairs"). *Id*. at §§ I(j), (x).

3.   Ford will direct Authorized Ford Dealers to implement the FSA Repairs and TSB Repairs upon the request of a Settlement Class Member submitted according to the terms and deadlines in the Settlement Agreement. *Id*. at § II(a).

45.     The FSA Repairs were first offered for the Class Vehicles after the filing of Plaintiffs' Initial Complaint. According to Ford, its average costs for

13

providing the FSA Repairs are $54.26 and $113.36 per vehicle, depending on the procedure utilized. Also according to Ford, 438,015 Class Vehicles have received the FSA Repairs to date – 324,719 Class Vehicles at an average cost to Ford of $113.36 and 113,296 Class Vehicles at an average cost to Ford of $54.26. The FSA Repairs are provided to Settlement Class Members free of charge, regardless of warranty status, and are being offered until July 31, 2022.

46.     Additionally, Members of the Settlement Class are eligible for cash payments in the form of partial reimbursement for the costs of post-warranty TSB Repairs. *Id*. at § II(c). Specifically, Settlement Class Members who have had the FSA Repairs performed on their vehicle, and then request and pay for TSB Repairs after the expiration of their warranty,[3] are eligible for partial reimbursement of those costs if they occur within the later of (1) 4 years or 48,000 miles after the vehicle was placed in service (whichever comes first), or (2) 120 days after the date for the completion of Class Notice, as set forth in the Preliminary Approval Order, or any order modifying that order. *Id*. Such eligible Settlement Class Members shall be reimbursed up to $400 for costs related to the inspection and sealing of gaps in the passenger compartment, and up to $400 for costs related to the installation of a modified exhaust system in vehicles equipped with a normally aspirated 3.5-liter TiVCT engine. *Id*.

---

[3] TSB Repairs provided in-warranty are free of cost.

47. Upon the Settlement becoming effective, the Settlement Class Members will be deemed to have released their claims, as defined in the Settlement Agreement. *Id.* at III.i.

## IV. THE SIGNIFICANT RISKS OF CONTINUED LITIGATION

48. The proposed Settlement has provided an immediate and certain benefit to the Class. The merits of the Settlement must be considered in the context of the risks presented by continued litigation of the Action, including, as discussed below, the risks of establishing Defendant's liability and damages. Having considered the risks of continued litigation, and based on all proceedings and discovery performed in the Action, it is the informed judgment of Plaintiffs and Class Counsel, that the proposed Settlement is fair, reasonable, and adequate, and in the best interest of the Class.

49. As summarized below, Class Counsel respectfully submit that they assumed significant risk in prosecuting this Action on an entirely contingent basis. From the time that Class Counsel agreed to take on the case, settlement was by no means inevitable, and certainly not at the high level ultimately achieved. Further, due to the length of the litigation, Plaintiffs also faced significant risk that key witnesses could experience fading memories or be unavailable at trial.

### A.   Plaintiffs Faced Substantial Risk at Class Certification

50.    When the Parties agreed to the Settlement, Plaintiffs' Motion for Class Certification was pending before the Court. Plaintiffs sought certification of multi-state damages classes, under Rule 23(b)(3), for each of the common law claims asserted in the Complaint, or alternatively Pennsylvania- and Georgia-only classes. Plaintiffs also sought certification of an injunctive class under Rule 23(b)(2). Defendant opposed certification of any damages classes, arguing that the proposed classes were overbroad and that individual issues predominated, primarily because of variations in state law. Defendant also opposed an injunctive class.

51.    Plaintiffs and the Settlement Class faced substantial risk that the Court would have certified narrower classes than requested in Plaintiffs' Motion, or that the Court would have declined to certify any classes. In such case, many or all Settlement Class Members would not have received the benefits provided under the Settlement.

### B.   Plaintiffs Faced Substantial Risks in Proving Defendant's Liability and Damages

52.    As noted above, Plaintiffs prevailed at the motion to dismiss stage, on all of their claims asserted against Defendant. However, it is likely that Defendant would have filed a motion for summary judgment on certain liability issues.

53.    In particular, Defendant would likely have argued that Plaintiffs failed to establish that the Class Vehicles were defectively designed, i.e., that the Class

Vehicles allowed exhaust fumes, including CO, into the passenger compartment while in use. Defendant may also have argued that even if exhaust fumes can be detected in the Class Vehicles, the levels of such fumes are not significant enough to create a safety hazard. Last, Defendant would likely have argued that even if the Class Vehicles, when manufactured, suffered from some design defect, the issue had been remedied.

54. If Defendant had prevailed on any of these liability issues, Plaintiffs and Settlement Class Members would not have received the full benefit provided under the Settlement.

55. Also, Defendant would likely have challenged the testimony of Plaintiffs' damages experts, who proposed a conjoint analysis, which measured the diminished value to the Class Vehicles, and a cost of repair analysis.

56. In addition, if the Court were to permit the claims to proceed to trial, Plaintiffs and the Class faced a substantial risk that a jury would find against Plaintiffs or that, even if Plaintiffs prevailed at trial, the verdict would be overturned by an appellate court.

57. While, again, Plaintiffs believed they had legitimate responses to Defendant's arguments and were committed to litigating this case through trial and beyond, Plaintiffs recognize that it was far from certain that a trier of fact would

accept their view, particularly given the complexities of the issues involved in the Action, which would require expert testimony from each side.

58.     In sum, the Parties were deeply divided on several key factual issues central to the Action, and there was no guarantee Plaintiffs' position on these issues would prevail at class certification, summary judgment, or at trial. If Defendant had succeeded on any of its substantial defenses, Plaintiffs and the Class would have recovered nothing at all, or at best, would likely have received less than the benefit conferred by the Settlement.

### C.     Plaintiffs Faced Appellate Risk

59.     As previously noted, even if Plaintiffs prevailed at class certification, summary judgment, and trial, Defendant would likely have appealed any class certification order or judgment in favor of the Class—leading to many additional months, if not years, of further litigation. On appeal, Defendant likely would have renewed their host of arguments as to why Plaintiffs had failed to establish liability and damages, thereby exposing Plaintiffs to the risk of having any favorable order or judgment reversed. In addition, Defendant would likely challenge class certification post-judgment as well, creating another significant risk for the Class on appeal.

## V.   PLAINTIFFS' COMPLIANCE WITH THE COURT'S PRELIMINARY APPROVAL ORDER

60.   The Court's April 30, 2021 Preliminary Approval Order directed KCC to: (i) cause individual Short Form Class Notice ("Notice"), substantially in the form attached to the Parties' Joint Notice of Supplemental Filing as Exhibit C, to be mailed, by first class mail, to the current or last known addresses of all reasonably identifiable Settlement Class Members; and (ii) post the Notice on a website developed for the Settlement. ECF No. 89, ¶¶ 10-11. *See* Decl. of Lana Lucchesi Regarding A) Mailing of the Notice Packet; and B) Report on Requests for Exclusion Received to Date ("KCC Decl."), attached hereto as Exhibit 2.

61.   The Preliminary Approval Order set a deadline of August 28, 2021 (or September 25, 2021 for Class Members residing in New Hampshire), to request exclusion from the Class and to submit objections to the Settlement and/or Class Counsel's request for attorneys' fees, and set the final Fairness Hearing for November 15, 2021. ECF No. 89, ¶¶ 13-17.

62.   The mailed and published Notice contains important information concerning the Settlement, and directs recipients to the Settlement Website, http://www.explorerexhaustsettlement.net/, for additional information regarding the Settlement. The Notice contains, among other things, a description of the Action; the specific terms of the Settlement; Class Counsel's intent to apply for an award of attorneys' fees in an amount not to exceed $3,000,000; reimbursement or payment

19

of litigation expenses incurred by Class Counsel in an amount not to exceed $500,000; Service Awards to Plaintiffs in an aggregate amount not to exceed $30,000; and Settlement Class Members' rights to object to any aspect of the Settlement, or exclude themselves from the Settlement Class. The Notice also advises Settlement Class Members that they do not need to take any action to remain part of the Class and, if eligible, receive a repair and/or payment from the Settlement.

63.    In accordance with the Preliminary Approval Order, KCC began disseminating the Notice to Settlement Class Members by first-class mail on July 14, 2021. KCC Decl., ¶ 8. As of October 21, 2021, KCC has disseminated a total of 848,949 Notices. *Id.* at ¶ 14.

64.    KCC also established, and currently maintains, the dedicated Settlement Website, http://www.explorerexhaustsettlement.net/, to provide information concerning the Settlement and access to downloadable copies of the Long Form Class Notice, as well as copies of other relevant documents, including the Settlement and Preliminary Approval Order. KCC Decl., ¶¶ 17-19. Additionally, KCC maintains a toll-free telephone number (1-855-786-0990) and interactive voice-response system to respond to inquiries regarding the Settlement. KCC Decl., ¶¶ 15-16.

65.    As noted above and set forth in the notices, the deadline for Settlement Class Members to file objections to the Settlement and/or Class Counsel's request

for attorneys' fees and expenses, was August 28, 2021 for Class Members residing outside of New Hampshire, and September 25, 2021 for Class Members residing in New Hampshire. To date, 39 requests for exclusion from the Class and no objections to any aspect of the Settlement or Class Counsel's request for attorneys' fees and expenses have been received. KCC Decl., ¶¶ 20-24. Class Counsel will file supplemental papers on, or before, November 8, 2021, that will address any objections that may be received after this submission.

## VI.    THE FEE AND LITIGATION EXPENSE APPLICATION

66.    In addition to seeking final approval of the Settlement, Class Counsel are applying to the Court for an award of attorneys' fees and litigation expenses.

67.    Specifically, Class Counsel are applying to the Court for an award of attorneys' fees in the amount of $3,000,000. Class Counsel also request reimbursement or payment for the litigation expenses, incurred in connection with the prosecution and resolution of the Action, in the amount of $500,000.

68.    Class Counsel's Fee and Expense Application is fully justified given the facts of this case. Class Counsel have vigorously prosecuted this Action against Ford for four years. Indeed, Class Counsel have devoted substantial time, and advanced the funds necessary to prosecute this case with no assurance of compensation or repayment. To date, neither of the firms that have assisted in the

prosecution of this Action, have been paid for their efforts. Instead, their compensation has been entirely contingent upon obtaining a recovery.

69.     As noted above, during the course of this Action, Class Counsel have: (i) conducted a thorough investigation into the Class's claims; (ii) drafted the detailed Complaint; (iii) successfully opposed Defendant's Motion to Dismiss the Complaint; (iv) engaged in extensive fact discovery, including the review of more than 299,000 documents, and participation in 11 fact depositions; (v) briefed and argued a motion for class certification; (vi) served expert reports and participated in 4 expert depositions; and (vii) engaged in arm's-length negotiations with Defendant, under the supervision of an experienced mediator, Rodney Max. Moreover, Class Counsel will continue to perform legal work on behalf of the Class, through the Fairness Hearing and beyond, as additional resources will be expended working with KCC to ensure the smooth administration of the Settlement.

70.     Kessler Topaz and Miller Law are experienced and skilled firms and have a successful track record in complex class actions throughout the country. The firms' résumés, attached as Exhibits 3 and 4 hereto, describe the expertise and experience of their attorneys. The substantial result achieved for the Settlement Class here reflects the superior quality of Class Counsel's representation.

71.     The quality of the work performed by Class Counsel, in attaining the Settlement, should also be evaluated in light of the quality of opposing counsel.

Defendant in this case was represented by skilled counsel from nationally prominent firms, including Dykema Gossett PLLC and DLA Piper LLP. In the face of this knowledgeable and formidable defense, Class Counsel were nonetheless able to develop a case that was sufficiently strong to persuade Defendant to settle the Action, on terms that are favorable to the Settlement Class.

72.    Class Counsel's efforts have required a substantial investment of time. Class Counsel have necessarily expended thousands of hours over more than four years of litigation. As detailed below, the substantial amount of time (and resulting lodestar) devoted to this Action clearly supports Class Counsel's fee request.

73.    As summarized in the table below, Class Counsel have devoted over 7,820 hours to the prosecution and resolution of the Action, resulting in a lodestar of $3,801,650.50. Lodestar has been calculated based on hourly rates that range from: (i) $690 per hour to $925 per hour for partners; (ii) $350 per hour to $690 per hour for counsel, associates, staff attorneys, and project attorneys; and (iii) $175 per hour to $275 per hour for paralegals and law clerks.[4]

| Firm | Total Hours | Lodestar |
|------|------------|----------|
| Kessler Topaz | 7,224.70 | $3,367,407.50 |
| Miller Law | 603.10 | $434,243.00 |

[4] At the Court's request, Class Counsel can a provide summary indicating the amount of time spent by attorneys and professional support staff employees of each firm for the prosecution and settlement of the Action, and the lodestar calculation for those individuals.

23

| TOTAL | 7,827.80 | $3,801,650.50 |
|---|---|---|

74.     Class Counsel's request for $3,000,000 in fees results in an effective hourly rate of $383, given the total number of hours pursuing the Action.

75.     Class Counsel also seek reimbursement, or payment of the expenses that were reasonably incurred in the Action, in the amount of $500,000. Reimbursement of such expenses was fully contingent on a successful outcome.

76.     Class Counsel has incurred a total of $558,402.97 in out-of-pocket expenses in connection with the Action—an amount greater than the expenses that are being requested.

77.     The below chart provides a breakdown of the expense request by category. Paragraphs ¶¶ 78-81 below provide additional detail regarding certain of these expenses.

| Expense Description | Total |
|---|---|
| Court Reporting | $30,470.42 |
| Document Delivery (Federal Express, Postage) | $2,182.85 |
| Document Review/Hosting Vendor | $22,915.80 |
| Expert | $444,761.33 |
| Filing Fees | $1,237.00 |
| Internal Document Reproduction | $6,052.30 |
| Mediation | $14,250.80 |
| Process Server | $303.00 |
| Research (Case Specific) | $7,114.11 |
| Travel, Meals & Lodging | $28,712.84 |
| Vendor Copy Bills | $402.52 |
| **Expense Total:** | **$558,402.97** |

78.     The cost of Plaintiffs' experts and consultants (totaling $444,761.33) represents the largest component of Class Counsel's expenses, encompassing approximately 80% of the total expense request. Class Counsel worked with several experts and consultants at different stages of the Action, and their assistance and expertise was crucial to the prosecution of this Action and its resolution.

79.     Another component of Class Counsel's expenses relates to document productions. To effectively and efficiently review and analyze the documents produced by Defendant and third parties in this Action, Class Counsel retained an outside vendor, KL Discovery ("KL"), to host a document database. Class Counsel paid a total of $22,915.80 to KL, for document hosting.

80.     Class Counsel's expenses also include the costs of online research in the amount of $7,114.11. It is standard practice for attorneys to use online services to assist them in researching legal and factual issues, and indeed, courts recognize that these tools create efficiencies in litigation and ultimately save money for clients and the class.

81.     Class Counsel also paid $14,250.80 for charges related to mediation.

82.     The other expenses for which Class Counsel seeks payment are the types of expenses that are necessarily incurred in litigation, and routinely charged to clients billed by the hour. These expenses include, among others, travel, court fees,

process servers, court reporters, document-reproduction costs, and postage and delivery services.

83.     Class Counsel also seek aggregate Service Awards of $30,000, for Plaintiffs, for their work in representing the Class in the Action. As set forth above, each of the Plaintiffs has been committed to pursuing the Class's claims since they became involved in the Action in 2017. *See* ¶¶ 28-35, *supra*. The efforts expended by Plaintiffs during the course of the Action, are precisely the types of activities courts have found to support Service Awards.

84.     To date, no objection to Class Counsel's request for attorneys' fees, litigation expenses, or Service Awards to Plaintiffs has been received. Any objections that may be received will be addressed in Class Counsel's supplemental papers, which will be filed on or before November 8, 2021.

85.     Moreover, based on the legal authorities set forth in the Fee Memorandum being filed contemporaneously herewith, we respectfully submit that Class Counsel's Fee and Expense Motion be granted.

## VII.    CONCLUSION

86.     For the reasons set forth above, Class Counsel respectfully submit that the Settlement should be approved as fair, reasonable, and adequate.

87.     Class Counsel further submit that the requested fee in the amount of $3,000,000, and the request for reimbursement or payment of litigation expenses in the amount of $500,000, should be approved as fair and reasonable.

88.     Class Counsel also submit that the requested Service Awards to Plaintiffs, in the aggregate amount of $30,000, are warranted and should be approved.

We each declare, under penalty of perjury under the laws of the United States of America, that the foregoing is true and correct.

Executed on: November 1, 2021          */s/ Joseph H. Meltzer*
                                       Joseph H. Meltzer

Executed on: November 1, 2021          */s/ E. Powell Miller*
                                       E. Powell Miller

## CERTIFICATE OF SERVICE

I hereby certify that on November 1, 2021, I caused a true and correct copy of the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system. Notice of this filing will be sent to counsel of record by operation of the Court's electronic filing system.

*/s/ Joseph H. Meltzer*
Joseph H. Meltzer
Ethan J. Barlieb
**KESSLER TOPAZ**
  **MELTZER & CHECK, LLP**
280 King of Prussia Road
Radnor, PA 19087
Tel: (610) 667-7706
jmeltzer@ktmc.com
ebarlieb@ktmc.com

**THE MILLER LAW FIRM, P.C.**
E. Powell Miller (P39487)
Sharon S. Almonrode (P33938)
William Kalas (P82113)
950 West University Drive, Suite 300
Rochester, MI 48307
Tel: (248) 841-2200
epm@millerlawpc.com
ssa@millerlawpc.com
wk@millerlawpc.com

*Attorneys for Plaintiffs and the*
*Proposed Classes*